CV 15        2431

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Plaintiffs #1-21, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>THE COUNTY OF SUFFOLK; SUFFOLK COUNTY POLICE DEPARTMENT; COMMISSIONER EDWARD WEBBER, individually and in his official capacity; SUPERVISORY JOHN DOE DEFENDANTS, individually and in their official capacities; LIEUTENANT MILAGROS SOTO, individually and in her official capacity; SCOTT GREENE, individually and in his official capacity; OFFICER PODORMER, individually and in her official capacity; JOHN DOE DEFENDANTS, individually and in their official capacity,<br><br>      Defendants. | Case No.:<br><br>**COMPLAINT** |

*SPATT, J.*

*BROWN, M. J.*

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK
2015 APR 29 PM 2: 35
FILED
CLERK

## PRELIMINARY STATEMENT

1.    Defendant County of Suffolk and Defendant Suffolk County Police Department (the "SCPD") have subjected Latinos[1] to an ongoing policy, pattern, and practice of discriminatory policing. For many years, SCPD officers have targeted Latinos for unfounded, race-based traffic or pedestrian stops, searched or detained them and wrongfully taken their personal property (money), issued unjustified traffic citations, or otherwise harassed them.

2.    Despite being fully aware of these discriminatory policies, practices, and/or customs, Defendant SCPD and Defendant Suffolk County have ignored or covered those

---

[1] The terms "Hispanic or Latino," used interchangeably in this Complaint, reference a person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin regardless of race, the definition of Hispanic or Latino origin used in the 2010 Census. U.S. Census Bureau, *Overview of Race and Hispanic Origin: 2010*, (Mar. 2011), *available at* http://www.census.gov/prod/cen2010/briefs/c2010br-02.pdf.

1

practices up and, more generally, failed to take the actions necessary to investigate and eliminate these practices. As a result, Defendant SCPD and Defendant Suffolk County have not only allowed these discriminatory policies, practices, and/or customs to continue unabated for years, but have actually facilitated and encouraged them through the failure to adopt and implement adequate police training and supervision policies; the disruption of the implementation and analysis of traffic stop data collection systems that would have identified officers engaged in discriminatory policing; the failure to adequately investigate complaints lodged by Latino victims; and the failure to engage in even-handed law enforcement.

3.     Not surprisingly, after conducting an investigation that began as early as 2009, the United States Department of Justice Civil Rights Division (the "DOJ") and the United States Attorney's Office for the Eastern District of New York (collectively, the "United States") found that Defendant SCPD's police practices discriminated against Latinos. Despite the United States' present oversight, both Defendant Suffolk County and Defendant SCPD have failed to deliver the necessary reforms and continue to carry out these discriminatory policies, patterns, and practices.

4.     Plaintiffs #1-21, all Latino residents of Suffolk County subjected to these unlawful actions by Defendant SCPD, bring this class action lawsuit for themselves and all others similarly situated seeking declaratory, injunctive, and monetary relief against Defendants for engaging in a continuing pattern and practice of race-based stops, frisks, searches, detentions, deprivation of property, unlawful ticketing, and other forms of harassment of Latinos in Suffolk County.

5.     As a proximate result of Defendants' actions and inactions, members of the Class have suffered and continue to suffer irreparable loss and injury, including but not limited to

economic loss, humiliation, embarrassment, physical and emotional distress, mental anguish, low self-esteem, and deprivation of their civil rights. For these injuries, members of the Class seek declaratory and injunctive relief, as well as punitive and compensatory damages.

6.     These claims are brought pursuant to the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the common law of the state of New York. Plaintiffs further seek attorneys' fees and litigation costs under 42 U.S.C. § 1988(b).

### JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201. Supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367(a).

8.     Venue is proper in the Eastern District of New York because all of the acts, omissions, violations, events, and conduct alleged herein occurred in the Eastern District.

### PARTIES

**I.     Plaintiffs[2]**

9.     Plaintiff 1 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

10.     Plaintiff 2 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

11.     Plaintiff 3 is a Latino male residing in the County of Suffolk and regularly using the roads and walkways of Suffolk County as a pedestrian and motorist.

---

[2] The names of Plaintiffs #1-21 are being withheld for fear of retaliation. A motion has been filed with the Court asking for Plaintiffs to remain anonymous throughout the proceedings.

12.     Plaintiff 4 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a passenger and motorist.

13.     Plaintiff 5 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

14.     Plaintiff 6 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

15.     Plaintiff 7 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

16.     Plaintiff 8 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

17.     Plaintiff 9 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

18.     Plaintiff 10 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

19.     Plaintiff 11 is a Latino female residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

20.     Plaintiff 12 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

21.     Plaintiff 13 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

22.     Plaintiff 14 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

23.     Plaintiff 15 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

24.     Plaintiff 16 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

25.     Plaintiff 17 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

26.     Plaintiff 18 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

27.     Plaintiff 19 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

28.     Plaintiff 20 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

29.     Plaintiff 21 is a Latino male residing in the County of Suffolk and regularly using the roads of Suffolk County as a motorist.

30.     Each of these Plaintiffs has been stopped in Suffolk County based upon his/her race without legal justification, searched without probable cause, detained, subjected to the wrongful deprivation of property by Defendants, and/or ticketed unlawfully.

31.     The named Plaintiffs bring this action on behalf of themselves and as representatives of the Class of all similarly situated Latinos in Suffolk County who are, have been, or will be at risk of being subject to discriminatory and unconstitutional policing services by Defendant SCPD, including policies, patterns, and practices permitting racially targeted stops, frisks, detentions, searches, the wrongful deprivation of property, unlawful traffic citations, and/or the failure to conduct even-handed, race-neutral investigations of crimes and police

misconduct perpetrated against Latinos, in violation of the Fourth, Fifth, and Fourteenth Amendments.

## II.    Defendants

32.    Defendant Suffolk County is a municipality organized and existing under the laws of the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the SCPD, which acts as Suffolk County's agent in the area of law enforcement for which Suffolk County is ultimately responsible. Suffolk County assumes the risks incidental to the maintenance of a police force and the employment of police officers. The County of Suffolk has caused the injuries to Plaintiffs and evinced a deliberate indifference to Plaintiffs' legal rights.

33.    Defendant Suffolk County Police Department conducts traffic control and enforces the laws in the County of Suffolk. The SCPD has implemented and continues to enforce, encourage, and sanction a policy, practice, and/or custom of unconstitutional stops, frisks, detentions, and searches, which are being done without the reasonable suspicion required under the Fourth Amendment. Moreover, many of these illegal police encounters have resulted in the deprivation of property and/or unlawful ticketing of Latino motorists and pedestrians in Suffolk County, in violation of the Fifth Amendment. The SCPD has implemented and continues to enforce, encourage, and sanction a policy, practice, and/or custom of using race and/or national origin as the determinative factors in deciding to stop, frisk, detain, and/or search individuals, in violation of the Equal Protection Clause of the Fourteenth Amendment. Further, the SCPD has failed to properly train, supervise, and investigate the racially motivated behavior of SCPD police officers and properly direct criminal and non-criminal investigations to ensure appropriate and race-neutral remedial police action is taken, in violation of the Equal Protection Clause of the Fourteenth Amendment. The SCPD, at all relevant times, employed the individual

6

Defendants named herein.   The SCPD has caused the injuries to Plaintiffs and evinced a deliberate indifference to Plaintiffs' legal rights.

34.      Upon information and belief, Suffolk County and the SCPD have been and are recipients of federal financial funds.

35.      Defendant Commissioner Edward Webber is and was, at the times relevant herein, the Commissioner of Police for Suffolk County, and is and was responsible for the policies, practices, and/or customs of the SCPD.   Defendant Webber oversees the direction of criminal and non-criminal investigations to ensure that appropriate even-handed, race-neutral police action is taken with respect to the investigation of crimes and police misconduct perpetrated against Latinos.   He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the police officers under his command who are or were employed by the SCPD, including the individual Defendants named herein.   Defendant Webber has caused the injuries to Plaintiffs and evinced a deliberate indifference to Plaintiffs' legal rights.

36.      Defendant Scott Greene is a former officer and Sergeant of the SCPD who engaged in the violation of Plaintiffs' civil and constitutional rights by unlawfully targeting Latinos in Suffolk County and stopping, frisking, detaining, searching, wrongfully depriving them of their property, and/or issuing unlawful traffic citations.   Defendant Greene was arrested on January 31, 2014 after being caught stealing money from an undercover Latino police officer during a sting operation run by the Suffolk County District Attorney's Office.   He was, at all relevant times, employed by the SCPD.

37.      Lieutenant Milagros Soto holds a supervisory position within the SCPD, and is or was, at all times relevant herein, responsible for the policies, practices, and/or customs of the

7

SCPD; the direction of criminal and non-criminal investigations to ensure that appropriate even-handed, race-neutral police action is taken with respect to the investigation of crimes and police misconduct perpetrated against Latinos; and the hiring, screening, training, retention, supervision, discipline, counseling, and control of the police officers under her supervisory command who are or were employed by the SCPD, including the individual Defendants named herein. Lieutenant Soto was specifically tasked with investigating allegations made by Suffolk County Latinos concerning traffic stops during which they were robbed. During the course of this investigation, Defendant Soto ignored evidence that SCPD officers besides Defendant Greene were involved in the "stop-and-rob" scheme. In so doing, Defendant Soto failed to act on this information indicating pervasive constitutional violations throughout the SCPD or to take any steps to remedy these wrongs after being informed of them, thereby allowing these unconstitutional policies or practices by the SCPD to continue unabated, evincing a deliberate indifference to Plaintiffs' legal rights resulting in their injury.

38.     SUPERVISORY JOHN DOE Defendants, whose identities are unknown to Plaintiffs, hold supervisory positions within the SCPD, and are or were, at all times relevant times herein, responsible for the policies, practices, and/or customs of the SCPD; the direction of criminal and non-criminal investigations to ensure that appropriate and even-handed, race-neutral police action is taken with respect to the investigation of crimes and police misconduct perpetrated against Latinos; and the hiring, screening, training, retention, supervision, discipline, counseling, and control of the police officers under their supervisory command who are or were employed by the SCPD, including the individual Defendants named herein. SUPERVISORY JOHN DOE Defendants have caused the injuries to Plaintiffs and evinced a deliberate indifference to Plaintiffs' legal rights.

39.     Officer Podormer, with Rank and Badge/ID Number 741/310/34741, is a member of the SCPD who engaged in the violation of Plaintiffs' civil and constitutional rights by unlawfully targeting Latinos in Suffolk County and stopping, frisking, detaining, searching them, wrongfully depriving them of their property, and/or issuing unlawful traffic citations while they were residing or traveling in Suffolk County.  Defendant Podormer was, at all relevant times, employed by the SCPD.

40.     Individual JOHN DOE Defendants, whose identities are unknown to Plaintiffs, are Suffolk County police officers who engaged in the violation of Plaintiffs' civil and constitutional rights by engaging in the pattern and practice of unlawfully targeting Latinos in Suffolk County and stopping, frisking, detaining, searching them, wrongfully depriving them of their property, and/or issuing unlawful traffic citations.  The individual JOHN DOE Defendants were, at all relevant times, employed by the SCPD.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs #1-21 bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their behalf and as representatives of the following class of individuals:

> All past, present, and future Latino individuals who are, have been, or will be at risk of being subject to discriminatory and unconstitutional policing services by the Suffolk County Police Department, including policies, patterns, and practices permitting racially targeted stops, frisks, detentions, searches, the wrongful deprivation of property, unlawful traffic citations, and/or the failure to conduct even-handed, race-neutral investigations of crimes and police misconduct perpetrated against Latinos, in violation of the Fourth, Fifth, and Fourteenth Amendments (the "Class").

42.     Plaintiffs #1-21 and the Class bring this action for compensatory and punitive damages pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

9

43.     Plaintiffs #1-21 and the Class have suffered personal injury as a direct and proximate result of Defendants' actions herein for which an award of declaratory and injunctive relief and compensatory and punitive damages is appropriate.

44.     The named Plaintiffs herein are members of the Class they seek to represent.

45.     The Class includes hundreds, if not thousands, of individuals.  Members of the Class are so numerous that joinder is impracticable because, based on information and belief, many of the member of the Class are not aware of the fact that their constitutional rights have been violated and that they have the right to seek redress in court.  Many members of the Class are without the means to retain an attorney to represent them in a civil rights lawsuit.  Moreover, many Class members who have been victimized by Suffolk County and the SCPD's unconstitutional practices do not bring individual claims for fear of retaliation and reprisal by SCPD officers.   There is no appropriate avenue for the protection of the Class members' constitutional rights other than a class action.

46.     There are questions of law and fact common to the Class including, but not limited to:

(a)     whether the SCPD engages in a policy, practice, and/or custom of  subjecting each Class member to arbitrary, racially discriminatory stops, frisks, detentions, searches, the wrongful deprivation of property, and/or unlawful traffic citations at the hands of Defendant Greene, Defendant Podormer, and individual JOHN DOE Defendants;

(b)     whether SUPERVISORY JOHN DOE Defendants, SCPD Commissioner Edward Webber, Lieutenant Milagros Soto, SCPD, and Suffolk County's failure to properly train, supervise, and investigate the racially motivated behavior of SCPD police officers and properly direct criminal and non-criminal investigations to ensure that appropriate and even-handed, race-neutral investigations of crimes and police misconduct perpetrated against Latinos constitutes deliberate indifference to the violations of the Plaintiffs' and Class members' constitutional rights;

(c)     whether Suffolk County, Commissioner Webber has encouraged, sanctioned, and/or failed to rectify unconstitutional stops, frisks, detentions, searches, the

wrongful deprivation of property, and/or unlawful ticketing by members of the SCPD;

(d)    whether the Class as a whole is entitled to relief including, but not limited to, compensatory and punitive damages in an amount due to the Class as a whole, with distribution to individual Class members based on a Class-wide formula;

(e)    whether the Class as a whole is entitled to permanent injunctive relief against Defendants, including, but not limited to, a mandatory injunction;

(f)    whether the Class as a whole is entitled to a declaratory judgment that the acts of Defendants alleged herein and to be provided by the evidence constitute actionable violations of the civil and constitutional rights of each member of the Class; and,

(g)    whether the Class as a whole is entitled to an award of its attorneys' fees and litigation costs to be paid by Defendants under 42 U.S.C. § 1988(b).

47.    These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class members.

48.    The claims of the named Plaintiffs are typical of the claims of the Class they seek to represent in that the named Plaintiffs and all members of the proposed Class are Latinos in Suffolk County who were illegally stopped, frisked, detained, searched, wrongfully deprived of property, and/or issued unlawful traffic citations by members of Defendant SCPD, and/or subjected to the failure of the SCPD to adequately investigate crimes and police misconduct perpetrated against Latinos pursuant to the SCPD's racially discriminatory policies, practices, and/or customs.

49.    As long as the SCPD engages in the policy, practice, and/or custom of unconstitutional stops, frisks, detentions, searches, the wrongful deprivation of property, and/or issuance of unlawful traffic citations by members of the SCPD, and/or the failure to adequately investigate crimes and police misconduct perpetrated against Latinos, the named Plaintiffs are, and will remain, at high risk of being illegally stopped, frisked, detained, searched, wrongfully

11

deprived of property, and/or burdened by unlawful traffic citations by members of the SCPD. Indeed, several of the named Plaintiffs have been victimized recently. The proposed Class seeks injunctive relief and damages as a result of injuries its members have sustained due to Defendants' conduct. Thus, the pursuit of damages by the Class representatives for their injuries and losses will work to benefit the entire proposed Class they seek to represent.

50. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class they represent. The named Plaintiffs have retained counsel competent and experienced in class action litigation. Accordingly, the interests of the Class will be adequately protected and advanced. In addition, there is no conflict of interest between the named Plaintiffs and members of the Class. The interests of the named Plaintiffs are aligned because members of the Class have an interest in securing their right to prospective relief preventing future harmful conduct by Defendants and compensatory and punitive damages as a consequence of any injuries caused by Defendants' conduct.

51. Notice can be provided to Class members by published notice.

52. Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members. This class action is superior to other available remedies for the fair and efficient adjudication of this controversy.

53. In the alternative, certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted in a similar, virtually identical, way against each member of the Class, so that final injunctive relief, specifically appropriate mandatory injunctions, with corresponding declaratory, compensatory, and punitive monetary relief, is appropriate respecting the Class as a whole.

12

## STATEMENT OF FACTS

I.   **Suffolk County, through the SCPD, Targets Latinos for Unlawful Stops and Searches, "Stop-and-Rob" Schemes, and Other Forms of Discriminatory Policing or Harassment**

54.   Defendants have engaged in, and are continuing to engage in, a pattern and practice of discriminatory and unconstitutional conduct toward Latinos in Suffolk County, which includes widespread (a) targeting Latino motorists for illegal traffic stops; (b) targeting Latinos through unjustified checkpoints; (c) targeting Latinos in a "stop-and-rob" scheme, that results the wrongful and unjustified deprivation of property during unconstitutional traffic stops; (d) failing to adequately investigate crimes and police misconduct perpetrated against Latinos; and (e) otherwise harassing Latinos because of their race and/or national origin.

55.   Upon information and belief, prior to Defendant Greene's arrest, the SCPD had within its possession the traffic stop data as well as the GPS and police radio data necessary to determine that members of the SCPD were systematically targeting Latinos during traffic and other stops.

A.   **SCPD Officers Targeted Plaintiffs for Traffic Stops or Unlawful Searches Because of their Race**

56.   In or around July or August 2012, Plaintiff 3 was pulled over while driving in Suffolk County by a JOHN DOE Defendant SCPD Officer. The officer who stopped Plaintiff 3 gave no explanation for the stop, for which there was no lawful basis. The SCPD officer asked him for his driver's license, and then issued a ticket for driving without a license. He believes that he was pulled over solely because he is Latino.

57.   Plaintiff 5 has been stopped while driving in Suffolk County numerous times over the past five to seven years by various JOHN DOE Defendant SCPD police officers, including one such stop in summer 2012. The SCPD officer would ask for his driver's license and then,

during most stops, issue tickets for driving without a license. Plaintiff 5 was given no legitimate reason as the initial basis for such stops, for which there was no lawful basis. He believes that he was stopped solely because he is Latino.

58.     Plaintiff 6 has been stopped while driving in Suffolk County by various JOHN DOE Defendant SCPD officers numerous times a year over the past fifteen years, including one such stop in April 2014. The SCPD would ask for his driver's license and then, in many instances, issue tickets for driving without a license or not carrying proof of insurance. Plaintiff 6 was given no legitimate reason for the initial basis for such stops, as there was no such basis for the stops. He believes that he was stopped solely because he is Latino.

59.     Plaintiff 7 has been stopped while driving in Suffolk County by various JOHN DOE Defendant SCPD officers numerous times over the past fourteen years, including as recently as January 2015. On multiple occasions, SCPD officers told Plaintiff 7 that he was "in America" and needed to "speak English." The SCPD officer would ask him for his driver's license, and then usually issue a ticket for driving without a license or for an unfounded violation. Plaintiff 7 also has been stopped by various JOHN DOE Defendant SCPD officers while walking on the street near his home in a predominantly Latino neighborhood in Suffolk County. SCPD officers gave no explanation for these stops, for which there was no lawful basis. Plaintiff 7 believes he was stopped solely because he is Latino.

60.     In or around August 2010 and separately in or around January 2012, Plaintiff 8 was driving in Suffolk County when he was stopped by various JOHN DOE Defendant SCPD officers. Plaintiff 8 was not told the basis for these stops, and there was no legitimate basis for such stops. He believes he was pulled over solely because he is Latino.

14

61.     Plaintiff 9 has been stopped while driving in Suffolk County numerous times by various JOHN DOE Defendant SCPD officers, including as recently as fall 2012. The SCPD officers would ask him for his driver's license, and then usually issue a ticket for driving without a license. Plaintiff 9 was not told the basis for these stops, for which there was no lawful basis. He believes he was stopped solely because he is Latino.

62.     In or around summer 2012, Plaintiff 10 was stopped by Defendant Greene at a friend's house in Suffolk County. A few minutes later, a second officer, JOHN DOE Defendant, arrived at the house and asked for his ID and vehicle registration and searched his car without permission or probable cause. Plaintiff 10 believes he was stopped and searched solely because he is Latino.

63.     In or around summer 2013, Plaintiff 10 was driving in Suffolk County when a JOHN DOE Defendant SCPD Officer pulled him over. The officer did not provide a reason for stopping Plaintiff 10, and there was no lawful basis for the stop. Plaintiff 10 took off his seatbelt in the sight of the officer to give the officer his identification and car registration. The officer then issued Plaintiff 10 a ticket for not wearing a seatbelt along with a ticket for driving without a license. Plaintiff 10 believes he was pulled over solely because he is Latino.

64.     Plaintiff 11 has been pulled over by various JOHN DOE Defendant SCPD officers while driving in Suffolk County numerous times over the past four years, including in September 2013. The SCPD officers who stopped her would provide a false reason for pulling her over, such as stating that she had a broken tail light when she did not. The SCPD officers would ask her for her driver's license, and then usually issue a ticket for driving without a license.

65.    During some of these stops, Plaintiff 11 was stopped by Defendant Greene who made disparaging remarks about Latinos, including one such stop in July or August 2013. Plaintiff 11 had heard from her friends and family that Defendant Greene's practice was to pull over Latinos and steal their money. For this reason, Plaintiff 11 tried not to carry money on her person. When Defendant Greene pulled her over, he would sometimes call another SCPD police officer to the scene to issue her a ticket. Plaintiff 11 believes she was repeatedly stopped without legitimate cause solely because she is Latina.

66.    Additionally, from summer 2006 to September 2013, Plaintiff 10 and Plaintiff 11 lived together in Medford, NY. An SCPD officer regularly came to their house in his patrol car and in uniform and entered without permission. Upon information and belief, the officer in question was Defendant Greene. Defendant Greene would provide no explanation for entering the house but would proceed to illegally search their rooms without consent. Plaintiff 10 and Plaintiff 11 did not report these illegal searches because they were scared of what would happen to them if they did. Because of this continued harassment, Plaintiff 10 and Plaintiff 11 moved to a different town in Suffolk County. Plaintiff 10 and Plaintiff 11 believe that they were the targets of this harassment solely because they are Latino.

67.    Plaintiff 14 has been stopped while driving in Suffolk County numerous times by various JOHN DOE Defendant SCPD police officers. During such traffic stops, the SCPD officers would typically ask him for his driver's license, and then usually issue a ticket for driving without a license. For example, in December 2011 or January 2012, Plaintiff 14 was driving in Suffolk County with his cousin and two children in the vehicle. An SCPD officer pulled him over without explanation or any legitimate basis for the stop. Upon information and

16

belief, the officer in question was Defendant Greene. Plaintiff 14 believes that he was routinely stopped solely because he is Latino.

68.     In or around June 2013, Plaintiff 18 was driving in Suffolk County when he was pulled over by JOHN DOE Defendant SCPD Officer. The officer stated that Plaintiff 18's license plate had fallen off. The officer asked for his license and registration, and Plaintiff 18 replied that he did not have a license but gave the officer the insurance and vehicle registration. The officer returned with tickets for driving without a license and having an expired inspection sticker. Afterward, Plaintiff 18 saw that the license plate was still firmly affixed to the car. Plaintiff 18 believes he was stopped solely because he is Latino.

69.     Upon information and belief, in March 2011, Plaintiff 20 was stopped while driving in Suffolk County by two JOHN DOE Defendant SCPD Officers. The officers did not provide any explanation for the stop, for which there was no lawful basis. One JOHN DOE Defendant SCPD Officer ordered Plaintiff 20 to exit the car and put his hands on the car; the officer unlawfully searched his person and car without consent or probable cause. Plaintiff 20 believes he was stopped and searched solely because he is Latino.

**B. SCPD Officers Targeted Plaintiffs for Traffic Stops at Checkpoints in Areas Where Disproportionate Numbers of Latinos Live and Travel**

70.     Over the past decade the SCPD has routinely set up checkpoints in predominantly Latino neighborhoods throughout Suffolk County. The purpose of the checkpoints is not to inspect for sobriety or other specific illegal conduct. Rather, the purpose is to target Latinos in Suffolk County and ask for documentation without having any basis for believing that a crime or traffic violation has been committed. The overwhelming majority of these checkpoints are set up in predominantly Latino neighborhoods and the vehicles stopped are predominantly those with Latino drivers and passengers.

71.    Since 2008, Plaintiff 5 has been stopped at least two times at checkpoints in his predominantly Latino neighborhood in Suffolk County, including an incident in or about March 2010.  The checkpoints were manned by multiple JOHN DOE Defendant SCPD police officers who were stopping Latino drivers and asking for identification.  Plaintiff 5 was not given an explanation for why he was stopped, and there was no legitimate basis for the stop.  During Plaintiff 5's first checkpoint stop he received two tickets, including a ticket for driving without a license.  During Plaintiff 5's second stop, he received a ticket for driving without a license.  Plaintiff 5 saw many other Latinos stopped at the same checkpoints and believes he was stopped solely because he is Latino.

72.    Plaintiff 6 has also been stopped at checkpoints on two or three occasions by multiple JOHN DOE Defendant SCPD police officers, between 2003 and 2009.  Plaintiff 6 was not given an explanation for being stopped, and there was no legitimate basis for these stops.  Notwithstanding, Plaintiff 6 would get tickets for driving without a license or insurance, even though the car that he was driving was insured.  Plaintiff 6 saw many other Latinos stopped at the same checkpoints and believes he was stopped solely because he is Latino.

73.    Plaintiff 7 has been stopped at numerous checkpoints in predominantly Latino neighborhoods in Suffolk County by multiple JOHN DOE Defendant SCPD police officers, including a recent stop in July 2014.  Plaintiff 7 was not given an explanation for being stopped, and there was no legitimate basis for these stops.  Notwithstanding, Plaintiff 7 would get tickets for driving without a license.  Plaintiff 7 saw many other Latinos stopped at the same checkpoints and believes he was stopped solely because he is Latino.

74.    Plaintiff 11 has been stopped at checkpoints multiple times in the past few years by multiple JOHN DOE Defendant SCPD police officers, including an incident in September

2013. For example, in summer 2013, Plaintiff 11 was stopped by JOHN DOE Defendant SCPD Officer at an SCPD-manned checkpoint in Suffolk County and asked for her license and registration. Several months later, in September 2013, Plaintiff 11 was stopped again at a checkpoint in a predominantly Latino neighborhood. JOHN DOE Defendant SCPD Officer issued Plaintiff 11 a ticket for driving without insurance, even though she had insurance and showed her insurance card to the officer. Plaintiff 11 was not given an explanation for why she was stopped, and only ever saw other Latino drivers stopped at these checkpoints. Plaintiff 11 believes she was stopped and ticketed solely because she is Latina.

75.     In September 2012, Plaintiff 14 was stopped by multiple JOHN DOE Defendant SCPD police officers at an SCPD-manned checkpoint while driving with his children in an area in Suffolk County that is heavily traveled by Latinos. Plaintiff 14 was given no explanation for the stop, and there was no legitimate basis for the stop. The officers asked for Plaintiff 14's driver's license and then arrested him for driving without a license and for failing to pay previously unpaid traffic tickets. Plaintiff 14 saw many other Latinos stopped at the same checkpoint and believes he was stopped solely because he is Latino.

76.     In October 2009, Plaintiff 17 was stopped at a checkpoint in Suffolk County manned by numerous JOHN DOE Defendant SCPD officers. The officers provided no explanation for the stop, and there was no legitimate basis for the stop. The SCPD officer asked him if he had a driver's license. Plaintiff 17 gave JOHN DOE Defendant SCPD Officer an international driver's license and then received a ticket for driving without a license. Plaintiff 17 saw many other Latinos stopped at the checkpoint and believes he was stopped solely because he is Latino.

77.     In or around December 2010, Plaintiff 17 was stopped at a checkpoint in a predominantly Latino neighborhood in Suffolk County manned by multiple JOHN DOE Defendant SCPD officers and was asked for his driver's license.  Plaintiff 17 was instructed to get out of the car and was illegally searched without permission or probable cause.  Plaintiff 17 was then arrested by a JOHN DOE Defendant SCPD Officer for failing to pay a traffic ticket that he believed he had previously paid.  Plaintiff 17 saw many other Latinos stopped at the same checkpoints and believes he was stopped solely because he is Latino.

### C. The SCPD Subjected Latinos, Including Named Plaintiffs, to its Criminal and Discriminatory "Stop-and-Rob" Scheme

78.     For many years, Latinos in Suffolk County have been subjected to a stop-and-rob scheme whereby Defendant Greene and various JOHN DOE Defendant SCPD officers had a practice and pattern of targeting Latino drivers for unlawful stops and searches during which cash was stolen.  Suffolk County Latinos were specifically targeted based on the belief that these drivers were likely to be undocumented and therefore prone both to carry cash and to not report any theft.

79.     Defendant Greene would station his patrol car on Suffolk County thoroughfares frequently used by Latino motorists or near common destinations in Latino neighborhoods, including certain laundromats, gas stations, and local delis.  When Defendant Greene spotted a Latino driving past, he would pull the driver over without any legitimate justification.  Defendant Greene would then request the driver's license and registration.  In the event that a valid license was not produced, Defendant Greene would request the driver's wallet and walk away from the driver's vehicle or alternatively ask the driver to exit the vehicle, whereupon he would search the driver and/or the interior of the vehicle, without permission or probable cause, to locate the driver's wallet.

80.     Defendant Greene would then search the wallet, and if the driver was carrying cash, would steal money, and then return the wallet to the driver or to its location in the vehicle. In some of the instances, other JOHN DOE Defendant SCPD officers would be present and participate during the stop-and-rob.

81.     On January 30, 2014, Defendant Greene was arrested following a sting operation conducted by an undercover detective acting under the supervision of the Suffolk County District Attorney's Office. The sting operation involved the undercover Latino officer driving in the Medford, Coram, and Farmingville areas of Suffolk County to see if Defendant Greene would pull him over. Upon stopping the undercover officer, Defendant Greene requested that the detective exit the vehicle so that it could be searched, at which point Defendant Greene was recorded on video stealing $100 from an envelope in the vehicle's interior.

82.     On March 24, 2014, Defendant Greene was indicted on twenty-one counts of criminal conduct in connection with stopping and stealing money from seven Latinos in Suffolk County. On June 24, 2014, Defendant Greene was indicted on an additional 60 counts of criminal conduct in connection with stopping and stealing money from another twenty Latinos in Suffolk County. In connection with each victim, Defendant Greene is charged with three offenses: grand larceny in the fourth degree as a hate crime, grand larceny in the fourth degree, and official misconduct.[3]

83.     In March 2014, shortly before several stop-and-rob victims were scheduled to testify before the grand jury, multiple JOHN DOE Defendant SCPD officers went to the homes of Plaintiff 1, Plaintiff 13, and Plaintiff 15, each of whom was scheduled to testify. The officers

---

[3] Plaintiffs #1-21 maintain that to the best of their recollection, the dates alleged below are accurate and consistent with the information provided. Certain minor discrepancies may exist with respect to the dates enumerated in the corresponding indictments issued against Defendant Greene and the dates provided herein, notwithstanding.

repeatedly attempted to discuss Defendant Greene's case despite the SCPD's prior commitment that no SCPD officers would contact victims during the course of the investigation into Defendant Greene and that all contact would originate from the Suffolk County District Attorney's Office.

84.     Many Latinos, in addition to the named Plaintiffs, driving through Suffolk County have been the victim of this stop-and-rob scheme. Multiple victims recounted to members of the SCPD that their stop-and-rob experiences involved SCPD officers other than Sergeant Greene.

### 1. Victims A, B, and C Were Stopped and Robbed by Multiple SCPD Police Officers

85.     In or around Fall 2008, three Latino Suffolk County residents, Victims A, B, and C, had finished a landscaping job in Suffolk County and were sitting in their employer's parked truck waiting for him to drive them home when an SCPD patrol car with two SCPD police officers approached. The first police officer asked Victim A for his driver's license. Victim A said he did not have one but was just waiting for a ride and not driving the truck. The police officer ordered Victims A, B, and C out of the truck. The police officer then searched the truck without consent from the owner or Victims A, B, and C. Victims A, B, and C were told to place their hands on the truck while they were illegally frisked and searched by both police officers without their permission. The officers then illegally searched the men's wallets. The officers returned to their patrol car with the wallets. A while later, the officers returned the wallets and left. Victims A, B, and C found that $100 had been stolen from each of their wallets.

### 2. Victim D and Victim E Were Stopped and Robbed by Multiple SCPD Officers

86.     In spring 2011, Victim D, a Latino male residing in Suffolk County, was walking with a friend, Victim E, also a Latino male residing in Suffolk County, to a convenience store near their homes. Both men were stopped without cause by an SCPD police officer just outside

the convenience store.   The officer then illegally frisked both men without permission or justification.   The officer removed and took possession of Victim D's wallet during the search and kept it with him when he returned to his police car.   The officer derisively referred to Victim E, who did not have a wallet or any identification on him, as "Fernando."   A second SCPD officer arrived in another patrol car.   The officer eventually returned the wallet and let the men go.

87.    After the SCPD officers left, Victim D found that $100 had been stolen from his wallet and immediately called 911, demanding to speak to an operator in Spanish.   He was placed on hold, and the call was disconnected.    Victim D called again and told a Spanish-speaking dispatcher that $100 had been stolen from him by SCPD officers, that he had pictures of the officers and a witness to the incident, and that he would call the media if his $100 was not returned to him.   The dispatcher told Victim D not to call anyone and promised to speak to the precinct boss.   When the dispatcher called Victim D back, she told him to stay put and that an officer would meet him there to return the money.   Shortly afterward, a different, English-speaking officer met Victim D near the convenience store and handed him $100.   The officer, whom Victim D had not seen before, stated, "Amigo, this money fell out of the wallet," and told him "Don't call 911 anymore, or the news."

88.    In early February 2014, Victim D learned that Defendant Greene had been arrested for targeting Latino drivers by stopping and stealing from them.   Victim D contacted the District Attorney's office and was later interviewed by Lieutenant Milagros Soto. Approximately a week after his initial interview, Victim D spoke to Defendant Soto, who told him that she had located and listened to the audio recordings of both Victim D's initial call to

911 and the 911 operator's call to the precinct commander, and that both of these recordings corroborated his story.

89.     Upon information and belief, despite Defendant Soto's having heard the two audio recordings confirming Victim D's encounter, neither the SCPD, the District Attorney, nor Defendant Soto initiated any criminal or departmental charges against any SCPD "commander" or other officer for this attempt to prevent Victim D from disclosing what had happened to him.

### 3. Plaintiff 1 Was Stopped and Robbed

90.     In or about September 2012, an SCPD officer stopped Plaintiff 1 while he was driving in Suffolk County.  The SCPD officer did not tell Plaintiff 1 why he had been stopped, and there was no legitimate basis for the stop.  Upon information and belief, the officer in question was Defendant Greene.

91.     After determining that Plaintiff 1 did not have a license or other identification, Defendant Greene ordered Plaintiff 1 to get out of the car, walk to the back of the car, and face away from him.  Defendant Greene then illegally searched Plaintiff 1's person and car without consent or probable cause.  While patting down Plaintiff 1, Defendant Greene removed Plaintiff 1's wallet from his pocket and took it with him to his patrol car.  Defendant Greene returned to Plaintiff 1's car and allowed him to leave without issuing a ticket.  Plaintiff 1 realized that $200 had been stolen.  Plaintiff 1 believes that he was illegally stopped and robbed from solely because he is Latino.

92.     In or around September 2012, approximately two weeks after the first stop, Plaintiff 1 was stopped by an SCPD officer while driving back from the bank, where he had withdrawn $450.  The SCPD officer pulled him over and asked for a license or ID.  The officer did not provide an explanation for why Plaintiff 1 had been pulled over, and there was no

legitimate basis for the stop.  Upon information and belief, the officer in question was Defendant Greene.

93.    Defendant Greene ordered Plaintiff 1 out of the car, searched Plaintiff 1 without justification or permission, and took Plaintiff 1's wallet.  Defendant Greene went to the patrol car with the wallet, then returned and told Plaintiff 1 he could go.  When Plaintiff 1 found that there was only $250 remaining in his wallet and that Defendant Greene had stolen $200.  Plaintiff 1 believes that he was illegally stopped and robbed solely because he is Latino.

94.    After this second incident, Plaintiff 1 became fearful of leaving his house and no longer carried large amounts of cash for fear of being robbed by the police.  Over the next two years, Plaintiff 1 was stopped an additional four times by Defendant Greene without being told why he was stopped.

### 4.  Plaintiff 2 Was Stopped and Robbed

95.    In June 2012, Plaintiff 2 was driving in Suffolk County and when he pulled into his driveway, an SCPD officer approached his car.  Plaintiff 2 gave the officer his vehicle registration and Mexican ID.  The police officer did not explain why he had stopped him, and there was no legitimate basis for the stop.  Upon information and belief, the officer in question was Defendant Greene.

96.    Defendant Greene told Plaintiff 2 to place his wallet on the passenger seat and to get out of the car.  Defendant Greene illegally frisked Plaintiff 2 without justification or consent and took him to the front of the patrol car.  Defendant Greene then proceeded to illegally search Plaintiff 2's car without permission.  When finished, Defendant Greene left.  Plaintiff 2 then found $100 was stolen from his wallet. Plaintiff 2 believes that he was illegally stopped and robbed from solely because he is Latino.

25

97.     That afternoon, Plaintiff 2's sister-in-law, who speaks English, called and reported the incident to the SCPD.  Plaintiff 2 later received a letter in English about the complaint.  Then, in January 2013, after about six months had passed, Plaintiff 2 received a call from the SCPD asking him to make a report in person.  Plaintiff 2 did not keep his appointment because he did not fully understand the procedures and was afraid of what might happen to him. Soon after, Plaintiff 2 went to the Internal Affairs Office to make a report with his brother and his cousin, Plaintiff 3, who had also been the victim of the stop-and-rob scheme.

98.     After this incident, Plaintiff 2 became afraid to drive due to his belief that he would be stopped because of his race, and stopped regularly doing so.  Plaintiff 2 was eventually hospitalized for ten days in September 2014 for depression and anxiety.

### 5.  Plaintiff 3 Was Stopped and Robbed

99.     Sometime in August 2012, while walking home, Plaintiff 3 was stopped by an SPCD officer who pulled into his driveway.  The officer then instructed Plaintiff 3 to place his hands on the patrol car while he was unlawfully frisked without justification or his consent. Upon information and belief, the officer in question was Defendant Greene.

100.    Defendant Greene asked for Plaintiff 3's identification, and when told that he only had a Mexican consular ID, removed Plaintiff 3's wallet from his back pocket.  When Plaintiff 3 tried to turn around, Defendant Greene put a hand on his shoulder and told him not to move. Defendant Greene returned the ID and then left.  Plaintiff 3 found that $100 had been stolen from his wallet. Plaintiff 3 believes that he was illegally stopped and robbed from solely because he is Latino.

101.    A few weeks later, Plaintiff 2 called Plaintiff 3 and told him that he had been stopped and robbed by an SCPD police officer.  Plaintiff 2's sister-in-law filed a report by telephone on behalf of both men.

102.     Accompanied by Plaintiff 2, Plaintiff 3 went to the SCPD in September 2012 to file an in-person report with Defendant Lieutenant Milagros Soto from the SCPD. The two men were told that there would be an investigation and that there had been reports of others who had also been stopped and robbed. On or around January 2013, Lieutenant Soto called Plaintiff 3 to say that he needed to be interviewed again. Lieutenant Soto did not contact him again until January 2014, when she arrived at his house unannounced.

### 6. Plaintiff 4 and Plaintiff 5 Were Stopped, and Plaintiff 4 Was Robbed

103.     In or around October 2013, Plaintiff 4 was a passenger in Plaintiff 5's car when an SCPD patrol car pulled them over. The officer did not give a legitimate reason for stopping the men, and there was no legitimate basis for the stop. Upon information and belief, the officer in question was Defendant Greene.

104.     Defendant Greene asked Plaintiff 4 and Plaintiff 5 for their driver's licenses, which he then took with him to his patrol car. When Defendant Greene returned, he illegally searched Plaintiff 4's person and belongings without permission and took his wallet and cell phone from his pockets while standing behind Plaintiff 4. Defendant Greene then returned both items.

105.     Defendant Greene also instructed Plaintiff 5 to get out of the car and then illegally frisked Plaintiff 5, without consent or justification, and took everything out of his pockets, including his wallet and some loose cash. Defendant Greene then told the two men that they could leave. Plaintiff 4 found that $100 had been stolen from his wallet. Plaintiff 4 and Plaintiff 5 believe they were illegally stopped and robbed from solely because they are Latino.

### 7.  Plaintiff 6 and Plaintiff 7 Were Stopped and Robbed

106.    In or around January of 2013, Plaintiff 7 was driving in Suffolk County with Plaintiff 6 when an SCPD officer pulled them over without explanation or a legitimate basis. Upon information and belief, the SCPD officer was Defendant Greene.

107.    Defendant Greene asked for Plaintiff 7's driver's license, and when Plaintiff 7 replied that he did not have one, Defendant Greene instructed him to get out of the car. Defendant Greene illegally searched Plaintiff 7's pockets without permission and removed his wallet and cell phone while telling Plaintiff 7 to keep looking forward.  Defendant Greene returned Plaintiff 7's belongings and instructed him to return to the car.

108.    Defendant Greene next instructed Plaintiff 6 to get out of the car.  Defendant Greene illegally searched Plaintiff 6's pockets without permission and removed his wallet, telling him to look forward and not turn around.  Defendant Greene asked Plaintiff 6 if he was carrying money and if he knew how much.  Defendant Greene then returned Plaintiff 6's belongings to the car and instructed him to return to the vehicle as well.

109.    After the officer left, Plaintiff 7 found that $100 had been stolen from his wallet, and Plaintiff 6 found that $200 had been stolen from his wallet.  Plaintiff 6 and Plaintiff 7 believe they were illegally stopped and robbed from solely because they are Latino.

### 8.  Plaintiff 8 Was Stopped and Robbed

110.    In or around spring 2011, Plaintiff 8 was driving in Suffolk County and was stopped by an SCPD officer.  The officer asked for Plaintiff 8's ID and registration but did not provide any explanation for the stop, and there was no legitimate basis for the stop.  Upon information and belief, the SCPD officer in question was Defendant Greene.

111.    Defendant Greene told Plaintiff 8 that he needed to check his wallet.  Defendant Greene instructed Plaintiff 8 to stand behind the patrol car and put his hands on the trunk.

Defendant Greene proceeded to conduct an illegal search of Plaintiff 8's car without his consent. Defendant Greene then let him go. Plaintiff 8 found that $200 had been stolen from his wallet. Plaintiff 8 believes that he was illegally stopped and robbed solely because he is Latino.

112.    In or around January 2014, Plaintiff 8 was driving in Suffolk County when he was pulled over again by an SCPD officer. Upon information and belief, the SCPD officer in question was Defendant Greene. Defendant Greene asked Plaintiff 8 for his ID and vehicle registration. Defendant Greene then stated that he needed to check Plaintiff 8's wallet and instructed him to stand by the patrol car. Defendant Greene illegally searched the vehicle, including the trunk, without justification or consent. Defendant Greene then returned Plaintiff 8's wallet and let him leave. Plaintiff 8 found that $150 had been stolen. Plaintiff 8 believes that he was illegally stopped and robbed from solely because he is Latino.

### 9. Plaintiff 9 Was Stopped and Robbed

113.    In or around March 2013, Plaintiff 9 was driving in Suffolk County when he was illegally stopped by an SCPD officer. The officer did not provide any explanation for the stop, and there was no legitimate basis for the stop. Upon information and belief, the SCPD officer in question was Defendant Greene.

114.    Defendant Greene asked for Plaintiff 9's driver's license, and Plaintiff 9 responded that he did not have one. Defendant Greene ordered Plaintiff 9 out of the car, illegally frisked him without permission, and took his wallet. Defendant Greene asked if he could search his car, to which Plaintiff 9 consented. Defendant Greene left the wallet on the dashboard before he departed. Plaintiff 9 found that $100 had been stolen from his wallet. Plaintiff 9 believes that Defendant Greene stopped and robbed him over solely because he is Latino.

115.    Two weeks later, Defendant Greene again stopped Plaintiff 9 while he was driving in Suffolk County. Defendant Greene did not explain why he had pulled over Plaintiff 9.

Plaintiff 9 commented that he knew the officer and commented on the prior stop. Defendant Greene asked if he had been issued a ticket, to which Plaintiff 9 responded that he had not been ticketed. Plaintiff 9 noticed a look of recognition, and Defendant Greene released Plaintiff 9 without issuing him a ticket. Plaintiff 9 believes that he was illegally stopped solely because he is Latino.

### 10. Plaintiff 10 Was Stopped and Robbed

116.     Plaintiff 10 estimates that since 2005, he has been stopped by Defendant Greene on numerous occasions, and robbed during several of those stops. After the first few times Plaintiff 10 was stopped and robbed by Defendant Greene, he stopped carrying money other than for basic necessities or gas. If Plaintiff 10 was stopped and did not have money on him, Defendant Greene would often contact other JOHN DOE Defendant SCPD officers to issue tickets.

117.     In or around summer 2005, an SCPD officer stopped Plaintiff 10 in Suffolk County. Upon information and belief, the SCPD officer in question was Defendant Greene. Defendant Greene asked for Plaintiff 10's driver's license and vehicle registration. Defendant Greene then ordered Plaintiff 10 out of the car and illegally searched his person without justification or permission. Defendant Greene removed Plaintiff 10's wallet from his pocket, and Plaintiff 10 heard the officer fumbling with it before putting it back in his pocket. After Plaintiff 10 was told that he could go, he found that $600 had been stolen from his wallet. Plaintiff 10 believes that he was illegally stopped and robbed from solely because he is Latino.

118.     In or around summer 2012, Plaintiff 10 was hired for a construction job in Suffolk County that required him to travel back and forth between two Suffolk County towns. A few days into the job, an SCPD officer began to repeatedly stop Plaintiff 10 on the way to or from this job, without providing an explanation, and without legitimate basis for the stop. Upon

information and belief, the SCPD officer in question was Defendant Greene.  On multiple occasions, Defendant Greene stole money from Plaintiff 10's wallet during these stops, usually in amounts under $100.  If Plaintiff 10 was not carrying any cash, Defendant Greene would call JOHN DOE Defendant SCPD officers to the scene and have them issue tickets for driving without a license.  Plaintiff 10 quit the job to avoid this continued harassment and theft. Plaintiff 10 believes that he was repeatedly targeted for these illegal stop-and-robs solely because he is Latino.

119.  Around winter 2012, Plaintiff 10 was driving in Suffolk County when he was pulled over by Defendant Greene without any explanation or basis for the stop.  Defendant Greene instructed Plaintiff 10 and the two passengers to get out of the car and illegally searched all of their pockets without permission.  None of the passengers were carrying a lot of money, but Defendant Greene stole $6 from one of the passenger's pockets.  Defendant Greene then called JOHN DOE Defendant, a second SCPD officer who came and issued Plaintiff 10 a ticket for driving without a license.

**11. Plaintiff 12 Was Stopped and Robbed**

120.  In or around May 2012, Plaintiff 12 was driving in Suffolk County when he was stopped by an SCPD officer.  Upon information and belief, the officer in question was Defendant Greene.  Defendant Greene provided no explanation for the stop, and there was no legitimate basis for the stop.  Defendant Greene asked for Plaintiff 12's driver's license.  Defendant Greene ordered Plaintiff 12 to put everything from his pockets on the seat and to get out of the vehicle. Plaintiff 12 did so, leaving his cell phone and wallet in the vehicle.  Defendant Greene then searched the car without consent, including a search of the trunk.  Defendant Greene did not ask for permission for this search, and Plaintiff 12 did not consent.  When Plaintiff 12 returned to his

vehicle, he noticed that his wallet had been moved and that $100 had been stolen. Plaintiff 12 believes that he was illegally stopped and robbed from solely because he is Latino.

### 12. Plaintiff 13 Was Stopped and Robbed

121. In or around February 2013, Plaintiff 13 was driving in Suffolk County with a passenger in the car when an SCPD patrol car pulled him over. Upon information and belief, the officer in question was Defendant Greene. Defendant Greene asked for Plaintiff 13's license, and Plaintiff 13 replied that he did not have one. Defendant Greene also asked for the passenger's ID, which he took to his patrol car. Upon returning, Defendant Greene then ordered Plaintiff 13 to get out and place his hands on the car. Defendant Greene searched the car and then searched Plaintiff 13 without justification or permission and removed his wallet, causing a $100 bill to fall to the ground. Defendant Greene picked up the bill. Defendant Greene then returned the wallet, telling Plaintiff 13 he could leave. Plaintiff 13 found that $100 had been stolen. Plaintiff 13 believes that he was illegally stopped and robbed from solely because he is Latino.

122. A couple months later, in or around April 2013, Plaintiff 13 was driving in Suffolk County with a passenger in the car when he was stopped by an SCPD officer without explanation or basis for the stop. Upon information and belief, the officer in question was Defendant Greene. Defendant Greene asked for Plaintiff 13's license, and Plaintiff 13 replied that he did not have one but provided another form of identification. Defendant Greene also told the men to get out of the car and illegally searched the car without permission. Both men left their wallets in the glove box of the car. Defendant Greene frisked both men and then told them they could leave. Plaintiff 13 found that $40 had been stolen from his wallet. Plaintiff 13 believes that he was illegally stopped and robbed from solely because he is Latino.

### 13. Plaintiff 14 Was Stopped and Robbed

123.    In or around early May or June 2011, Plaintiff 14 was driving in Suffolk County when he was stopped by an SCPD officer and asked for his license. The officer did not provide an explanation for the stop, and there was no legitimate basis for the stop. Upon information and belief, the officer in question was Defendant Greene. Plaintiff 14 handed Defendant Greene his consular ID. Defendant Greene then took Plaintiff 14's wallet and instructed him to get out of the car. Defendant Greene illegally searched Plaintiff 14's car without permission and them told him that he could leave. Plaintiff 14 found $100 had been stolen from his wallet. Plaintiff 14 believes that he was illegally stopped and robbed from solely because he is Latino.

### 14. Plaintiff 15 Was Stopped and Robbed

124.    In May 2012, Plaintiff 15 recalls driving in Suffolk County when he was pulled over without explanation or any legitimate basis by an SCPD officer. Upon information and belief, the SCPD officer in question was Defendant Greene. Defendant Greene asked Plaintiff 15 for his license, and Plaintiff 15 gave him his Honduran passport. Defendant Greene then instructed Plaintiff 15 to get out and go to the back of the patrol car. Plaintiff 15 did so, leaving his keys on the dashboard and his wallet in the center console between the two front passenger seats. Defendant Greene frisked and illegally searched Plaintiff 15's person without permission, and illegally searched the car, including the glove box and the trunk, without permission, before leaving. Plaintiff 15 found that $20 had been stolen from his wallet. Plaintiff 15 believes that he was illegally stopped and robbed solely because he is Latino.

### 15. Plaintiff 16 Was Stopped and Robbed

125.    In or around August 2012, Plaintiff 16 was driving in Suffolk County when he was pulled over by an SCPD officer who did not provide an explanation for the stop. Upon information and belief, the SCPD officer in question was Defendant Greene. Defendant Greene

33

asked for Plaintiff 16's ID and vehicle registration and then searched Plaintiff 16's person and car. Plaintiff 16's wallet was in the car. Plaintiff 16 found that $150 had been stolen from his wallet. Plaintiff 16 believes that he was illegally stopped and robbed from solely because he is Latino.

### 16. Plaintiff 17 Was Stopped and Robbed

126. In or around August 2010, Plaintiff 17 was stopped by an SCPD police officer while driving in Suffolk County. The SCPD officer provided no explanation for the stop, and there was no legitimate basis. Upon information and belief, the officer in question was Defendant Greene. Defendant Greene asked for Plaintiff 17's ID and vehicle registration and instructed him to exit the car. Defendant Greene then took Plaintiff 17's wallet and returned to his patrol car with Plaintiff 17. Defendant Greene showed Plaintiff 17 that he had unpaid tickets in the system. Plaintiff 17 responded that he had paid them all. Defendant Greene then escorted Plaintiff 17 to the trunk of Plaintiff 17's car and asked to review his paperwork again. Following that review, Plaintiff 17 was told that he could go. Plaintiff 17 found that about $100 had been stolen from his wallet. Plaintiff 17 believes that he was illegally stopped and robbed solely because he is Latino. ·

### 17. Plaintiff 18 Was Stopped and Robbed

127. In June 2013, Plaintiff 18 was stopped by an SCPD officer while driving in Suffolk County. Upon information and belief, the SCPD officer in question was Defendant Greene. Defendant Greene did not explain the reason for the stop, and there was no legitimate basis. Defendant Greene ordered Plaintiff 18 to get out of the car and put his hands on the vehicle. The officer then opened the car doors on both sides, and illegally searched inside without permission or justification. Defendant Greene likewise illegally searched Plaintiff 18's person, including his pockets, without permission, and then told him that he could leave.

34

Plaintiff 18 found that $100 had been stolen from his pockets.  Plaintiff 18 believes that he was illegally stopped and robbed from solely because he is Latino.

### 18.  Plaintiff 19 Was Stopped and Robbed

128.    Around June 2012, Plaintiff 19 was driving in Suffolk County when he was stopped by an SCPD officer.  The officer provided no explanation for the stop, and there was no legitimate basis.  Upon information and belief, the officer in question was Defendant Greene.  Defendant Greene ordered Plaintiff 19 to get out of the car and illegally frisked Plaintiff 19 without permission.  Defendant Greene insisted that Plaintiff 19 hand over his wallet and took it with him while he looked into the vehicle.  Defendant Greene then returned the wallet and said that Plaintiff 19 could leave.  Plaintiff 19 found that $150 had been stolen from his wallet.  Plaintiff 19 believes that he was illegally stopped and robbed from solely because he is Latino.

129.    Around September or October 2012, Plaintiff 19 was driving in Suffolk County, when he was stopped by Defendant Greene on two separate occasions during that timeframe.  Defendant Greene provided no reasonable explanation for the stop, and there was no legitimate basis.  During both encounters, Plaintiff 19 told Defendant Greene that he recognized him and that the officer had stopped him before.  Defendant Greene asked if he had previously issued any tickets to Plaintiff 19, and Plaintiff 19 replied that he had not.  Defendant Greene then let Plaintiff 19 go.  Plaintiff 19 believes that he was stopped solely because he is Latino.

### 19.  Plaintiff 20 Was Stopped and Robbed

130.    Around February 2013, Plaintiff 20 was driving in Suffolk County when he was pulled over by an SCPD officer.  No explanation was given for the stop, and there was no legitimate basis.  Upon information and belief, the SCPD officer in question was Defendant Greene. Defendant Greene asked for Plaintiff 20's ID, and when Plaintiff 20 took out his wallet to get it, Defendant Greene took the wallet and illegally searched it without permission.

Defendant Greene then returned the wallet and let Plaintiff 20 go. Plaintiff 20 later noticed that $100 had been stolen from his wallet. Plaintiff 20 believes that he was illegally stopped and robbed from solely because he is Latino.

### 20. Plaintiff 21 Was Robbed by an SCPD Officer Summoned to the Scene of a Traffic Accident

131.    While driving with his wife and children in Suffolk County, Plaintiff 21 was involved in a car accident in October 2014. After the accident, Plaintiff 21 provided the SCPD officer who responded to the scene with his driver's license, insurance card, and registration. Upon information and belief, the SCPD officer in question was Defendant Podormer. Defendant Podormer searched the car with Plaintiff 21's consent. She also unlawfully frisked Plaintiff 21 without seeking permission or obtaining consent. She then took Plaintiff 21's wallet with her to her squad car. Due to injuries caused by the accident, an ambulance took Plaintiff 21 to the hospital. Plaintiff 21 tried to recover his wallet which contained $300 in cash by inquiring at the hospital, calling the police immediately after his physical examination, and then later visiting the third precinct police station on at least four separate occasions to determine what happened to his wallet. Neither Defendant Podormer nor the SCPD returned Plaintiff 21's wallet. Plaintiff 21 again visited the third precinct in February 2015 to file a written complaint and formally lodge his grievance against Defendant Podormer. Despite clear SCPD protocols requiring the police officer on duty to take Plaintiff 21's written complaint, when Plaintiff 21 asked to fill out a written complaint, he was told, "No, come back tomorrow at 3pm, the person who can talk to you about your complaint will be here then." He arrived the next day at the third precinct, at 3pm, on time, and was told that the person he was supposed to speak with at 3pm was not there. To date, the SCPD has not returned his wallet, which contained his driver's license, credit cards, other personal information, and $300 in cash.

**D. In Addition to Targeting Latinos for Unfounded Law Enforcement Activities, Defendant SCPD has Failed to Provide Policing Services to Latinos in a Race-Neutral Manner by Neglecting to Protect and Serve Latino Victims of Crime**

132.    Latinos in Long Island have long been the victims of racial and ethnic discriminatory policing. A 2008 survey conducted by EraseRacism found that 52% of Latinos in Long Island have experienced discrimination because of their racial or ethnic background, including discrimination by the SCPD. *See* EraseRacism, *"Black and Latino Experiences with Discrimination on Long Island,"* (2008), *available at* http://www.eraseracismny.org/storage/documents/housing/Long_island_survey_report_2009.pdf.

133.    A review of 2012 hate crime data conducted by BiasHELP, Inc. an affiliate of The Long Island Network of Community Services, Inc., reveals that Nassau and Suffolk Counties accounted for 27% of New York State hate crimes in 2012, despite the fact that Nassau and Suffolk Counties contain just 18.6% of New York State's population. Suffolk County was found to have the highest concentration of hate crimes at 117 (as compared to Nassau's 61), and only a 5% arrest rate for such crimes, the lowest arrest rate in New York state. Between 2011 and 2012 alone, Suffolk County had experienced a 200% rise in reported hate crimes.

134.    Despite the disproportionately high rate of hate crimes in Suffolk County, the SCPD has had a long history of failing to adequately protect Latinos against hate and/or any other crimes, including the failure to investigate crimes perpetrated against Latinos. Examples include:

- In July 2007, four young Caucasian men attacked two Suffolk County Latino residents. When one of the victims went to the police to report the attack, an SCPD officer asked him why he didn't stay in his own country. Upon information and belief, no arrests were made.

- In July 2008, two Suffolk County Latino residents were attacked by a group of Caucasian teenagers. When the SCPD arrived, they told one of the victims to "go home" or else "fight them again if you want." Upon information and belief, no arrests were made.

37

- In November 2008, one of the above-mentioned Suffolk County Latino residents was attacked a second time when a group of teenagers threatened him and his friend, saying that they wanted to kill a Hispanic. Upon information and belief, the police were called, but no arrests were made.

- In February 2009, a Latino resident of Suffolk County was walking home when three men jumped out of a car, yelled racial slurs, and beat him. The man's injuries required major surgery. The attack was reported to the SCPD, but no arrests were made.

- In April 2009, a Latino Suffolk County resident was driving when he was hit by a car with two Caucasian passengers. The two men yelled "Stupid Mexican!" and when the victim got out of the car to talk to them, they beat him until the SCPD police arrived. No arrests were made.

135. In addition to failing to investigate and prosecute hate crimes aimed at Latinos, the SCPD also has a history of underreporting hate crimes to the New York State Division of Criminal Justice Services (the "DCJS"). For instance, a June 18, 2010 memo regarding 2004-2010 Hate Crime Statistics reveals that the hate crime data reported to the DCJS differed from the total number of hate crime incidents that actually occurred in Suffolk County. In 2011, the U.S. Department of Justice likewise found that the SCPD did not accurately track or trend monthly reported hate crime data, noting that the underreporting issue dated back to at least June 2004, when the then–New York State Hate Crimes Reporting Coordinator wrote a letter to the SCPD noting that SCPD had not been correctly reporting hate crimes to the DCJS.

136. Legislators in Suffolk County have proposed and passed several ordinances targeting Latinos. In 2007, then–County Executive Steve Levy co-founded "Mayors and Executives for Immigration Reform," a national group that promoted immigrant-cleansing ordinances. Some of Suffolk County's anti-immigrant ordinances and practices have been found illegal by a federal judge. *See Valdez v. Town of Brookhaven*, No. 2:05-cv-04323-JS-ARL, 2005 WL 3454708 (E.D.N.Y. Dec. 15, 2005).

137.    In January 2007, Suffolk County Legislators Jack Eddington and Joseph Caracappa introduced an anti-loitering/solicitation bill that attempted to ban Latino day laborers from seeking employment along county roadways by making it unlawful for day laborers to loiter or stand along county roadways for the purpose of attempting to solicit products or services.

138.    When the bill failed to pass, certain legislators wrote to then–SCPD Commissioner Richard Dormer encouraging stronger police enforcement of traffic safety laws, believing that the problems outlined in these anti-loitering bills could be adequately addressed by the officers of the SCPD.  The SCPD agreed to enforce the traffic laws which would "achieve the same objectives as were contained" in the anti-loitering bill.  In April 2007, then–Suffolk Assistant Chief of Patrol Robert Ponzo, sent an e-mail to the SCPD commanders stating that "[s]tarting immediately any person operating a motor vehicle who is not licensed will be summarily arrested if he or she had no other form of identification."

139.    Upon information and belief, during the first three weeks of the new policy, Suffolk County police arrested 50 people for driving without a driver's license or other form of identification, compared to 66 arrests for the same offense in all of 2006, primarily on roads heavily travelled by Latino drivers.  Upon information and belief, approximately 77% of these drivers were identified in the accompanying police reports as Latino.  66% of all of the arrests took place in the Third and Sixth precincts, communities with larger Hispanic populations than other parts of Long Island.  This 2007 policy to arrest all unlicensed drivers drew public criticism that it led to the aggressive pursuit and stopping without cause of undocumented Latino immigrants driving on Suffolk County roads.  Then–Suffolk Administrative Judge H. Patrick Leis III publicly noted that a majority of the arrests for unlicensed driving were taking place in

Farmingville—an area where Hispanic day laborers have long been known to congregate and look for work. Judge Leis expressed surprise that these cases were going to district court and that many of the arrestees were Latino. Suffolk County District Attorney Thomas J. Spota likewise publicly stated that he was concerned that the policy disproportionately impacted Hispanic residents.

140. As a result of these concerns, then–Commissioner Dormer suspended the policy for a mere two weeks in May 2007, only to reinstitute it. Upon information and belief, the SCPD's 2007 review of this policy was insufficient given that at the time, the SCPD did not collect traffic stop data from all precincts to even permit an assessment of whether racial profiling was, in fact, occurring. Accordingly, at the time Dormer made this decision, complete data was not available to refute allegations of racial profiling tied to the "no identification arrest" policy.

141. Upon information and belief, the 2007 directive to arrest all unlicensed drivers has led to the racial profiling of undocumented Latino immigrants driving on Suffolk County roads. In 2009, then–Suffolk County Police Benevolent Association Vice President Noel Digerolamo publicly stated that he believed this 2007 directive to arrest all unlicensed drivers led to the aggressive pursuit and stopping without cause of undocumented Latino immigrants driving on Suffolk County roads.

142. A 2009 report issued by the Southern Poverty Law Center indicates that Latinos were disproportionately targeted by this arrest policy, given that Latinos accounted for roughly 14% of the Suffolk County's population in 2009, but accounted for roughly 50% of the individuals fined for motor vehicle violations.

40

143.     Upon information and belief, this policy—which was enacted as a means to target and harass undocumented Latinos in Suffolk County—is still in effect today.

**II.     The DOJ Investigates and Finds Defendant SCPD's Policies and Practices Discriminate Against Latinos**

144.     On November 8, 2008 a gang of seven teenagers known as the "Caucasian Crew" surrounded and fatally stabbed Marcelo Lucero, a 37-year-old Ecuadorian resident of Suffolk County.  Though Caucasian Crew members engaged in robbing Latinos and described such activities as "beaner hopping" on a weekly basis in Patchogue prior to the death of Marcelo Lurcero, they were never questioned or arrested by the SCPD for the dozens of prior assaults and robberies that they had committed on Latino laborers.

145.     In response to the Caucasian Crew's activities, former County Executive Steve Levy minimized the significance of the Lucero hate-crime murder at the time, describing it as a "one-day story."  The failure by Suffolk County government to take these issues seriously has contributed to SCPD's ongoing pattern, policy, and practice of discriminatory policing affecting Latinos.  SCPD's failure to investigate this series of robberies against Latino laborers, in turn, allowed this pattern of assaults and robberies to continue unabated.

146.     After having their complaints to the SCPD go unanswered, dozens of Latino victims of similar "street crimes" stepped forward to the DOJ to report how their complaints to police appeared to go uninvestigated and unsolved.

147.     In response to such Latino community reports, the United States opened an investigation into the SCPD's possible discriminatory policies and practices in early 2009.  After conducting an initial investigation, they found sufficient evidence to justify opening a formal investigation into the SCPD on September 1, 2009.  The investigation focused on discriminatory policing allegations, including claims that the SCPD discouraged Latino victims from filing

41

complaints and cooperating with the police, and failed to investigate crimes and hate crime incidents involving Latinos.

148.    Upon information and belief, the United States provided then–SCPD Commissioner Dormer and other SCPD command staff oral recommendations regarding its concerns about biased policing throughout the course of its investigation, including in February and March 2010 and again in May 2011.

149.    The United States investigation found rampant and systemic discrimination by the SCPD against Latinos.  On September 13, 2011, the United States issued a Technical Assistance Letter which found:

(a)    SCPD officer training was inadequate and several SCPD policies and procedures were insufficiently detailed and inconsistent with general police practices.

(b)    SCPD's policy that required questioning a person arrested for a crime about his or her immigration status "when there is a reason to believe" that the arrestee is an "undocumented person" or the officer "knows or reasonably suspects" the arrestee is "born outside the country" was subject to discriminatory abuse and too vague to provide officers with necessary guidance.

(c)    Many members of the Latino immigrant community felt that bias-motivated crimes were abetted by SCPD through inaction.

(d)    SCPD's procedures for receiving, investigating, and tracking reports of police discriminatory conduct were inadequate.

(e)    SCPD's procedure for handling citizen complaints concerning discrimination and misconduct were inadequate.

(f)    The SCPD did not have a policy that explicitly prohibited officers from engaging in conduct that tended to discourage a citizen from making a complaint regarding criminal or illegal conduct.

(g)    SCPD's early warning system was inadequate due to the extremely limited scope of the data collected and the absence of any predictive monitoring structure.

(h)    SCPD's vigorous program of using roadblocks and police checks to primarily request documentation of citizenship is unacceptable.   The United States instructed SCPD to ensure that officers at checkpoints inspect only for sobriety or

other specific illegal conduct and not conduct identity checks or otherwise ask for documentation without a basis for believing that a crime has been committed.

150.    In or around December 2013, the United States reached a limited settlement agreement with the SCPD (the "Agreement") which makes clear that the SCPD's policies and practices were insufficient to prevent the targeting of, and discriminatory behavior toward, Latinos in Suffolk County by the SCPD, in violation of the Equal Protection Clause and other constitutional rights.

151.    The Agreement requires that the SCPD implement appropriate policies and training on bias-free policing.  The Agreement is in effect *only until* the SCPD is determined to have "substantially complied" with all of the requirements for at least one year.

152.    Despite the Agreement's requirement that the SCPD must make all non-confidential audits and reports related to compliance publicly available, such information has been withheld from the public.  For example, the SCPD has engaged in wholesale redactions of all available data or failed to release data such as its hate-crime maps, which have to date only been released in a high-level summary format—such that members of the public cannot scrutinize the data.  Moreover, the SCPD has instituted a policy that annual traffic stop data will only be released to the public if the report reveals no evidence of biased based policing.

153.    The Agreement has not adequately addressed all of the problems of discriminatory policing in Suffolk County.  For instance, upon information and belief, the SCPD's revised procedure for the collection of traffic stop data no longer requires that the reason for a traffic stop be recorded prior to an officer exiting his vehicle.  Instead, demographic and other information regarding the traffic stop may be entered upon completion of the stop, allowing for potential manipulation by SCPD officers.  Moreover, a review of the bi-annual SCPD compliance reports required by the Agreement reveal that the SCPD has not implemented

43

the peer review model of analysis recommended by the United States of the traffic stop data collected.

154.    Similarly, many of the stops in the most recent pattern of unlawful stop-and-rob practices targeting Latinos took place during the time period allocated for implementation of the Agreement.  Further, none of the policy and training revisions allegedly made pursuant to the United States' agreement with the SCPD appear to have thwarted the unlawful stops endured by the named Plaintiffs nor facilitated the receipt of police-related misconduct complaints, such as that attempted by Plaintiff 21.    Instead, based on his experience, the obstructionist discouragement of complaints remains the norm at the SCPD despite United States supervision. All of the deficiencies demonstrate that the Agreement was an insufficient means of ending and preventing future discrimination against and harassment of Latinos in Suffolk County.

III.    **Defendant SCPD's "Stop-and-Rob" Scheme and Other Discriminatory or Unconstitutional Police Practices are a Direct and Proximate Result of the Policies, Practices and/or Customs of Defendant SCPD and Defendant Suffolk County**

155.    The pervasive unconstitutional practices of Defendant SCPD, including the targeting of Latinos for unconstitutional traffic stops, frisks, searches, wrongful deprivation of property, and/or unlawful traffic citations, are a direct and proximate result of policies, practices, and/or customs devised, implemented, enforced, and sanctioned by Defendant Suffolk County, Defendant SCPD, Defendant Commissioner Webber, and the SUPERVISORY JOHN DOE Defendants whose identities are presently unknown, with the knowledge that such policies, practices, and/or customs would lead to constitutional violations.  These policies, patterns and practices not only include SCPD Commissioner Richard Dormer's 2007 order to officers to arrest any person operating a motor vehicle who is not licensed if they are unable to offer another form of identification, but also the failure to develop and implement an adequate early warning system; the failure to properly screen, train, and supervise SCPD officers; the failure to

44

adequately monitor and discipline SCPD officers; the encouragement, sanction, and failure to rectify Defendant SCPD's custom and practice of unlawful traffic stops, frisks, detentions, searches, the wrongful deprivation of property, and/or the issuance of unlawful traffic citations; and the failure to properly direct criminal and non-criminal investigations to determine the full reach of the "stop-and-rob" scheme described above.

### A. Despite Being Aware of Discriminatory Policing Practices, Defendant Suffolk County and Defendant SCPD Failed to Develop and Implement an Adequate Early Warning System

156.    Per the 1994 Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141, the DOJ developed professional safeguards and best practices for law enforcement agencies across the country in a variety of different areas, such as monitoring and deterring racially motivated practices when stopping and questioning the drivers of vehicles, passengers, or any other persons.  These include instituting policies and training concerning racial targeting and implementing an early warning system to collect and analyze data on racial profiling in an effort to identify poor officer performance and provide a system for correcting behavior.

157.    For instance, the Performance Assessment Review System ("PARS"), is a well-known early warning system implemented by the Pittsburgh Bureau of Police pursuant to a consent decree entered into with the DOJ concerning discriminatory policing.  Upon information and belief, the DOJ first recommended the widespread adoption of early warning systems akin to PARS in its 2001 report, "Principles for Promoting Police Integrity."  PARS tracks data such as arrests; citizen complaints; civil or administrative claims arising from official duty; civil claims regarding domestic violence, untruthfulness, racial bias, or physical force by officers; traffic stop data, and more.  This data is analyzed to suspicious patterns of activity.  Similarly, in 2001, the Commission on Accreditation for Law Enforcement Agencies ("CALEA") adopted a new standard calling on police agencies to maintain an early warning system as an essential

45

component of a well-managed law enforcement agency. Upon information and belief, the SCPD
is expected to meet CALEA accreditation standards.

158.    Despite being aware of certain discriminatory policing practices, the SCPD failed
to properly adopt and/or implement an effective early warning system and other well-recognized
best practices.    Upon information and belief, had the SCPD instituted these professional
safeguards, it would have promptly identified the inexplicably high number of traffic stops of
Latino drivers in Latino neighborhoods at the hands of Defendant Greene and individual JOHN
DOE Defendants.

159.    Upon further information and belief, in February 2005, the SCPD installed a
system that can be used to collect and maintain traffic stop and other police data for statistical
review and analysis. In 2006, the SCPD began recording the race of motorists pulled over on the
Long Island Expressway and Sunrise Highway as part of a pilot initiative program, which was
later expanded to all of Suffolk County in 2009. Upon information and belief, the traffic data
collection program required that, amongst other information, officers conducting any
self-initiated vehicle or traffic stop record the race of the motorist. The data collected is to be
maintained by the SCPD for statistical review and analysis and published.

160.    Upon information and belief, neither the data collected nor any analysis
performed thereof has ever been publicly released or analyzed in any meaningful way despite the
SCPD's internal police policy and procedure directives to do so. Had the data been properly
collected and analyzed according to best police practices, the results would have shown that
officers were disproportionately stopping and searching Latino motorists in Suffolk County.
Upon information and belief, these policies, patterns, and practices will continue, given the
insufficiencies in the SCPD's performance pursuant to its Agreement with the United States.

**B. Despite Being Aware of Unconstitutional and Discriminatory Policing Practices Targeting Latinos, Defendant Suffolk County and Defendant SCPD Failed to Properly Screen, Train and Supervise SCPD Officers**

161.    Although aware that the work of the SCPD requires extensive training, superior judgment, and close supervision, the County, Defendant SCPD, Defendant Commissioner Webber, and the SUPERVISORY JOHN DOE Defendants have failed to properly screen, train, and supervise SCPD officers, knowing that such failures would result in Fourth, Fifth, and Fourteenth Amendment violations.  Pursuant to the DOJ Agreement, Defendant Suffolk County, Defendant SCPD, Defendant Commissioner Webber, Defendant Lieutenant Milagros Soto, and the SUPERVISORY JOHN DOE Defendants were required to implement numerous training requirements concerning policies prohibiting racial profiling.   On information and belief, Defendants have failed to properly train and supervise SCPD officers, including supervisors, concerning the legal and factual bases for conducting stops and searches that comply with the Fourth and Fourteenth Amendments in an effective manner.

162.    The inadequate screening, training, and supervision of SCPD officers are a direct and proximate cause of the SCPD's rampant unconstitutional stop, searches and deprivation of property.  As a direct and proximate result of Defendants' failure to screen, train, and supervise SCPD officers, Latinos have been subjected to unlawful stops and searches, many times simply because of their race and/or national origin.  By failing to properly screen, train, and supervise SCPD officers, Defendant Suffolk County, Defendant SCPD, Defendant Commissioner Webber, Defendant Lieutenant Milagros Soto, and the SUPERVISORY JOHN DOE Defendants have acted recklessly and with deliberate indifference to the constitutional rights of those who would come into contact with the SCPD.

**C. Despite Being Aware of Unconstitutional and Discriminatory Policing Practices Targeting Latinos, Defendant Suffolk County and Defendant SCPD Failed to Monitor and Discipline SCPD Officers**

163.    Defendant SCPD's widespread discriminatory practices are also a direct and proximate result of the failure of Defendant Suffolk County, Defendant Commissioner Webber, Defendant Lieutenant Milagros Soto, and the SUPERVISORY JOHN DOE Defendants to properly and adequately monitor, discipline, and take necessary corrective action against SCPD officers who engage in, encourage, or conceal unconstitutional practices. Among other things, these Defendants knowingly, deliberately, and recklessly have failed: (a) to take appropriate disciplinary action and corrective measures against SCPD officers who have engaged in unconstitutional stops, frisks, detentions, searches, the wrongful deprivation of property, and/or unlawful traffic citations; (b) to adequately monitor SCPD officers who have received a substantial number of complaints; (c) to devise and implement appropriate oversight, disciplinary, and remedial measures in the face of evidence that no charges are brought or tickets issued (other than driving without a license) against the majority of Latinos stopped by SCPD officers; and (d) to conduct adequate auditing to determine if the stops, frisks, detentions, and searches conducted by SCPD officers comply with written policies.

164.    In December 2013, a Newsday investigation of misconduct cases involving SCPD officers found that, despite a series of high-profile police misconduct cases from the period 2008–2013, individual SCPD officers were subject to some of the weakest oversight in the country due to failures of Defendant Suffolk County and Defendant SCPD. Amongst other findings, Newsday discovered that more than 100 officers involved in serious misconduct cases were found to have either remained on the job or continued to work for years before retiring.

165.    As a direct and proximate cause of the above policies, practices, and/or customs, Latinos have been, and will continue to be, subjected to unconstitutional stops, frisks, detentions,

searches, the wrongful deprivation of property, and/or unlawful traffic citations by the SCPD, simply because such individuals happen to be Latino.   Through such acts and omissions, Defendant Suffolk County, Defendant Commissioner Webber, Defendant Lieutenant Milagros Soto, and the SUPERVISORY JOHN DOE Defendants have acted recklessly and with deliberate indifference to the constitutional rights of individuals who would come into contact with the SCPD.

### D. Though Aware SCPD Officers Were Targeting Latinos, Defendant Suffolk County and Defendant SCPD Have Encouraged, Sanctioned, and Failed to Rectify these Unconstitutional and Discriminatory Policing Practices

166.    Defendant Suffolk County, Defendant Commissioner Webber, Defendant Lieutenant Milagros Soto, and the SUPERVISORY JOHN DOE Defendants have created a pervasive culture of indifference, bias, and animus among the police force toward Latinos in Suffolk County.  With the knowledge that such acts and omissions would create a likelihood of Fourth, Fifth, and Fourteenth Amendment violations, Defendant Suffolk County, Defendant Commissioner Webber, Defendant Lieutenant Milagros Soto, and the SUPERVISORY JOHN DOE Defendants also have encouraged, sanctioned, and failed to rectify or sufficiently investigate the SCPD's unconstitutional practices.  Despite several named Plaintiffs recounting that their stop-and-rob experiences involved multiple SCPD officers, Defendant SCPD and District Attorney Officials have maintained the position that there is no indication of the involvement of SCPD officers other than Defendant Greene in targeting Latinos in Suffolk County.

167.    As a direct and proximate result of the above policies, practices and/or customs, Latinos have been subjected to unconstitutional stops and searches simply because of their race and/or national origin.  Through such acts and omissions, Defendant Suffolk County, Defendant Commissioner Webber, Defendant Lieutenant Milagros Soto, and the SUPERVISORY JOHN

DOE Defendants have acted recklessly and with deliberate indifference to the constitutional rights of those who would come into contact with the SCPD.

## CAUSES OF ACTION

### First Cause of Action
**Claims of Named Plaintiffs and Class Members Pursuant to 42 U.S.C. § 1983 against All Defendants for Violations under the Fourth, Fifth, and Fourteenth Amendment**

168.    Defendants Suffolk County Police Department, Suffolk County, Suffolk County Police Department Commissioner Edward Webber, Lieutenant Milagros Soto, SUPERVISORY JOHN DOE Defendants, Scott Greene, SCPD Officer Podormer, and JOHN DOE Defendants have sanctioned a policy, practice, and/or custom of stopping, questioning, and searching individuals, including named Plaintiffs and Class members, due to their ethnicity and/or national origin without having the reasonable articulable suspicion of unlawful activity required by the Fourth Amendment and the Equal Protection Clause. (See, e.g., ¶¶ 56-131.)

169.    Defendants' constitutional violations were and are directly and proximately caused by policies, practices, and/or customs enforced, encouraged, and sanctioned by the SCPD and Suffolk County, including:

(a)    SCPD Commissioner Richard Dormer's 2007 order to officers to arrest any person operating a motor vehicle who is not licensed if they are unable to offer another form of identification and Commissioner Webber's refusal to rescind such a policy currently in use today;

(b)    the failure to develop and implement an adequate early warning system to determine whether the number of stops and/or tickets issued involving Latinos was excessive based upon a peer review system of each SCPD police precinct to account for the local driving population variations and traffic volume for the

50

county, and to review the demographic information regarding persons who were stopped, searched and/or ticketed to determine whether any particular group of persons was being unlawfully targeted so as to properly and adequately monitor and discipline SCPD officers;

(c)     the failure to adequately screen, train, and supervise SCPD officers; including the individual police officer defendants, as to the reasonable, justifiable and proper and improper circumstances for stopping and/or searching Latinos in Suffolk County;

(d)     the encouragement of and failure to rectify SCPD's custom and practice of targeting Latinos for unfounded, race-based stops, frisks, questioning, searches, and detentions, culminating in either the wrongful deprivation of personal property (money) whenever possible or the issuance of unjustified, yet costly, traffic citations; and

(e)     the failure to adequately investigate alleged crimes and police misconduct perpetrated against Latinos in a race-neutral fashion.

170.    These failures reflect a deliberate indifference on the part of each Defendant with respect to the Fourth, Fifth, and Fourteenth Amendment rights of the named Plaintiffs and other members of the Class. As a result of the policies and/or customs of Defendant SCPD and Defendant Suffolk County, including but not limited to those mentioned above, the other individual Defendants expected that their actions would not be properly monitored by supervisory officers and that misconduct would be tolerated and encouraged, and this belief was a substantial factor causing their unlawful conduct. Therefore, as a direct and proximate result of these enumerated failures, Defendant SCPD and Defendant Suffolk County as well as the above

51

named individual Defendants deprived Plaintiffs and other Class members of their constitutional right to be free from unreasonable searches and seizures and other discriminatory practices, and to Equal Protection under the law, and are liable to Plaintiffs under the Fourth, Fifth, and Fourteenth Amendment, as well as 42 U.S.C. § 1983.

171.    The named Plaintiffs and other members of the Class have no adequate remedy at law and fear that they will continue to be stopped, searched, and/or otherwise harassed and treated in a discriminatory manner by SPCD officers unless Defendants are enjoined from continuing the SCPD's unconstitutional policies, patterns, and/or practices.

**Second Cause of Action**
**Claims of Named Plaintiffs and Class Members Pursuant to Title VI of The Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. against Defendants SCPD and Suffolk County**

172.    Defendant Greene and Individual JOHN DOE Defendants' decisions to stop, frisk, detain, search, and/or steal from, and/or unlawfully ticket Plaintiffs were based solely on their actual or perceived race, ethnicity, and/or national origin. (See, e.g., ¶¶ 56-131.)

173.    Defendant Greene and Individual JOHN DOE Defendants were acting in accordance with the pattern and practice of discrimination on the basis of perceived race, ethnicity, and/or national origin that were established and tolerated within Defendant SCPD and by Defendant Suffolk County.

174.    Defendants SCPD and Suffolk County receive federal financial assistance and funding from the United States government.  As recipients of federal financial assistance, the SCPD and Suffolk County are legally required to provide and conduct their programs and activities in a racially and ethnically non-discriminatory manner.

175.    The conduct of Defendant SCPD and Defendant Suffolk County have denied and will continue to deny Plaintiffs the right to be free from discriminatory treatment under 42 U.S.C. § 2000d.

### Third Cause of Action
**Named Plaintiffs #1-4, #6-10, #12-20's Claims Pursuant to 42 U.S.C. § 1983 against Defendant Greene for Violations under the Fourth, Fifth, and Fourteenth Amendment**

176.    Acting under the color of law and without any basis to form a reasonable suspicion that Plaintiffs #1-4, #6-10, and #12-20 were engaged or about to engage in unlawful activity, Defendant Greene subjected Plaintiffs #1-4, #6-10, and #12-20 to unequal treatment by unlawfully targeting and stopping Plaintiffs #1-4, #6-10, and #12-20 because they are Latino. Defendant Greene intentionally discriminated against Plaintiffs #1-4, #6-10, and #12-20 based upon their ethnicity and their national origin with no legitimate basis for the stops conducted. (See, e.g., ¶¶ 62; 65-66; 78-82; 90-130.)

177.    Acting under color of law, Defendant Greene stole money from Plaintiffs #1-4, #6-10, and #12-20 during the course of the unlawful stops. (See, e.g., ¶¶ 78-82; 90-130.)

178.    By the actions described above, Defendant Greene intentionally deprived Plaintiffs #1-4, #6-10, and #12-20 of the following constitutional rights: (1) to be free from unreasonable searches and seizures, (2) to due process under the law with respect to their property rights; and (3) to equal protection under the law.   Accordingly, Defendant Greene is liable to Plaintiffs #1-4, #6-10, and #12-20 under the Fourth, Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.   These violations of Plaintiffs #1-4, #6-10, and #12-20's constitutional rights were a direct and proximate result of the acts and omissions of Defendant Greene.

179.    As a result of the foregoing, Plaintiffs have suffered injuries and damages, have been deprived of their civil rights, and fear that they will continue to be stopped without good cause.

**Fourth Cause of Action**
**Named Plaintiff 21's Claims Pursuant to 42 U.S.C. § 1983 Against Defendant Podormer for Violations under the Fourth, Fifth, and Fourteenth Amendment**

180.    Acting under the color of law and without any basis to form a reasonable suspicion that Plaintiff 21 was engaged or about to engage in unlawful activity, Defendant Podormer subjected Plaintiff 21 to unequal treatment by unlawfully targeting and stopping Plaintiff 21 because he is Latino, during the investigation of a traffic accident.  Defendant Podormer intentionally discriminated against Plaintiff 21 based upon his ethnicity and national origin with no legitimate basis for the stop conducted.  (See ¶ 131.)

181.    Acting under color of law, Defendant Podormer stole Plaintiff 21's wallet, containing money, during the course of this unlawful stop, occurring during the investigation of a traffic accident.  (See ¶ 131.)

182.    By the actions described above, Defendant Podormer intentionally deprived Plaintiff 21 of the following constitutional rights: (1) to be free from unreasonable searches and seizures, (2) to due process under the law with respect to their property rights; and (3) to equal protection under the law.  Accordingly, Defendant Podormer is liable to Plaintiff 21 under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983.  These violations of Plaintiff 21's constitutional rights were a direct and proximate result of the acts and omissions of Defendant Podormer.

183.    As a result of the foregoing, Plaintiff 21 has suffered injuries and damages, has been deprived of his civil rights, and will continue to be stopped without good cause.

## Fifth Cause of Action
### Named Plaintiffs #3, #5-11, #14, #17-18, and #20's Claims Pursuant to 42 U.S.C. § 1983 against JOHN DOE Defendants for Violations under the Fourth and Fourteenth Amendment

184.    Acting under the color of law and without any basis to form a reasonable suspicion that Plaintiffs #3, #5-11, #14, #17-18, and #20 were engaged or about to engage in unlawful activity, JOHN DOE Defendants subjected Plaintiffs #3, #5-11, #14, #17-18, and #20 to unequal treatment by unlawfully targeting and stopping Plaintiffs #3, #5-11, #14, #17-18, and #20 because they are Latino.   JOHN DOE Defendants intentionally discriminated against Plaintiffs #3, #5-11, #14, #17-18, and #20 based upon their ethnicity and/or their national origin with no legitimate basis for the stops conducted.  (See, e.g., ¶¶ 56-61; 63-64; 68-77.)

185.    By the actions described above, JOHN DOE Defendants intentionally deprived Plaintiffs #3, #5-11, #14, #17-18, and #20 of the following constitutional rights: (1) to be free from unreasonable searches and seizures and (2) to equal protection under the law.  Accordingly, JOHN DOE Defendants are liable to Plaintiffs #3, #5-11, #14, #17-18, and #20 under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.  These violations of Plaintiffs #3, #5-11, #14, #17-18, and #20's constitutional rights were a direct and proximate result of the acts and omissions of JOHN DOE Defendants.

186.    As a result of the foregoing, Plaintiffs #3, #5-11, #14, #17-18, and #20 have suffered injuries and damages, have been deprived of their civil rights, and fear that they will continue to be stopped.

## Sixth Cause of Action
### Claims of All Named Plaintiffs against Defendant Webber, Defendant Soto, and SUPERVISORY JOHN DOE Defendants

187.    Defendant Commissioner Webber, Defendant Soto, and SUPERVISORY JOHN DOE Defendants knew that members of the SCPD were violating Plaintiffs' Fourth Amendment

right to be free from unreasonable searches and seizures; their due process rights under the Fifth and Fourteenth amendments; and their Fourteenth Amendment right to equal protection under the law. (See, e.g., ¶¶ 2; 35; 37-38; 86-89; 132-167.) Defendant Webber, Defendant Soto, and SUPERVISORY JOHN DOE Defendants could have taken action to investigate, address, and prevent violations of the Plaintiffs' rights, but they knowingly and deliberately failed and refused to do so despite the availability and presentation of evidence suggesting that racial profiling was, in fact, occurring, that multiple officers were participating in a "stop-and-rob" scheme, and/or that claims of police misconduct against Suffolk County Latinos were being ignored and left uninvestigated.

188.    As a result of Defendant Webber, Defendant Soto, and SUPERVISORY JOHN DOE Defendants' knowing and deliberate failure to investigate, address, prevent, or punish discrimination, such conduct became an accepted custom and practice in the Department.

189.    By their acts and omissions, Defendant Webber, Defendant Soto, and SUPERVISORY JOHN DOE Defendants knowingly and intentionally disregarded repeated, pervasive, and ongoing violations of the rights of Latinos, including Plaintiffs, and knowingly and intentionally failed to protect Plaintiffs and other Latino members of the public, thus subjecting them to violation of their rights under the Fourth Amendment right to be free from unreasonable searches and seizures, their due process rights under the Fifth and Fourteenth amendments, and their Fourteenth Amendment right to equal protection under the law and 42 U.S.C. § 1983.

190.    Defendant Webber, Defendant Soto, and SUPERVISORY JOHN DOE Defendants further failed in their superintendent duties with regard to violations of Plaintiffs' rights under the Fourth Amendment right to be free from unreasonable searches and seizures,

their due process rights under the Fifth and Fourteenth amendments, and their Fourteenth Amendment right to equal protection under the law, in violation of 42 U.S.C. § 1983.

**Seventh Cause of Action**
**Claims of All Named Plaintiffs Pursuant to 42 U.S.C. § 1983 against Defendant Suffolk County and Defendant SCPD for Violations under the Fourth, Fifth, and Fourteenth Amendments**

191.    Defendant SCPD, Defendant Suffolk County, Defendant Commissioner Webber, Defendant Soto, SUPERVISORY JOHN DOE Defendants, Defendant Greene, Defendant Podormer, and JOHN DOE Defendants have sanctioned a policy, practice, and/or custom of stopping and searching individuals without the reasonable articulable suspicion of unlawful activity required by the Fourth Amendment and based solely on their ethnicity and/or national origin in violation of the Equal Protection Clause, often culminating in the wrongful deprivation of personal property (money) pursuant to the Fifth Amendment and/or the issuance of unlawful traffic citations.

192.    The individual Defendants' constitutional violations were and are directly and proximately caused by policies, practices, and/or customs enforced, encouraged, and sanctioned by Defendant SCPD and Defendant Suffolk County, including but not limited to:

(a)     SCPD Commissioner Richard Dormer's 2007 order to officers to arrest any person operating a motor vehicle who is not licensed if they are unable to offer another form of identification, and Commissioner Webber's refusal to rescind such a policy currently in use today;

(b)     the failure to develop and implement an adequate early warning system to determine whether the number of stops and/or tickets issued involving Latinos was excessive based upon a peer review system of each SCPD police precinct to account for the local driving population variations and traffic volume for the

county, and to review the demographic information regarding persons who were stopped, searched, and/or ticketed to determine whether any particular group of persons was being unlawfully targeted so as to properly and adequately monitor and discipline SCPD officers;

(c)    the failure to adequately screen, train, and supervise SCPD officers, including the individual police officer defendants, as to the reasonable, justifiable and proper and improper circumstances for stopping and/or searching Latinos in Suffolk County;

(d)    the encouragement of and failure to rectify Defendant SCPD's custom and practice of targeting Latinos for unfounded race-based stops, frisks, searches, and detentions, culminating in either the wrongful deprivation of personal property (money) or the issuance of unjustified, yet costly, traffic citations; and,

(e)    the failure to adequately investigate alleged crimes and police misconduct perpetrated against Latinos in an even-handed, race-neutral fashion.

193.    These failures reflect a deliberate indifference on the part of each Defendant with respect to the Fourth, Fifth, and Fourteenth Amendment rights of the named Plaintiffs. As a result of the policies, practices, and/or customs of Defendant SCPD and Defendant Suffolk County, the other individual Defendants expected that their actions would not be properly monitored by supervisory officers and that misconduct would be tolerated and encouraged. This belief was a substantial factor causing their unlawful conduct. Therefore, as a direct and proximate result of these enumerated failures, Defendant SCPD and Defendant Suffolk County as well as the above named individual Defendants deprived Plaintiffs of their constitutional right to be free from unreasonable searches and seizures and other discriminatory practices and

unlawful conduct, as well as their right to equal protection under the law, and are liable to Plaintiffs under the Fourth, Fifth, and Fourteenth Amendment, as well as 42 U.S.C. § 1983.

194.    The named Plaintiffs have no adequate remedy at law and fear that they will continue to be stopped, searched, and/or otherwise harassed and treated in a discriminatory manner by SPCD officers unless Defendants are enjoined from continuing Defendant SCPD's unconstitutional policies, patterns, and/or practices.

### Eighth Cause of Action
### Claims of All Named Plaintiffs #1-4, #6-10, and #12-21 Against Defendants Greene and Podormer for Conversion

195.    Defendant Greene and Defendant Podormer unlawfully took money from Plaintiffs #1-4, #6-10, and #12-21 during the course of the unjustified and unlawful stops. Plaintiffs #1-4, #6-10, and #12-21 had legal ownership over the money in their possession when they were stopped by Sergeant Greene and Defendant Podormer.  (See, e.g., ¶¶ 78-82; 90-131.)

196.    By the actions described above, Defendant Greene and Defendant Podormer violated Plaintiffs #1-4, #6-10, and #12-21's possession or right to possession of that money and are liable to Plaintiffs #1-4, #6-10, and #12-21 for conversion of property.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court grant them relief as follows:

(a)    Certify this case as a class action under Rule 23;

(b)    Enter a declaratory judgment finding that the actions of Defendants alleged in this Complaint violate Plaintiffs' constitutional rights as guaranteed under the Fourth, Fifth, and Fourteenth Amendments.

(c)    Enter a preliminary and permanent injunction barring Defendant from continuing to engage in the unlawful, discriminatory conduct alleged in this Complaint;

(d)     Enter a preliminary and permanent injunction directing that Defendants take all affirmative steps necessary to remedy the effects of the discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future, including but not limited to:

(i)     the adoption, institution, and implementation of policies designed and intended to prevent such wrongful acts in the future, including but not limited to the adoption, institution, and implementation of an early warning system compliant with standard best police practices as recommended by the DOJ.

a.  SCPD's IAPro system shall be amended to collect traffic stop data detailing why officers commence a traffic stop at the initiation or inception of a stop prior to exiting the vehicle, rather than upon completion of the stop as presently mandated by SCPD policies in effect.

b.  Analyses of traffic stop data collected pursuant the early warning system shall be performed and include studies using a peer officer comparison review system, in which the data of stops and other activity of any given SCPD officer will be compared to other SCPD officers working in the same location or on the same detail.

c.  A court-appointed independent monitor shall supervise the analysis of all data collected and tabulated by the SCPD early warning system and any problem officers subsequently identified for further scrutiny and/or reprimand through such a system for a five year review period, subject to renewal based upon SCPD performance.  Accordingly, the independent monitor shall facilitate and oversee quarterly command staff meetings to discuss officers who have been flagged by SCPD's early warning system and appropriate actions to be taken as well as any mitigating circumstances and data to be considered.  The independent monitor shall issue recommendations to SCPD supervisors regarding what remedial measures should be undertaken to address individual problem officers and report back to the Court with respect to the sufficiency of all remedial actions, monitoring and/or intervention undertaken by SCPD supervisors on a six-month reporting cycle.  The costs associated by this oversight are to be covered by the SCPD.

60

(ii)  the appointment and authorization of a Special Master or Monitor to review the Department of Motor Vehicle Records of those Class members identified and expunge all traffic citations received as the result of an illegal and pre-textual motor stop by the individual as of yet unnamed SCPD JOHN DOE Defendants as well as Defendants Greene and Podormer;

(iii)  the institution of an independent Citizen Complaint Review Board for Suffolk County with the power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public against members of the SCPD that allege misconduct involving excessive use of force, abuse of authority, discourtesy, or use of offensive language, including, but not limited to, slurs relating to race, ethnicity, religion, gender, sexual orientation and disability.   The findings and recommendations of the Board, and the basis therefore, shall be submitted to the Monitor and SCPD Police Commissioner for appropriate remedial action directed at the SCPD officers involved.

(iv)  the adoption, institution, and implementation of a policy governing the regular public disclosure of all data related to SCPD's early warning system as well as all analyses of said data conducted without regard to whether the data indicates the presence or absence of racial profiling, including but not limited to the traffic stop data collected.

(v)  adoption, institution, and implementation of a comprehensive training regimen for police officers and officials, including intensive ethics training, designed and intended to minimize the risk that such wrongful acts will occur in the future; and,

(vi)  the appointment and authorization of a Special Master or Monitor to assess the eligibility of Class members for U-Visas certifications based upon whether they have been helpful, are being helpful or are likely to be helpful in the investigation or prosecution of qualifying criminal activity and endorse United States Citizenship and Immigration Services Form I-918 Supplement B, U Nonimmigrant Status Certification regarding the same.

(e)  Award compensatory damages in an amount to be determined at trial that would fully compensate the Plaintiffs and other Class members, plus prejudgment interest, for the economic loss, humiliation, embarrassment, physical injury, and mental and emotional distress, including, but not limited to, loss of self-esteem and continued stress and anxiety caused by Defendants' violations of the law alleged in this Complaint;

61

(f) Award punitive damages to Plaintiffs and other Class members in an amount to be determined at trial that would punish Defendants for the willful, wanton, and reckless misconduct alleged in this Complaint, and that would effectively deter Defendants from future discriminatory behavior;

(g) Award Plaintiffs and other Class members their reasonable attorneys' fees, expert fees, and costs; and

(h) Order all other relief deemed just and equitable by the Court.

Dated: April 29, 2015
New York, New York

Juan Cartagena (JC5087)
Nancy M. Trasande (NT3045)
Foster Maer (FM0680)
LatinoJustice PRLDEF
99 Hudson St. - 14th Floor
New York, NY 10013
Tel: (212) 219-3360
Fax: (212) 431-4276
Email: jcartagena@latinojustice.org
Email: fmaer@latinojustice.org
Email: ntrasande@latinojustice.org

Elan DiMaio (ED2081)
Zach Bench (pro hac vice pending)
SHEARMAN & STERLING, LLP
599 Lexington Avenue
New York, New York 10022-6069
Tel: (212) 848-4000
Fax: (212) 848-7179
Email: elan.dimaio@shearman.com
Email: zach.bench@shearman.com

Heather L. Kafele (pro hac vice pending)
SHEARMAN & STERLING LLP
801 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Tel: (202) 508-8000
Fax: (202) 508-8100
Email: heather.kafele@shearman.com

*Attorneys for Plaintiffs*