**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
PLAINTIFFS #1-21, individually and on behalf
of all others similarly situated,

                                  **ORDER**
                Plaintiffs,            15-CV-2431 (ADS) (GRB)

        -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, COMMISSIONER
EDWARD WEBBER, individually and in his
official capacity, SUPERVISORY JOHN DOE
DEFENDANTS, individually and in their
official capacities, LIEUTENANT MILAGROS
SOTO, individually and in her official capacity,
SCOTT GREENE, individually and in his
official capacity, OFFICER BRIDGETT
DORMER, individually and in her official
capacity, JOHN DOE DEFENDANTS,
individually and in their official capacity,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**LatinoJustice Puerto Rican Legal Defense and Education Fund**
*Attorneys for the Plaintiffs*
99 Hudson Street, 14th Floor
New York, NY 10013
        By: Juan Cartagena, President and General Counsel
          Foster S. Maer, Senior Legal Counsel
          Nancy Milagros Trasande, Senior Legal Counsel

**Shearman & Sterling LLP**
*Attorneys for the Plaintiffs*
599 Lexington Avenue
New York, NY 10022
        By: Elan K DiMaio, Esq.
          Heather Lamberg-Kafele, Esq.
          Zach Bench, Esq.
          Katherine Mallory Tosch Brennan, Esq., Of Counsel

**The Suffolk County Attorney's Office**
*Attorneys for the Defendants the County of Suffolk, Suffolk County Police Department,*
*Commissioner Edward Webber, Supervisory John Doe Defendants, Lieutenant Milagros Soto,*
*Officer Bridgett Dormer, and John Doe Defendants*
H. Lee Dennison Building-Fifth Floor
100 Veterans Memorial Highway
Hauppauge, NY 11788-0099
        By: Megan E. O'Donnell, Assistant County Attorney
            Jessica M. Spencer, Assistant County Attorney, Of Counsel

**Scott Greene, <u>Pro</u> <u>Se</u>**
41 Westwood Drive
Shirley, NY 11967

**SPATT, District Judge**.

This case arises from allegations that the Defendants County of Suffolk and Suffolk County Police Department have subjected Latinos to an ongoing policy, pattern, and practice of discriminatory policing.

On April 29, 2015, the Plaintiffs # 1–21 (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, commenced this action against the Defendants (1) County of Suffolk ("Suffolk"); (2) Suffolk County Police Department ("SCPD"); (3) Commissioner Edward Webber ("Webber"), individually and in his official capacity; (4) Supervisory John Doe Defendants, individually and in their official capacities; (5) Lieutenant Milagros Soto ("Soto"), individually and in her official capacity; (6) Scott Greene ("Greene"), individually and in his official capacity; (7) Officer Bridgett Dormer ("Dormer"), individually and in her official capacity; and (8) John Doe Defendants individually and in their official capacity (collectively, the "Defendants").

On April 29, 2015, the same day as filing the complaint, the Plaintiffs filed a motion to proceed anonymously in this suit because the Plaintiffs "fear that any litigation will lead to further harassment or retaliation, including the extreme harm of deportation."

On July 21, 2015, the Court issued an order stating that it was contemplating a stay of this action in light of the two criminal indictments currently pending against the Defendant Greene arising from some of the same allegations contained in the complaint.

Presently before the Court are two issues: (1) whether the Court should grant the Plaintiffs' motion to proceed anonymously; and (2) whether the Court should stay this action pending the resolution of the Defendant Greene's criminal case.

For the reasons set forth below, the Court grants the Plaintiffs' motion to proceed anonymously and finds that a stay of this matter is warranted solely with regard to the Defendant Greene.

## I. BACKGROUND

### A. The Underlying Allegations

Prior to reaching the merits of the parties' contentions, the Court finds it necessary to provide a brief overview of the serious allegations contained in the Plaintiffs' sixty-two-page complaint.  Principally, the amended complaint alleges that SCPD officers engaged in the following practices:

(a) targeting Latino motorists for illegal traffic stops;
(b) targeting Latinos through unjustified checkpoints;
(c) targeting Latinos in a 'stop and rob' scheme, that results [in] the wrongful and unjustified deprivation of property during unconstitutional traffic stops;
(d) failing to adequately investigate crimes and police misconduct perpetrated against Latinos;
(e) otherwise harassing Latinos because of their race and/or national origin.

(Am. Compl. at ¶ 54.)

According to the amended complaint, these practices were a direct and proximate result of policies that were "enforced, encouraged, and sanctioned" by the Defendant Suffolk County, Defendant SCPD, Defendant Commission Webber, and the Supervisory Defendants.  (Id. at ¶¶ 44, 168.)

Among the more troubling allegations in the complaint is the accusation that the Defendant Greene, a former officer and Sergeant of the SCPD, and "various John Doe Defendant SCPD officers had a practice and pattern of targeting Latino drivers for unlawful stops and searches during which cash was stolen." (Id. at ¶¶ 36, 78.)  In support of this allegation, the complaint notes that on January 30, 2014, the Defendant Greene was arrested after being recorded on video stopping an undercover Latino officer and "stealing $100 from an envelope in the vehicle's interior."  (Id. at ¶ 82.)

The complaint further alleges that in March 2014, shortly before several stop-and-rob victims were scheduled to testify before the grand jury investigating the Defendant Greene's criminal case, several SCPD officers went to the homes of the three of the Plaintiffs that were scheduled to testify and "repeatedly attempted to discuss Defendant Greene's case despite the SCPD's prior commitment that no SCPD officer would contact during the course of the investigation into [the] Defendant Greene and that contact would originate from the Suffolk County District Attorney's Office."  (Id. at ¶ 82.)   As a result, the Plaintiffs allege that "all three victims were greatly frightened by the detectives' unexpected appearance."  (Solis Decl. at ¶ 17.)

In opposition, the Defendants deny that SCPD officers went to the Plaintiffs' homes to "intimidate or retaliate against the victims[] for coming forward," and instead contend that the officers went the Plaintiffs' homes merely to "better prepare them for their grand jury testimony and to quell any apprehension they may have had about the process."  (Tricamo Decl. at ¶ 4.)

4

Subsequently, on March 24, 2014 and June 24, 2014, grand juries returned two separate indictments against Greene charging him with, among other crimes, grand larceny in the fourth degree as a hate crime, see N.Y. Penal Law §§ 155.30 and 485.05, and official misconduct, see N.Y. Penal Law § 195.  These criminal charges are based on allegations that he stopped and stole money from twenty-seven Latinos in Suffolk County, including some of the Plaintiffs in this action.  (Id.)  The criminal case is currently pending and has allegedly been scheduled for a Fall 2015 trial date.

**B.** The **Procedural History**

As noted above, on April 29, 2015, the Plaintiffs commenced this action against the Defendants and on the same day, filed a motion to proceed anonymously.

The Plaintiffs asserted seven causes of actions, including: (1) a claim under 42 U.S.C. § 1983 against all of the Defendants based on allegations that they violated the Plaintiffs' Fourth and Fifth Amendment rights by "sanction[ing] a policy, practice, and/or custom of stopping questioning, and search individuals . . . due to their ethnicity and/or national origin without having the reasonable articulable suspicion of unlawful activity"; (2) a claim under 42 U.S.C. § 2000d against the Defendants Suffolk and the SCPD for "failing to provide and conduct their programs and activities in a racially and ethnically non-discriminatory manner"; (3) a claim under 42 U.S.C. § 1983 against the Defendant Greene based on allegations that he violated the Fourth, Fifth, and Fourteenth Amendments rights of the Plaintiffs #1-4, 6-10, and 12-20 by "unlawfully targeting and stopping [them] because they are Latino"; (4)  a claim under 42 U.S.C. § 1983 against the Defendant Podormer based on allegations that she violated the Fourth, Fifth, and Fourteenth rights of the Plaintiff #21 by "unlawfully targeting and stopping [him] because he is Latino, during the investigation of a traffic accident"; (5) a claim under 42 U.S.C. § 1983

5

against the John Doe Defendants based on allegations that they violated the Fourth, Fifth, and Fourteenth rights of the Plaintiffs #3, 5-11, 14, 17-18, and 20 by "unlawfully targeting and stopping [them]" "based upon their ethnicity and/or national origin with no legitimate basis for the stops conducted"; (6) a claim under 42 U.S.C. § 1983 against the Defendants Webber and Soto for their alleged "knowing and deliberate failure to investigate, address, prevent, or punish discrimination"; and (7) a claim under 42 U.S.C. § 1983 against Suffolk County and SCPD based on allegations of their "deliberate indifference" to the alleged violations of the Fourth, Fifth, and Fourteenth Amendment rights of the Plaintiffs by the individual Defendants.

In addition, the Plaintiffs, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, seek to represent a proposed class of "all similarly situated Latinos in Suffolk County who are, have been, or will be at risk of being subject to discriminatory and unconstitutional policing services by the Defendant [Suffolk County PD]."

On May 12, 2015, Assistant Suffolk County Attorney Megan O'Donnell  ("O'Donnell"), filed a letter stating that the Suffolk County Attorney's Office would be representing the Defendants Suffolk County, SCPD, Webber, and Soto (collectively, the "County Defendants") but would not be representing the Defendant Greene and as such, Greene must obtain his own legal counsel.

On May 18, 2015, the Plaintiffs filed an amended complaint changing the spelling of the name of "Officer Podormer" to "Officer Bridgett Dormer."

On June 1, 2015, the parties held a "meet and confer" call to try and resolve the Plaintiffs' motion to proceed anonymously.  (Brennan Decl., Ex. 2.)  During the call, O'Donnell expressed concern that permitting the Plaintiffs to "proceed anonymously would hamper [the] Defendants' effective litigation of the case."  (Brennan Decl. at ¶ 5.)  In response K. Mallory

6

Brennan, Esq. ("Brennan"), a counsel for the Plaintiffs, proposed a compromise "whereby [the] Plaintiffs would agree to limited disclosure of their identities to [the] Defendants' counsel to persons essential in the litigation, and in exchange, [the] Defendants would agree that [the] Plaintiffs' identifies would remain fully protected from public disclosure." (Id. at ¶ 6.)

On June 8, 2015, the Defendant Greene filed a request for an extension of forty-two days to respond to the Plaintiffs' motion to proceed anonymously and a stay of the date to answer the amended complaint pending the Court's resolution of the Plaintiffs' motion. Greene also requested the Court's assistance in finding an attorney to represent him.

On June 9, 2015, O'Donnell sent an email to Brennan responding to her proposal, "The County will not consent to your offer, and we will go forward and oppose your motion [to proceed anonymously]." (Brennan Decl., Ex. 3.)

On June 11, 2015, the Court granted the request by Greene to stay the deadline to answer the amended complaint and directed him to file a status report within thirty days explaining his efforts to obtain an attorney and his financial circumstances.

On July 14, 2015, Greene filed a letter with the Court indicating that he had attempted without success to retain an attorney. He further represented that since July 2015, his income consists solely of $5,300 per month in pension payments. Greene also stated that "several attorneys suggested an Article 78 hearing in [an] attempt to get the [Suffolk] County to either represent me or if it was a conflict of interest, [Suffolk] [C]ounty would provide me counsel at a negotiated rate[.]" Further, Greene again asked for the Court's assistance in finding him an attorney to represent him in this matter and a potential Article 78 proceeding against Suffolk County.

On July 21, 2015, the Court issued an order denying Greene's request for assistance in finding him an attorney because his income of $5,300 per month exceeded the amount typically required by the Court's *pro se* office to qualify for its assistance.  However, the Court expressed its concern about the potential for prejudice to Greene and his Fifth Amendment rights from proceeding to discovery in this case, particularly given that he, at least for now, is proceeding *pro se*.  (See July 21, 2015 Order, Dkt. No. 31, at 5–6); see also Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012) ("[C]ourts have generally been concerned about the extent to which continuing the civil proceeding would unduly burden a defendant's exercise of his rights under the Fifth Amendment[.]")

As such, the Court directed the parties to show cause as to why the Court should not *sua sponte* stay this action to protect Greene from "facing the difficult choice between being prejudiced in the civil litigation, if [he] asserts his . . . Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he . . . waives that privilege in the civil litigation."  Id.

On July 31, 2015, the Plaintiffs filed a letter objecting to the Court's contemplated stay of this matter.  On August 12, 2015, the County Defendants filed a letter in support of a stay. Greene has not filed papers in response to the Court's July 21, 2015 Order.

As noted, presently before the Court is (1) the Plaintiffs' motion to proceed anonymously; and (2) the Court's *sua sponte* consideration of whether a stay of this matter is warranted pending the resolution of Greene's criminal case.  The Court will address each issue in turn.

8

## II. DISCUSSION

### A. As to the Motion to Proceed Anonymously

Pursuant to Fed. R. Civ. P. 10(a), "[t]he title of the complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 188-89 (2d Cir. 2008). "Courts have nevertheless 'carved out a limited number of exceptions to the general requirement of disclosure [of the names of parties], which permit plaintiffs to proceed anonymously.'" Id. (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 685 (11th Cir. 2001)).

In determining whether a plaintiff may be permitted to maintain an action under a pseudonym, the Second Circuit has stated that "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." Id.; see also Michael v. Bloomberg L.P., No. 14-CV-2657 (TPG), 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) ("The central inquiry in determining whether a plaintiff may proceed pseudonymously is a balancing of a 'plaintiffs interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant.'") (quoting Sealed Plaintiff, 537 F.3d at 189).

In this regard, the Second Circuit has identified a non-exclusive list of factors that a court may consider when performing this balancing test:

> (1) "whether the litigation involves matters that are highly sensitive and of a personal nature";
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the . . .  party seeking to proceed anonymously or even more critically, to innocent non-parties";
> (3) "whether identification presents other harms and the likely severity of those harms, . . . , including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity";

9

(4) "whether the plaintiff is particularly vulnerable to the possible harms of
disclosure, . . . , particularly in light of his age";
(5) "whether the suit is challenging the actions of the government or that of
private parties";
(6) "whether the defendant is prejudiced by allowing the plaintiff to press his
claims anonymously, whether the nature of that prejudice (if any) differs at any
particular stage of the litigation, and whether any prejudice can be mitigated by
the district court";
(7) "whether the plaintiff's identity has thus far been kept confidential";
(8) "whether the public's interest in the litigation is furthered by requiring the
plaintiff to disclose his identity";
(9) "whether, because of the purely legal nature of the issues presented or
otherwise, there is an atypically weak public interest in knowing the litigants'
identities"; and
(10) "whether there are any alternative mechanisms for protecting the
confidentiality of the plaintiff[.]"

Sealed Plaintiff, 537 F.3d at 190 (internal citations, alterations, and quotation marks omitted).

The Court will now address the particular factors that the parties dispute in this case.

**1. Factors Two to Four**

Here, the Plaintiffs assert that the second, third, and fourth factors weigh in favor of

anonymity because they and their families purportedly face "grave risk of retaliatory physical

harm" in the form of arrests and deportation if their identities are made public. (The Pls.' Reply

Mem. of Law at 1.) In support of this assertion, the Plaintiffs submit articles from newspapers

and other public sources, which they contend suggest a "pervasive climate of anti-Latino

sentiment and violence in Suffolk County." (The Pls.' Mem. of Law at 9.) They also rely on the

"allegations of widespread illegal and unconstitutional treatment of Suffolk Latinos detailed in

the complaint." (Id.) Finally, they refer to the March 2014 incident, during which SCPD

officers allegedly went to three of the Plaintiffs' homes the night before they were scheduled to

testify before the grand jury, as evidence that SCPD officers may attempt to intimidate the

Plaintiffs if their identities are revealed in this case. (Id. at 13.)

10

In response, the Defendants contend that the Plaintiffs' fears of retaliatory arrest or deportation are "baseless."  (The Defs.' Mem. of Law at 5.)  They assert that each of the twenty-one unnamed Plaintiffs in this action have already had some contact with the SCPD, and thus, had the SCPD "desired to report their illegal immigration status they would have (and could have) already [done so]."  (Id.)  They also point to the fact, admitted in a footnote of the Plaintiffs' memorandum, that Suffolk County officials have assisted some of the Plaintiffs in obtaining temporary visas as evidence that the SCPD would not retaliate against the Plaintiffs.  (Id. at 5–6.)  Finally, they note that the SCPD Rules and Procedure mandate that "Officers . . . shall not inquire about, or investigate, the immigration status of any victim, witness, potential witness, or person requesting or receiving policy assistance."  (Crawford Decl. at ¶ 6.)

The question of whether the Plaintiffs' fear of retaliation is reasonable is a close one.  The Court does not find the newspaper articles offered by the Plaintiffs, many of them from several years ago, to be persuasive evidence that there is a risk that these particular Plaintiffs will be retaliated against if their identities are disclosed in this case.  See Doe v. Pittsylvania Cnty., Va., 844 F. Supp. 2d 724, 738 (W.D. Va. 2012) ("While 'it cannot be denied that the record in this case contains some indications of disapproval and frustration by some local citizens for bringing this suit,' . . . , this evidence does not establish the need for anonymity."); Argueta v. U.S. Immigration & Customs Enforcement, No. CIV.A. 08-1652 (PGS), 2009 WL 1307236, at *10 (D.N.J. May 7, 2009) ("Even if the article were admissible, it provides unreliable proof that the same incident would happen here where the facts are far different and in a different geographical area.").

Also, the Court does not find that the allegations, even if true, that SCPD officers went to the homes of the Plaintiffs unannounced to ask them questions about their grand jury testimony,

11

to give rise to a reasonable inference that the Defendants would retaliate against the Plaintiffs if their identities are revealed, as the Plaintiffs contend.

However, if the allegations in the amended complaint are true, the Plaintiffs have been repeatedly subjected to unconstitutional actions by SCPD, including being stopped and robbed by Greene and an unnamed group of SCPD officers. There is some evidence to substantiate this allegation even at this early stage in the litigation because Greene has been charged criminally after being recorded by an undercover officer engaging in this conduct. Moreover, the amended complaint alleges that there were other SCPD officers involved in the alleged stop and rob scheme, some of whom are still employed by the SCPD. Based on the extraordinary nature of these allegations, the Court finds that the Plaintiffs' fears of potential retaliation by the SCPD appear reasonable, at least until discovery proves otherwise.

Courts have found the second, third, and fourth factors to weigh in favor of anonymity where, as here, there are allegations that the Defendants perpetrated criminal acts against the Plaintiffs. For example, in Javier H. v. Garcia-Botello, 211 F.R.D. 194, 195 (W.D.N.Y. 2002), the court granted a motion by a group of plaintiff-migrant workers to proceed anonymously with their statutory and common law claims against the defendants, their former employers. The court found it reasonable for the plaintiffs to fear retaliation based on "a criminal indictment handed down by the grand jury charging [the] [d]efendants with serious crimes arising out of the same facts supporting this action." Id. at 195.

Similarly in Lozano v. City of Hazleton, *supra*, the plaintiffs, who were legal and illegal immigrants, challenged the validity of ordinances regulating the rental housing and employment of undocumented aliens. 496 F. Supp. 2d 477, 490 (M.D. Pa. 2007) *aff'd in part, vacated in part on other grounds*, 620 F.3d 170 (3d Cir. 2010). After a hearing on the plaintiffs' motion for a

preliminary injunction to prevent the enforcement of the ordinance, the court ruled that the plaintiffs could continue to proceed anonymously.  Id. at 506–07.  The court found that the plaintiffs reasonably feared retaliation in light of "[t]rial testimony [which] indicated the intense public interest in the ordinances led at times to harassment and intimidation that created fear even among those with a more secure social and legal status than the anonymous plaintiffs."  Id. at 508; see also Doe v. Shakur, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) ("Plaintiff's allegation that she has been subjected to death threats would provide a legitimate basis for allowing her to proceed anonymously.").

Unlike Lozano, this case has not proceeded to discovery, and therefore there is no testimony supporting the allegations in the amended complaint that SCPD officers previously stopped the Plaintiffs without reasonable suspicion and robbed them.  However, the Defendant Greene has been indicted and allegedly recorded on video committing the acts at issue in this case.  In light of this indictment and the serious allegations against other SCPD Officers in this case, the Court finds that the Plaintiffs' fears of possible retaliation and further harassment by SCPD Officers to be a reasonable assumption.  See Javier H, 211 F.R.D. at 196 ("[The] Defendants have been criminally charged with similar acts of harassment, intimidation, and threats of violence that Plaintiffs continue to fear. Both the criminal and civil allegations are serious, and, if proved true, substantiate that Plaintiffs' fears of retaliation are reasonable and well-founded. Therefore, this Court finds that Plaintiffs' fears of injury are sufficient to warrant allowing them to proceed anonymously at this time.").

In its opposition motion, the Defendants rely on Doe v. Merten, 219 F.R.D. 387, 388 (E.D. Va. 2004).  In that case, the plaintiffs were a group of students and an association that sought to challenge the policies of Virginia public universities barring admission to applicants

who are illegal immigrants.  The students filed a motion to proceed anonymously, arguing that the defendants may subject them to deportations if their identities are revealed.  Id. at 393.  In support, they cited a memorandum issued by "the Office of the Attorney General of Virginia that urges defendants to report undocumented students to federal authorities."  Id.

The court in Merten rejected the plaintiffs' argument, finding "there is no sound reason to believe that disclosure of plaintiffs' identities in this suit increases their chances of being deported."  Id.  The court reasoned that the federal government already knew the plaintiffs' names because they had applied for visas, and thus, the court found it "hard to see how revealing their identities as plaintiffs in this case is likely to lead to their deportation or even to increase their risk of deportation."  Id.  The court also found it "[e]qually implausible . . . that the federal government would heed any such request by the state or have a sufficient interest in plaintiffs' suit challenging a state policy to cause the appropriate federal officials to initiate deportation proceedings."  Id. at 393.

By contrast, here, there are allegations that the Plaintiffs are not only at risk of deportation but have also allegedly been the subject of intentional and potentially criminal conduct at the hands of the SCPD.  Thus, the Court finds that the fear of retaliation expressed by the Plaintiffs in this case is more particularized and well-founded than the fear expressed by the plaintiffs in Merten.

Therefore, based on the unique allegations at issue in this case, the second, third, and fourth factors weigh in favor of anonymity.  Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1071 (9th Cir. 2000) ("[W]here, as here, plaintiffs fear extraordinary retaliation, such as deportation, arrest, and imprisonment, plaintiffs do not need to prove that they face a danger of physical injury.").

## 2. Factors Five and Eight

The Plaintiffs also argue that the fifth factor — "whether the suit is challenging the actions of the government or that of private parties" — and the eighth factor  — whether the public's interest in the litigation is furthered by disclosure  — weigh in favor of anonymity.  (The Pls.' Mem. of Law at 16–17.)  Their argument is premised on their contentions that (1) this lawsuit vindicates the public interest because it involves a minority challenging the propriety of government actions; and (2) requiring disclosure of the Plaintiffs' names would discourage them from participating in this action.  (Id.)

In response, the Defendants assert that some of the Plaintiffs in this lawsuit have already come forward to testify in the criminal prosecution of the Defendant Greene despite the fact that doing so required them to disclose their identities and legal status to the SCPD and the Suffolk County District Attorney's Office.  (The Defs.' Mem. of Law at 14.)  As such, the Defendants dispute the Plaintiffs' contention that denying their motion to proceed anonymously would discourage them and other potential class members from participating in this action.  (Id.)

Where, as here, "a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong."  EW v. New York Blood Ctr., 213 F.R.D. 108, 111 (E.D.N.Y. 2003).  That is because "[i]n such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights." Id.  In addition, "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant."  EW, 213 F.R.D. at 111; see also Doe No. 2 v. Kolko, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) ("[W]hether the defendants are governmental entities is significant because a challenge to governmental policy

15

ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual."); Merten, 219 F.R.D. at 394 ("[T]he filing of an action challenging the constitutional validity of government activity generally 'involves no injury to the Government's 'reputation,' while an action against a private party can result in damage to the defendant's reputation as well as economic harm.") (quoting S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979)).

However, the fact that a group of plaintiffs is suing the government or seeking to challenge a government policy does not, by itself, justify granting a motion to proceed anonymously because doing so "would lead, inappropriately, to granting anonymity to any plaintiff suing the government to challenge a law or regulation." Merten, 219 F.R.D. at 394. That, of course, would override the significant public interest in requiring all of the parties to be named. See Sealed Plaintiff, 537 F.3d at 189 ("'[I]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.'") (quoting Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 872 (7th Cir. 1997) (Posner, J)).

Here, the Plaintiffs assert claims for damages and injunctive relief arising from what they contend are unconstitutional policies by the SCPD. The Plaintiffs as Latinos represent a minority interest challenging an alleged government policy, and therefore, the Court finds a public interest in the vindication of their rights. See EW, 213 F.R.D. at 111 ("[W]here a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong . . . . In such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights.").

16

In light of the allegations described above with respect to the stop and rob scheme, the Court also finds credible, contention by the Plaintiffs that they would be discouraged from joining this action if the Court denied their motion to proceed anonymously.  Although it is undisputed that some of the Plaintiffs testified before grand juries in the criminal action pending against the Defendant Greene, grand jury proceedings remain secret.  See In re Petition of Craig, 131 F.3d 99, 101 (2d Cir. 1997) ("There is a tradition in the United States, a tradition that is 'older than our Nation itself,' that proceedings before a grand jury shall generally remain secret.") (quoting In re Biaggi, 478 F.2d 489, 491 (2d Cir. 1973)).   Thus, the Court does not find the fact that some of the Plaintiffs testified before the grand jury to undermine the Plaintiffs' contention that many of them would drop out of this case for fear of retaliation and deportation if they were required to publicly disclose their identities.

On the other hand, the amended complaint makes accusations against individual Defendants in this action that could potentially damage their professional reputations.  Thus, the individual Defendants in this action also have a right to know who is making these accusations against them, as does the public.  See Argueta, 2009 WL 1307236, at *9 ("Generally, there is a strong presumption in favor of disclosure of the identities of the parties to an action.") (citing Doe v. Hartford Life and Accident Ins. Co., 237 F.R.D. 545, 549 (D.N.J. 2006)).

Balancing these competing interests, the Court does not find that the fifth or eighth factors weigh strongly in favor of either the Plaintiffs or the Defendants.

### 3. Factor Six

The Plaintiffs assert that the sixth factor — "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated

17

by the district court" — weighs in favor of anonymity because the "Plaintiffs' claims present purely legal issue about the constitutionality of the SCPD and Suffolk County's actions." (The Pls.' Mem. of Law at 17.)

In response, the Defendants assert that although some of the Plaintiffs' claims allege an unconstitutional policy or practice on the part of the Defendants, the third, fourth, fifth, and eighth causes of action allege that individual officers Greene, Dormer, and John Does committed specific constitutional violations and torts against individual Plaintiffs. (See Am. Compl. at ¶¶ 180–86; 195–96.) They also note that the Plaintiffs' sixth cause of action alleges that the Defendants Webber, Soto, and John Does were deliberately indifferent to the alleged constitutional violations of the Plaintiffs' rights being undertaken by the individual SCPD officers. (See id. at 187–90.)

According to the Defendants, these claims against the individual officers and supervisors necessitate a "factual inquiry . . . into the date, time, and location" of the alleged acts committed against the Plaintiffs. (The Defs.' Opp'n Mem. of Law at 14.) Without knowing the identities of the Plaintiffs, the Defendants contend that they will be unable to investigate the Plaintiffs' claims and prepare defenses to those claims. (See id.) The Court agrees.

Contrary to the Plaintiffs' contentions, the majority of their claims against the individual Defendants arise from particular police encounters. For example, the complaint alleges that:

> In spring 2011, Victim D, a Latino male residing in Suffolk County, was walking with a friend, Victim E, also a Latino male residing in Suffolk County, to a convenience store near their homes. Both men were stopped without cause by an SCPD police officer just outside the convenience store. The officer then illegally frisked both men without permission or justification. The officer removed and took possession of Victim D's wallet during the search and kept it with him when he returned to his police car. The officer derisively referred to Victim E, who did not have a wallet or any identification on him, as "Fernando." A second SCPD officer arrived in another patrol car. The officer eventually returned the wallet and let the men go.

18

(Am. Compl. at ¶ 86.)

As is clear from this allegation, the constitutional propriety of police encounters which form the central basis of many of the Plaintiffs' claims are fact-specific. Therefore, the Plaintiffs' credibility and factual knowledge will likely play a key role in the outcome of these claims. Accordingly, the Court finds that the Plaintiffs' identities are of crucial importance to the Defendants in investigating and asserting defenses to those claims. See Doe v. Mcdonald's Restaurants of N. Carolina, Inc., No. 3:15-CV-00037, 2015 WL 4389528, at *3 (W.D.N.C. July 17, 2015) ("The Court notes that the Complaint alleges discrimination, acts of malice, and intentional infliction of emotional harm on the part of Defendant. Faced with allegations such as these, and where the Plaintiff's credibility and factual knowledge will likely play a key role in the outcome of the case, the Defendant has a powerful interest in knowing the identity of its accuser.").

Therefore, without disclosing the Plaintiffs' identities, the Court finds that the Defendants will clearly be prejudiced because they will not be able to engage in meaningful discovery on both the merits of the Plaintiffs' claims and whether the unnamed Plaintiffs will qualify as adequate representatives of the proposed class action. See Doe I v. Four Bros. Pizza, No. 13 CV 1505 (VB), 2013 WL 6083414, at *10 (S.D.N.Y. Nov. 19, 2013) ("Without knowing who has brought suit against them, defendants will be hard-pressed to conduct an internal investigation to develop their defenses, both on the merits of plaintiffs' claims and as to conditional certification under the FLSA and class certification pursuant to Rule 23 (on plaintiffs' NYLL claims).").

In their reply memorandum, the Plaintiffs represent that on May 27, 2015, they proposed a compromise to the Defendants pursuant to which the Plaintiffs would agree to a "limited disclosure of their identities to [the] Defendants' counsel and to persons essential to the

litigation, if [the] Defendants agreed that [the] Plaintiffs' identities would remain fully protected from public disclosure."  (The Pls.' Reply Mem. of Law at 7; see also Brennan Decl. at ¶¶ 4–5.) The Plaintiffs contend that this proposal would mitigate the prejudice to the Defendants by allowing them to conduct meaningful discovery of the Plaintiffs' claims.  (See id.)  The Court agrees.

As the Plaintiffs correctly point out, when trying to balance the different interests involved in cases such as these, courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public.  See, e.g., Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 687 (11th Cir. 2001) ("The only justification the defendants offer for stripping Roe of her privacy is the argument that they will not be able to adequately conduct discovery without knowing her true identity. However, that argument is eviscerated by Roe's offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public. That is a reasonable way to reconcile the competing interests, and the district court can enter an appropriate protective order."); Doe v. Oshrin, 299 F.R.D. 100, 101 (D.N.J. 2014) (granting the plaintiffs' motion to proceed anonymously but noting that "[the] [p]laintiff . . . agreed to disclose [the] [p]laintiff's 'full and complete name and address' to a limited group of individuals in accordance with the parties' discovery confidentiality order."); Doe v. Barrow Cnty., Ga., 219 F.R.D. 189, 194 (N.D. Ga. 2003) ("In the end, the court feels that this is one of those rare cases in which the plaintiff should be permitted to proceed anonymously. Plaintiff will, however, have to make himself known to the court and counsel for the defense.").

Here too, the Court finds the proposal offered by the Plaintiffs to be a reasonable way to accommodate the Plaintiffs' strong interest in anonymity while minimizing the prejudice to the

Defendants by permitting limited disclosure of the Plaintiffs' identities so that they can conduct meaningful discovery and mount effective defenses.  Therefore, provided that the Defendants have access to the Plaintiffs' identities for discovery purposes and can engage in affirmative discovery, the Court finds that the prejudice to the Defendants' case in keeping the Plaintiffs' identities from public disclosure to be minimal.

Balancing the factors discussed above, the Court finds that the unique circumstances proffered in the Plaintiffs' motion and alleged in the amended complaint outweigh the public interest in full disclosure of the Plaintiffs' identities.  As such, the Court grants the Plaintiffs' motion to proceed anonymously.  See Doe v. Oshrin, 299 F.R.D. 100, 105 (D.N.J. 2014) ("Here, the Court concludes that the circumstances proffered in Plaintiff's motion favor permission to proceed by pseudonym, particularly in light of the highly sensitive, personal nature of the alleged harm, the public interest in maintaining the confidentiality of Plaintiff's identity in light of this sensitive subject matter, and the risk of continued and/or future harm in the event that Plaintiff's identity is publicly disclosed."); see also Javier H. v. Garcia-Botello, 211 F.R.D. at 196 ("In this Court's opinion, [the] [p]laintiffs, at this time, have a substantial privacy interest that outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings . . . . [The] [p]laintiffs have indicated that [d]efendants have threatened them with violence in the past, and have demonstrated a willingness to carry out those threats.").

However, in an effort to mitigate the prejudice to the Defendants, the Court directs the Plaintiffs to submit a protective order to United States Magistrate Judge Gary R. Brown for approval within thirty days of the date of this order which provides for the limited disclosure of the Plaintiffs' identities for discovery purposes.  If the parties cannot agree to the terms of a

protective order, the Court respectfully refers the matter to Judge Brown for the issuance of an order consistent with the principles outlined in this decision.

## B. As to the Whether a Stay of This Action is Warranted

As noted, the Defendant Greene has been charged under two separate indictments with multiple counts of criminal offenses for stealing money from some of the same Latino individuals who are Plaintiffs in this action.  According to the Plaintiffs, at a July 28, 2015 conference, Supreme Court Justice Fernando Camacho set a "fall trial date."  It is not clear if and when the criminal trial will commence.

In its July 21, 2015 order, the Court expressed its concern that allowing this case to go forward would put Greene in a difficult position in light of his pending criminal case, particularly because Greene has not retained an attorney in this action.  (See the July 21, 2015 Order, Dkt. No. 31, at 5.)  As such, the Court directed the parties to submit additional briefing as to why the Court should not stay this matter pending the resolution of Greene's criminal case.

On July 31, 2015, the Plaintiffs filed a letter objecting to a stay of this action on four grounds: (i) there is only partial overlap between the criminal allegations against Greene because the allegations against the Defendants in this case "addresses a pattern and practice of misconduct that encompasses far more than Greene's actions as an individual"; (ii) the Court should refrain from *sua sponte* staying this action given that Greene has not requested such a stay; (iii) the public interest in the efficient prosecution of this suit outweighs the potential for prejudice to Greene's Fifth Amendment rights by going forward with discovery in this action; and (iv) the County Defendants have no interest in a stay in this case.  (Pls.' July 31, 2015 Ltr., Dkt. No. 32, 2–5.)

In response, on August 12, 2015, the County Defendants filed a letter with the Court indicating that they favor a stay of this action because they assert that even though they do not represent Greene, they too will be subject to prejudice if discovery goes forward against Greene. (County Defs.' Aug. 12, 2015 Ltr., Dkt. No. 32, 2–5.)  Specifically, they claim that any adverse inference drawn against Greene in this action for asserting his Fifth Amendment rights in response to discovery requests could be imputed to them.  (Id. at 4.)  Moreover, they argue that preventing prejudice to Greene in his criminal case outweighs the Plaintiffs' interest in avoiding a delay in this action, particularly given that Greene's criminal case is nearing trial.  (Id. at 3.)

As an initial matter, the Court finds unpersuasive the Plaintiffs' apparent contention that the Court should not *sua sponte* stay this matter without first hearing from the *pro se* Defendant Greene.  "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)); see also Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir.1986) ("'[A] court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action.'") (quoting SEC v. Dresser Indus., 628 F.2d 1368, 1372 (D.C. Cir. 1980) (en banc)) (ellipses and internal quotation marks omitted)).

The Plaintiffs are correct that generally "the person seeking a stay 'bears the burden of establishing its need.'"  Louis Vuitton Malletier S.A., 676 F.3d at 97 (quoting Clinton v. Jones, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)).  However, courts also have the inherent power to *sua sponte* stay discovery pending the resolution of a parallel criminal proceeding.  See, e.g., S.E.C. v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (noting in *dicta* that

"[t]he only result of the intervention has been the staying of discovery, an order the district court could have entered *sua sponte*.") (emphasis added); Javier H. v. Garcia-Botello, 218 F.R.D. 72, 74 (W.D.N.Y. 2003) ("Moreover, because a 'federal district court has the inherent power, in the exercise of its discretion, to stay an action,'. . . , it may deny a motion to intervene, or decline to address the merits of such a motion, and nevertheless enter an order staying civil discovery."); In re Ahead By A Length, Inc., 78 B.R. 708, 710 (Bankr. S.D.N.Y. 1987) ("[W]e conclude that we have the power to stay discovery *sua sponte*.").

Therefore, although Greene has not moved to stay this action, in light of its inherent discretion to control the disposition of the cases on its docket, the Court concludes that it can *sua sponte* consider a stay of this action under these circumstances, particularly given the fact that Greene is without counsel to advise him of the potential for prejudice if he proceeds in this action prior to the resolution of his criminal case.

In its discretion, "[a] district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so." Louis Vuitton Malletier S.A., 676 F.3d at 98 (citing Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). However, "'[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege.'" Id. (quoting Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir. 1995)).

Some district courts in this Circuit have employed a six-factor test, which both the Plaintiffs and County Defendants urge this Court to follow, in determining whether a stay of a civil action pending the outcome of a party's criminal case is in the "interests of justice":

1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have

24

been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (Chin, J) (citations omitted); see also City of New York v. A-1 Jewelry & Pawn, Inc., No. 06-CV-2233 (JBW), 2008 WL 630483, at *2 (E.D.N.Y. Mar. 4, 2008) (same).

However, the Second Circuit in Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012) declined to adopt this test and stated that it serves as "little more than . . . something of a check list of factors we ought to consider." Id. Rather, "[t]he district court's decision ultimately requires and must rest upon 'a particularized inquiry into the circumstances of, and the competing interests in, the case.'" Id. (quoting Banks v. Yokemick, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001)).

The circumstances of this case present competing interests. As the Court noted in its July 21, 2015 Order, a defendant's interest in a stay is strongest "where a party under criminal indictment is required to defend a civil proceeding involving the same matter." Volmar Distributors, Inc. v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (citing Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980); see also Harris v. Nassau Cnty., No. 13-CV-4728 (NGG) (RML), 2014 WL 3491286, at *3 (E.D.N.Y. July 11, 2014) ("'A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter.'").

That is because a defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal proceeding "'risk[s] the adverse inference [in the civil proceeding] arising from [his or her] assertion of the privilege.'" Louis Vuitton Malletier S.A.,

25

676 F.3d at 98 (2d Cir. 2012) (quoting Alvin Hellerstein & Gary Naftalis, <u>Private Civil Actions and Concurrent or Subsequent Regulatory or Criminal Proceedings</u>, SG046 ALI–ABA 903, 905 (2001)).  "But if civil defendants do not elect to assert their Fifth Amendment privilege, and instead fully cooperate with discovery, their 'testimony . . . in their defense in the civil action is likely to constitute admissions of criminal conduct in their criminal prosecution.'" <u>Id.</u> (quoting <u>SEC v. Boock</u>, No. 09 Civ. 8261(DLC), 2010 WL 2398918, at *2, 2010 U.S. Dist. LEXIS 59498, at *5 (S.D.N.Y. June 15, 2010)).  This is an impossible choice.

In the present case, the amended complaint alleges that the Defendant Greene engaged in a "practice and pattern of targeting Latino drivers for unlawful stops and searches during which cash was stolen."  (Am. Compl. at ¶ 78.)  This allegation forms the basis of the Plaintiffs' claims against Greene.  It is also undisputed that Greene is facing criminal charges in Suffolk County Supreme Court arising from the same allegation.

Therefore, there is a very serious possibility that Greene will be presented with a choice when responding to a discovery request from the Plaintiffs in this action, between exercising his Fifth Amendment privilege on one hand, and risking an adverse inference in this action on the other.  Also, without counsel to help him navigate that choice, the Court is of the view that his interest in a stay of this matter is particularly strong.  <u>See</u> <u>Louis Vuitton Malletier S.A.</u>, 676 F.3d at 101 ("There is considerable authority for the principle that a stay is most justified where a movant, like the defendants here, is already under indictment for a serious criminal offense and is required at the same time to defend a civil action involving the same subject matter.").

The potential prejudice to the County Defendants is less clear.  They claim that they may be prejudiced if the Court does not stay this matter because any adverse inference made against Defendant Greene for asserting his Fifth Amendment privilege could be imputed to them.  In

26

support of this assertion, they rely on <u>Stamile v. County of Nassau</u>, 10-cv-2632 (E.D.N.Y. January 31, 2011), an unpublished decision.  In that case, the plaintiffs, inmates of a correctional facility, asserted claims against a grievance officer, the county, and his supervisors arising from allegations that the grievance officer sexually abused them.  (<u>Id.</u> at 1–2.)  The grievance officer was also facing an indictment based on similar allegations.  (<u>Id.</u>)

The court in <u>Stamile</u> granted a motion by the county defendants to stay the matter, in part, because it found that "all claims against the named Defendants are so intertwined with [the grievance officer] that the other Defendants would be subject to the same adverse inference if the civil action continued and [the grievance officer] was called upon to testify, but instead invoked his privilege." (<u>Id.</u> at 14.)

That is not the case here. The Defendant Greene is only one of the eight Defendants named in this action.  Unlike <u>Stamile</u>, the claims alleged against the other County Defendants arise from separate sets of facts and police encounters.  As the Plaintiffs correctly point out, the amended complaint "alleged the involvement of multiple officers in various instances of targeted racial profiling, including illegal checkpoints, traffic stops, and improper ticketing in addition to 'stop and rob' incidents by SCPD officers other than Greene."  (The Pls.' July 31, 2015 Ltr., Dkt. No. 32, at 2; <u>see also</u> Am. Compl. at ¶¶ 54–77; 132–162.)  Thus, the Court does not find, as the County Defendants contend, that Greene's assertion of a Fifth Amendment privilege would necessarily be imputed to them because many of the allegations against them are separate and distinct.

On the other hand, the Plaintiffs do have a clear interest in commencing discovery in order to pursue an expeditious resolution of their claims.  See <u>In re Bolin & Co., LLC</u>, No. 3:08CV1793 (SRU), 2012 WL 3730410, at *4 (D. Conn. June 27, 2012) ("[T]he interests of the

court, and the public, are best served by the expeditious resolution of this case."); see also U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp., Inc., 297 F. Supp. 2d 531, 535-36 (E.D.N.Y. 2003) ("[C]onvenience of the courts is best served when motions to stay proceedings are discouraged. The courts must be mindful that 'a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration.'") (quoting United States v. Private Sanitation Industry Association [Private Sanitation], 811 F. Supp. 802, 808 (E.D.N.Y. 1992)).

  Moreover, if the allegations of an ongoing discriminatory policy at the SCPD turn out to be true, then it is in the public interest for those rights to be vindicated as soon as possible. Further, much of the proof of such a policy relies on allegations that are independent of Greene. As such, the Court finds that the Plaintiffs have a strong argument against a stay of this entire action because it would prejudice their claims which are independent of Greene.  See In re Bolin & Co., LLC, No. 3:08CV1793 SRU, 2012 WL 3730410, at *2 (D. Conn. June 27, 2012) (denying a stay, in part, because the court found that "although there is some overlap between this action and Daly's criminal case, the overlap is not complete"); In re 650 Fifth Ave., No. 1:08-CV-10934 (RJH), 2011 WL 3586169, at *3 (S.D.N.Y. Aug. 12, 2011) ("'If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay.'") (quoting Transworld Mech., Inc., 886 F. Supp. at 1138).

  Therefore, the Court finds that while Greene has a strong interest in staying this matter, the Plaintiffs and the public also have a strong interest in denying any further stays of this case. In order to reconcile these competing interests, the Plaintiffs propose in the alternative that the Court "limit discovery directly served on Greene, so as to address any possible Fifth Amendment

prejudice concerns," while permitting discovery to commence with regard to the County

Defendants.  (The Pls.' July 31, 2015 Ltr., Dkt. No. 32, at 5.)

The Court finds this to be a reasonable approach because it mitigates the potential for

prejudice to Greene's Fifth Amendment rights, while at the same time partially vindicating the

interests of the Plaintiff and the public in moving this case forward to discovery.  See Louis

Vuitton Malletier S.A., 676 F.3d at 102 (noting "alternative forms of relief" to a stay of entire

action, include "tailored stays, protective orders, quashing or modifying subpoenas, sealing

confidential material, or even a renewed motion for a stay if specific impositions presented

themselves."); see also Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201,

211 (1990) ("I should stress that a general stay of all civil discovery is not by any means the best

option available to the court or to the litigants. Stays can and should be tailored to avoid undue

prejudice. By limiting both the time and subject matter covered in temporary deferrals of

particular discovery, a Court can allow civil proceedings to progress as much as possible without

prejudicing the relative interests of the litigants.").

Accordingly, balancing the relevant factors, the Court, in its discretion, stays discovery of

this action solely as to the Defendant Greene pending the resolution of his criminal case.  To

effectuate such a tailored stay, the parties are directed to also include confidentiality provisions

in the protective order submitted to Judge Brown that prevent discovery as to Greene until the

resolution of his criminal case.

## III. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiffs' motion to proceed anonymously and *sua sponte* stays discovery of this matter solely with respect to the Defendant Greene pending the outcome of his criminal case. The parties are directed to submit a proposed protective order to Judge Brown within thirty days of the date of this Order which provides for the limited disclosure of the Plaintiffs' identities and limits discovery as to the Defendant Greene. If the parties fail to reach an agreement, the Court respectfully refers the matter to Judge Brown to issue a protective order that is consistent with this Order. Once a protective order is in place, discovery should commence consistent with this Order.

**SO ORDERED.**
Dated: Central Islip, New York
October 14, 2015

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge