UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
PLAINTIFFS #1–21, individually and on : 
behalf of all others similarly situated, :
 :
 Plaintiffs, :
 :
 v. :          **MEMORANDUM & ORDER**
 :          15-CV-2431 (WFK) (LB)
THE COUNTY OF SUFFOLK, *et al.*, :
 :
 Defendants. :
-----------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** On April 29, 2015, Plaintiffs #1–20[1] ("Plaintiffs"), filed this putative class action, on behalf of themselves and others similarly situated, against the County of Suffolk ("Suffolk County"), the Suffolk County Police Department (the "SCPD"), Commissioner Edward Webber, Lieutenant Milagros Soto, former-Sergeant Scott Greene, Officer Bridgett Dormer, Supervisory John Doe Defendants ("Supervisory John Does"), and John Doe Defendants ("John Does" collectively, but excluding Sergeant Scott Greene,[2] "Defendants")[3], alleging Defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the common laws of the State of New York. Specifically, Plaintiffs allege the SCPD violated the civil rights of Latinos through systemic discrimination and unconstitutional policing policies, patterns, and practices. Plaintiffs allege Suffolk County and the SCPD have known about these discriminatory practices for years, and thus their failure to take the necessary steps to investigate and eliminate these practices amounts to deliberate indifference. Before the Court is (1) Plaintiffs' motion in limine requesting an adverse inference, or in the alternative, a rebuttable presumption and (2) Defendants' motion for summary judgment. For the reasons that follow, this Court declines to draw an adverse inference, but finds a rebuttable presumption that had the SCPD adequately collected, audited, and analyzed traffic stop data, such data would show that SCPD officers targeted Latinos for traffic stops and subjected them to disparate treatment during those stops. Further, for the reasons below, Defendants' motion for summary judgment is DENIED in part and GRANTED in part. Plaintiffs' claims against Officer Dormer and Defendant Greene's cross-claim are hereby DISMISSED. All other claims survive summary judgment.

**BACKGROUND**

---

[1] On November 2, 2018, Plaintiff #21 voluntarily dismissed all his claims in this action. ECF Nos. 156, 157.
[2] Defendants Suffolk County, the SCPD, Commissioner Webber, Supervisory John Does, Lieutenant Soto, Officer Dormer, and John Does are represented by the Suffolk County Department of Law. Defendant Scott Greene proceeds pro se. Defendant Greene has not filed an opposition to Plaintiffs' motion for summary judgment. Therefore, reference to "Defendants" hereinafter is to all Defendants except Greene. Greene is named specifically if referenced.
[3] Defendants named as listed in the Amended Complaint filed on May 18, 2015. *See* ECF No. 21.

Magistrate Judge Bloom's Report & Recommendation on Plaintiffs' motion for class certification set forth the factual background and the substance of Plaintiffs' allegations in this case. Familiarity with that decision, and thus with the facts of this case and its procedural history, is presumed. *See Plaintiffs #1–21 v. Cty. of Suffolk*, 15-CV-2431, 2021 WL 1255011, at *2 (E.D.N.Y. Mar. 12, 2021) (Bloom, Mag.), *report and recommendation adopted*, 15-CV-2431, 2021 WL 1254408 (E.D.N.Y. Apr. 5, 2021) (Kuntz, J.). Nonetheless, a summary of the facts is repeated herein.

## I.      Factual Background

Plaintiffs are twenty Latino individuals who are present and former residents of Suffolk County. Compl. ¶¶ 4, 9–29. Plaintiffs allege they have been subjected to discriminatory policing by the SCPD including race-based traffic and pedestrian stops as well as wrongful searches and detentions. They further allege SCPD officers have taken their personal property, issued them unjustified traffic citations, and have otherwise harassed them. *Id.* at ¶ 1. Plaintiffs also allege Defendants SCPD and Suffolk County are fully aware of this discrimination and have "ignored, covered these practices up, and more generally, failed to take the actions necessary to investigate and eliminate these practices." *Id.* ¶ 2.

### A.  The Justice Department's SCPD Investigation

In September 2009, the Department of Justice (the "DOJ") initiated an investigation of the SCPD focused on allegations that the SCPD engaged in discriminatory policing against Latinos. Pls. Rule 56.1 Counterstatement ("Pls. Counter-Stmt.") ¶ 113, ECF No. 301-2 . In September 2011, the DOJ issued a Technical Assistance Letter to Suffolk County outlining recommendations designed to correct the SCPD's discriminatory policies, procedures, and practices and to assist the SCPD in providing "constitutional police services." *Id.* ¶¶ 113–15.

On January 13, 2014, the DOJ and the SCPD executed a settlement agreement which mandated the SCPD adopt enhanced policies and procedures to ensure nondiscriminatory policing of the Latino community. *Id.* ¶¶ 82, 121. The settlement agreement required the SCPD, among other things, (1) to adopt a bias policing policy; (2) to provide training on bias-free policing; and (3) to collect accurate traffic stop data, to analyze such data for indications of potential biased policing, and to provide an annual report to the DOJ. *Id.* ¶¶ 123–26. The agreement was to remain in effect until the SCPD substantially complied with the agreement for at least one year. In its most recent compliance assessment report, dated December 18, 2019, the DOJ found the SCPD was not in "substantial compliance" with the requirements of the settlement agreement. *Id.* ¶ 109.

B. The Suffolk County DA's Prosecution of Former Sergeant Greene

While the DOJ investigated the SCPD, the Suffolk County District Attorney's Office initiated a criminal investigation into Defendant (and former SCPD Sergeant) Scott Greene. *Id.* ¶ 130. The investigation uncovered a "stop-and-rob" scheme Greene had been conducting from approximately 2011 through 2014 whereby he stopped Latino motorists, asked for their wallets, and proceeded to steal the money he found. *Id.* ¶ 154. Greene was arrested on January 30, 2014 in a sting operation. *Id.* ¶ 139. In January 2016, a New York State jury found Greene guilty of multiple counts of grand larceny, petit larceny, and official misconduct for stealing money from over two dozen Latino individuals. *Id.* In April 2016, Greene pled guilty to additional charges of grand larceny and petit larceny. *Id.*

C. Allegations of Further Discrimination & Non-Compliance with DOJ Settlement

In this case, Plaintiffs allege that SCPD continues to discriminate against Latinos, despite the DOJ settlement. Specifically, Plaintiffs argue the record demonstrates that SCPD officers beyond Defendant Greene have engaged in and continue to engage in biased policing against

Latinos in Suffolk County. Pls. Mem. in Opposition to Defs. Mot. for Summary J. ("Pls. Opp.") at 23, ECF No. 302. Plaintiffs also argue overwhelming statistical evidence demonstrates that Latino motorists are subjected to disparate treatment by the SCPD and that had the SCPD carried out a credible analysis of its own traffic stop data, as required by the settlement agreement with the DOJ, the analysis would have put the department on notice of serious issues. Pls. Counter-Stmt. ¶¶ 150–51; Pls. Opp. at 9. Additionally, Plaintiffs allege the SCPD:

(1) lacked a bias policing policy until 2015—six years after the DOJ launched its investigation;

(2) failed to provide an adequate and timely process for investigating complaints and effectively discouraged Latinos from filing complaints;

(3) failed to provide proper training on bias-free policing;

(4) failed to implement a supervisory and disciplinary system to identify and deter discriminatory policing against Latinos; and

(5) failed to adequately collect and analyze traffic stop and checkpoint data to detect and prevent biased policing.

Pls. Opp. at 10–15.

On the other hand, Defendants argue Defendant Greene was a lone-wolf bad actor and Plaintiffs "have failed to come forward with any evidence to show that any Latino individual, beyond the named plaintiffs, who were all alleged victims of Scott Greene, was subject to some type of discriminatory policing in Suffolk County." Defs. Mem. in Supp. of Mot. for Summary J. ("Defs. Mem.") at 3, ECF No. 300. Defendants further argue that summary judgment should be granted in their favor because the Plaintiffs have failed to establish a policy or custom on the part of the County that caused the alleged constitutional violations by Defendant Greene. *Id.*

## II.     Procedural History

On April 29, 2015, Plaintiffs #1–20 ("Plaintiffs"), filed this putative class action, on behalf of themselves and others similarly situated, against Suffolk County, the SCPD, Commissioner Edward Webber, Lieutenant Milagros Soto, former-Sergeant Scott Greene, Officer Bridgett Dormer, Supervisory John Does, and John Does alleging Defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the common laws of the State of New York.  Compl.; First Amended Complaint ("FAC"), ECF No. 21.

On July 15, 2020, Plaintiffs filed a motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), ECF No. 250, and a motion in limine, ECF No. 275. On October 16, 2020, Defendants filed a motion for summary judgment.  ECF Nos. 298, 300. On October 26, 2020, this Court referred Plaintiffs' motion for class certification to the Honorable Magistrate Judge Lois Bloom for a Report & Recommendation ("R&R").  ECF No. 313.  On April 5, 2021, this Court adopted Judge Bloom's R&R, ECF No. 318, granting in part and denying in part Plaintiffs' motion for class certification and certifying a class under Rule 23(b)(2).  ECF No. 319.

Before the Court is (1) Plaintiffs' motion in limine and (2) Defendants' motion for summary judgment.  For the reasons that follow, Plaintiffs' motion in limine is DENIED in part and GRANTED in part and Defendants' motion for summary judgment is DENIED in part and GRANTED in part.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by

citation to materials in the record. Fed. R. Civ. P. 56(a)–(c). A genuine dispute exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001). Courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant" when evaluating summary judgment motions. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The role of the district court is not to weigh the evidence and to determine the truth of the matter, but rather to answer "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 249–50.

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "'specific facts showing that there is a genuine issue for trial.'" *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence" in support of the non-movant will not alone defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Rather, the non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmov[ant]'s case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## DISCUSSION

I.  **Plaintiffs' Motion in Limine Requesting An Adverse Inference, or in the Alternative, a Rebuttable Presumption**

Before considering Defendants' motion for summary judgment, this Court will address Plaintiffs' motion in limine submitted with their motion for class certification. Plaintiffs' motion in limine requests an adverse inference stating that the "SCPD's failure to adequately collect, audit, and analyze traffic stop data from January 1, 2012 through the present was the result of an attempt to conceal the SCPD's targeting and disparate treatment of Latinos based on race, ethnicity, and/or national origin for traffic stops, searches, tickets, arrests, and/or wrongful deprivations of property as part of its traffic stop practices," or in the alternative, a rebuttable presumption that "had the SCPD adequately collected, audited, and analyzed traffic stop data, such data would show that SCPD officers' targeting and disparate treatment of Latinos based on race, ethnicity, and/or national original for traffic stops, searches, tickets, arrests, and/or wrongful deprivations of property as part of its traffic stop practices." Pls. Mem. in Supp. of Mot. in Limine ("Pls. Mot. Lim.") at 1, ECF No. 276. For the reasons below, Plaintiffs' request for an adverse inference is DENIED. However, their request for a rebuttable presumption is GRANTED.

A. This Court Will Not Draw an Adverse Inference

Plaintiffs argue this Court should "draw an adverse inference against the SCPD based on the SCPD's failure to adequately collect, audit, and analyze traffic stop date." Pls. Mot. Lim. at 12. An adverse inference is "an extreme sanction and should not be given lightly" because the party suffering under this instruction will rarely succeed in the litigation. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (Scheindlin, J.). As Plaintiffs note, courts often use adverse inferences to sanction parties who, through the destruction of harmful evidence, seek to avoid the consequences of their actions. *See, e.g.*, *Coale v. Metro-N. Commuter R. Co.*, 621 Fed. App'x 13, 16 (2d Cir. 2015) (summary order) (detailing standard for

an adverse inference due to spoliation of evidence); *see also* Fed. R. Civ. P. 37(e)(2), Advisory Committee Note, 2015 Amendments (noting that Courts may draw adverse inferences "to address or deter failures to preserve electronically stored information, but only on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation").

Plaintiffs argue that "the same principles which animate the granting of a spoliation sanction (for the knowing destruction of harmful evidence) weigh in favor of the granting of an adverse inference here (for the knowing failure to collect harmful evidence)." Pls. Mot. Lim. at 19. The only authority that flirts with Plaintiffs' argument is non-binding and outside this Circuit. *See Morrow v. Washington*, 277 F.R.D. 172 (E.D. Tex. 2011). In this district, Courts have routinely declined to impose spoliation sanctions where there was no evidence that a party ever actually "possessed or controlled" the documents at issue. *United States v. Robinson*, 16-CR-545, 2019 WL 5864135, at *9 (E.D.N.Y. Nov. 8, 2019) (Spatt, J.); *see also United States v. Watts*, 934 F. Supp. 2d 451, 478 (E.D.N.Y. 2013) (Matsumoto, J.) (denying spoliation sanctions where defendant "characterize[d] the government as having failed to preserve the documents discussed on the recordings," because "the government [could not] be said to have ever actually possessed or controlled said documents"); *Poux v. Cty. of Suffolk*, 09-CV-3081, 2012 WL 1020302, at *19 (E.D.N.Y. Mar. 23, 2012) (Feuerstein, J.) (denying request for spoliation sanctions where there was "no evidence in the record from which a reasonable juror may infer, *inter alia*, that they ever had control over the allegedly lost or destroyed videotapes or played any part in the destruction of the videotapes").

Here, Plaintiffs do not allege Defendants collected thorough traffic stop data and then willfully destroyed it to avoid liability. Instead, they argue Defendants purposefully failed to

collect robust data for fear that it would substantiate allegations of widespread bias within the department. Because Defendants did not intentionally lose or destroy relevant evidence in their possession, the harsh sanction of an adverse inference is inappropriate. Therefore, the Court DENIES Plaintiffs' request for an adverse inference.

B. This Court Will Adopt a Rebuttable Presumption

As an alternative to an adverse inference, Plaintiffs request this Court adopt a rebuttable presumption that had the SCPD adequately collected, audited, and analyzed traffic stop data, that data would show that SCPD officers targeted Latinos for traffic stops and subjected them to disparate treatment during those stops.

"[T]he law does not impose a duty on parties to civil litigation to collect evidence for the opposing party." *Conan v. City of Fontana*, 16-CV-1261, 2017 WL 3530350, at *4 (C.D. Cal. Aug. 16, 2017). However, presumptions are "useful devices" which "arise[e] out of considerations of fairness, public policy, as well as judicial economy." *Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988); Fed. R. Evid. 301 Advisory Committee Notes ("The same considerations of fairness, policy, and probability which dictate the allocation of the burden of the various elements of a case as between the prima facie case of a plaintiff and affirmative defenses also underlie the creation of presumptions."). "The truth is that there is very little pattern to presumptions generally. Nothing in the general nature of presumptions provides clues as to whether a particular presumption can be invoked by the production of a single basic or operative fact or whether a number of such facts must be weighed under a preponderance standard in order to get the presumption's benefit." *Stapleton v. Westmoreland Coal Co.*, 785 F.2d 424, 456 (4th Cir. 1986), *rev'd sub nom.*, *Mullins Coal Co. of Virginia v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 484 U.S. 135 (1987) ("Presumptions are both

legislatively and judicially created. They are varied and difficult to categorize much less compare, and they take the legal coloration of the field of law in which they apply.") (citing 1 Weinstein, *Evidence* ¶ 300 *et seq.* (1985))).

Rebuttable presumptions are used across many areas of the law where proof of an underlying fact is often difficult to produce. *See, e.g., Arthur v. Nyquist*, 573 F.2d 134, 142 (2d Cir. 1978) (creating a "presumption of segregative purpose" in a § 1983 case where defendants' "actions have the natural, probable, and foreseeable result of increasing or perpetuating segregation" (internal quotation marks omitted)); *Lawrence v. Veolia Transp. Services, Inc.*, 07-CV-2722, 2009 WL 857394, at *9 (D.S.C. Mar. 30, 2009) (noting a plaintiff may "resort to the judicially created burden shifting scheme" established by *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) which gives rise to a "rebuttable presumption" that the employer unlawfully discriminated against the plaintiff once a prima facie case has been established); *Riggle v. CSX Transp., Inc.*, 755 F. Supp. 676, 681 (D. Md. 1991) (explaining that "[b]ecause it is difficult to prove discriminatory principles of proof, a judicially created proof scheme for Title VII cases may be properly adapted to the requirements of an ADEA case" and that "[t]his scheme creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff, and shifts the burden of producing evidence to the contrary to the employer") (internal citations omitted); *Piersons v. Quality Archery Designs, Inc.*, 06-CV-040, 2009 WL 10680314, at *14 (N.D.N.Y. Feb. 26, 2009) (Peebles, Mag.) (explaining the "judicially-created" rebuttable presumption of "undue delay and resulting prejudice when a patent holder has deferred in bringing suit for more than six years after learning of a defendant's allegedly infringing conduct"); *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011) ("[T]here is a judicially-

created rebuttable presumption of irreparable harm where a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim."); *Taha on behalf of his deceased brother v. United States*, 148 Fed. Cl. 37, 43 (2020) (discussing the common-law mail-box rule as a "judicially-created presumption that material mailed is material received" that "gives rise to a rebuttable presumption that the document was physically delivered to the addressee in the time such mailing would ordinarily take to arrive").

Considerations of public policy and fairness weigh strongly in favor of finding a rebuttable presumption in this case. The SCPD's long history of failing to collect adequate traffic stop data should not serve as a shield against potential liability for the misdeeds of the SCPD. Indeed, as Plaintiffs point out, failure to grant the presumption in this case would essentially allow the SCPD to avoid liability for discrimination by affirmatively choosing not to maintain records. The DOJ investigation and the prosecution and conviction of Defendant Greene put the Defendants on notice of biased policing within the department. The SCPD's failure to adequately collect data, in violation of the settlement agreement, that may have confirmed the allegation of department-wide bias should not shield them from liability now.

Furthermore, this rebuttable presumption is supported by "rational and logical probabilities developed by the facts." *Headen v. Pope & Talbot, Inc.*, 252 F.2d 739, 743 (3d Cir. 1958). Plaintiffs' expert, Michael R. Smith, concluded:

> The quality of the traffic stop data collected by the SCPD during the period at issue also fell far short of what is necessary for a scientifically valid assessment of racial/ethnic disparities in stops and stop outcomes. The data collection systems maintained by the SCPD suffered from unexplained glitches and lost data, and at one point a new system was implemented and abandoned on the same day. An audit of the 724,238 traffic stops initiated by the SCPD between 2014 and 2018 revealed that 6.1 percent of the cases did not identify whether the motorists for whom data were captured were drivers or passengers, and more than 139,000 cases (out of 631,058 driver-only cases) had to be eliminated because of duplicated cases and/or

ID numbers. Altogether, 22% of the driver-only cases contained errors. Thus, even the post-DOJ Settlement Agreement data provided during discovery are unreliable.

Exhibit T, Report of Michael R. Smith, J.D., PH. D. ¶ 3, ECF No. 252-20. Furthermore, Smith's independent audit of the traffic stop data produced by the County Defendants found "statistically significant, higher percentages of Latino motorists who were arrested and ticketed compared to Whites across all years examined (2014 to 2018) and lower percentages who were warned or released with no further action taken." *Id.* ¶ 5. Smith cautions that while this conclusion is "not dispositive because [it] do[es] not account for other factors known to potentially influence these outcomes, these results are nonetheless consistent with ethnicity-based enforcement, and if conducted by the SCPD, would have put the department on notice of serious potential issues within the department." *Id.* Plaintiffs' requested rebuttable presumption is therefore supported by the available evidence, logical probabilities, and considerations of fairness.

Accordingly, this Court will draw a rebuttable presumption that had the SCPD adequately collected, audited, and analyzed traffic stop data, such data would show that SCPD officers targeted Latinos for traffic stops and subjected them to disparate treatment during those stops. Accordingly, Plaintiffs' motion in limine, ECF No. 275, is GRANTED in part and DENIED in part. The Court now proceeds to address Defendants' motion for summary judgment.

## II.      Summary Judgment on Municipal Liability Would Be Premature

Defendants first move for summary judgment on Plaintiffs' municipal liability claims against the County.

### A.  Legal Standard

Suffolk County can only be held liable for its police officers' actions under 42 U.S.C. § 1983 if those actions result from Suffolk's custom, practice, or policy; *respondeat superior* or vicarious liability does not attach to § 1983 claims. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690–91 (1978); *see also Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007). Courts within the Second Circuit apply a two-prong test to determine municipal liability, wherein a plaintiff must show (1) the existence of a policy or custom, and (2) a causal connection between the policy and the deprivation of the plaintiff's constitutional rights. *Johnson v. City of New York*, 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (Daniels, J.).

A policy or custom may exist where there is a "practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware" or where there is a "failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Id.* (internal citations and quotation marks omitted). Where a municipality has a constitutionally valid stated policy, but fails to implement it, the municipality may be liable for failure to train or supervise. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 n.7 (2d Cir. 2004).

For failure to train to amount to deliberate indifference, a plaintiff must show that (1) a policy maker "knows to a moral certainty that her employee will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006) (internal citations and quotation marks omitted). Furthermore, to avoid summary judgment on the issue of failure to train amounting to deliberate indifference, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Id.*

(internal quotation marks omitted) (citing *Amnesty Am.*, 361 F.3d at 129).

To show deliberate indifference through failure to supervise, a plaintiff must establish "only that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious . . . and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *Amnesty Am.*, 361 F.3d at 128 (internal quotation marks omitted) (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). A county police commissioner is generally considered a policymaking official. *See, e.g.*, *Gashi v. Cnty. of Westchester*, 02-CV-6934, 2005 WL 195517, at *13 (S.D.N.Y. Jan. 27, 2005) (Daniels, J.) (collecting cases).

B. <u>Application</u>

After a careful review of the record, this Court is satisfied that a reasonable jury could conclude Suffolk County and the SCPD violated § 1983 because their failure to train and supervise employees amounted to deliberate indifference to the unconstitutional policing of Latino citizens.

**i. Failure to Train & Deliberate Indifference**

Defendants received both actual and constructive notice, since at least 2012, of constitutional violations occurring because of the SCPD's policies and practices. A reasonable jury could conclude that, despite being on notice, Defendants deliberately maintained policies and practices that predictably resulted in continued constitutional violations and failed to improve their training and supervision to correct course. Indeed, as noted above, this Court has adopted a rebuttable presumption that had the SCPD adequately collected, audited, and analyzed traffic stop data, that data would show that SCPD officers targeted Latinos and subjected them to

disparate treatment. Furthermore, a reasonable jury could conclude that Defendants' inadequate collection and analysis of data amounted to deliberate indifference to widespread constitutional violations and ultimately to Plaintiffs' constitutional rights. Plaintiffs have developed a robust record of civilian complaints, deposition testimony, and statistical evidence in support of their positions. *See e.g.*, Declaration of Brian C. Mitchell, ECF No. 298-2 Exs. A-T.

In opposition, Defendants argue Plaintiffs may not recover because the settlement agreement, executed by the County, the SCPD, and the DOJ, allows the United States to initiate court action if it reasonably believes the County has failed to fulfill any obligations under the agreement. Thus, since the DOJ has never pursued court action against Suffolk County or the SCPD, the record does not support a claim that Defendants have failed to implement policies that would have identified officers engaging in discriminatory policing.

Defendants' argument is unconvincing. First, the DOJ's decision not to initiate court action is not conclusive evidence of the County and SCPD's compliance with the agreement. Other factors—such as department resources—may influence the DOJ's decision to initiate court action when a party is in breach of a settlement agreement. Defendant's violation of the agreement does not require the United States to initiate court action, and it is not this Court's place to speculate as to the myriad of reasons it has declined to do so. Second, the analysis performed by Plaintiffs' expert of SCPD's traffic stop data supports a theory of ongoing, and widespread biased policing practices. Plaintiffs' expert found that a statistically significant higher percentage of Latino motorists were ticketed and arrested compared to whites. The County Defendants have offered no innocent explanation of this statistically significant disparity. That traffic stop data thus provides evidence of discriminatory policing that went beyond the actions of Defendant Greene. *See Castaneda v. Partida*, 430 U.S. 482, 494 n.13 (1977) (holding

that "[i]f a disparity is sufficiently large, then it is unlikely that it is due solely to chance or accident, and, in the absence of evidence to the contrary, one must conclude that racial or other class-related factors" played a role); *Santiago v. Miles*, 774 F. Supp. 775, 799 (W.D.N.Y. 1991) (Larimer, J.) ("To effectively rebut plaintiffs' statistical evidence, defendants must offer credible evidence that explains the disparate impact on non-racial grounds."); *see Davis v. City of New York*, 959 F. Supp. 2d 324, 362 (S.D.N.Y. 2013) (Scheindlin, J.) (deciding that since defendants had failed to provide "any racially neutral explanation" for its conduct, plaintiffs' statistical evidence "represent[ed] a circumstantial starting point for at least a prima facie finding of discriminatory intent"). Defendants' objections do not eliminate the factual disputes that preclude summary judgment on this claim.

### ii. Causation

Defendants also argue Plaintiffs have failed to show any alleged County policy or custom was the cause of the alleged constitutional violations. Plaintiffs contend the record shows Defendants' deliberate indifference was and continues to be the "moving force" or a substantial factor behind ongoing constitutional violations by the SCPD. *See Smith*, 413 F.3d at 102. In light of SCPD's failure to implement the DOJ settlement or to make any serious attempt to change their practices in response to past constitutional violations, this Court is satisfied a jury could reasonably conclude that had the SCPD properly implemented systems to prevent and detect biased policing, adequately trained its officers, and collected and analyzed traffic stop data more thoroughly, the alleged unconstitutional police practices would have been ceased or sharply curtailed. Such a finding is sufficient to establish causation. *Smith*, 413 F.3d at 103. At a minimum, material issues of fact exist regarding whether a reasonably prudent person in the County's position should have anticipated the constitutional violations or risk of constitutional

violations.  *H.H. v. City of New York*, 2017 WL 3396434, at *9 (E.D.N.Y. Aug. 7, 2017)

(Gershon, J.).  Therefore, the Court DENIES Defendants' motion for summary judgment on the

question of municipal liability.

### III.    Plaintiffs' Title VI Claims Against County Defendants

The Court now turns to Plaintiffs' Title VI claims against the County Defendants.  Title

VI of the Civil Rights Act of 1964 states that "[n]o person in the United States shall, on the

ground of race, color, or national origin, be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance."  42 U.S.C. § 2000d.  To state a claim for discrimination under Title VI, plaintiffs

must allege "that the defendant discriminated against [them] on the basis of race, that that

discrimination was intentional, and that the discrimination was a substantial or motivating factor

for the defendant's actions."  *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal

citations omitted).  A municipality cannot be liable under Title VI on a theory of *respondeat*

*superior*, and it cannot be liable unless it had actual knowledge of discrimination and was

deliberately indifferent to it.  *See D.H. v. City of New York*, 309 F. Supp. 3d 52 (S.D.N.Y 2018)

(Castel, J.).

Defendants argue "Plaintiffs' Title VI claim must also be dismissed for the same reasons

that their *Monell* claim fails."  Defs. Mem. at 23.  Having found material factual disputes

preclude summary judgment on Plaintiffs' *Monell* claim, this Court is satisfied that summary

judgment on Plaintiffs' Title VI claim would be similarly premature.  Accordingly, Defendants'

motion for summary judgment on Plaintiffs' Title VI claim is hereby DENIED.

### IV.    Plaintiffs' Claims Against Webber and Soto

Defendants also move for summary judgment on the claims against Defendants Webber

and Soto.  Defendants argue Plaintiffs have failed to show Webber and Soto were personally

involved in any alleged constitutional violations and, regardless, are entitled to qualified immunity. The Court rejects both of these arguments at this stage of the litigation.

A. Webber and Soto's Personal Involvement

Defendants argue the claims against Webber and Soto must be dismissed as "there is no evidence of their personal involvement in the alleged violations committed by Greene." Defs. Mem. at 3. Defendants further argue the evidence does not support a theory of supervisory liability for Webber and Soto because "[t]here is no evidence that either Webber or Soto was aware of the unconstitutional conduct and failed to take remedial action, or that they were deliberately indifferent to the rights of the plaintiffs." *Id*. at 7.

To establish a Section 1983 claim against a supervisory official in his or her individual capacity, a plaintiff must allege personal involvement in the constitutional violation. "Personal involvement" can be established where, *inter alia*, a defendant "failed to remedy the wrong" after being informed of the violation, "allowed the continuance of . . . a policy or custom" under which unconstitutional practices occurred, or where the "defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

On this record, there is a sufficient basis for a trier of fact to conclude that Soto and Webber knew of SCPD's biased policing practices and, in their response, were deliberately indifferent to the rights of those who come into contact with SCPD officers. Plaintiffs argue both Webber and Soto were aware of the allegations made against Defendant Greene in the summer of 2012 and "failed to act on the information to remedy the alleged wrongs." Pls. Mem. at 31. Specifically, Plaintiffs argue Defendants failed to interview the complainants for almost six months after the complaint was received, and that although Webber referred the case to the District Attorney's Office, "case notes reflect that the case remained active, and there is no

record evidence that the IAB investigation was ever officially reassigned." *Id.* Plaintiffs also claim that while Defendant Greene was ultimately arrested as a result of the District Attorney's investigation, "the sting operation did not occur until January 2014, nearly two years after the first complaint was filed by a Named Plaintiff and nearly three years after the April 2021 complaint against Greene. In that time, ten additional Named Plaintiffs were stopped and robbed by Greene." *Id.*

In opposition, Defendants argue Soto and Webber adequately investigated and responded to complaints once they became aware of them. For example, Defendants argue, "after learning of the complaint by Plaintiffs #2 and #3, Commissioner Webber was concerned and referred the matter to the District Attorney's Office, and deferred to their guidance in determining how to proceed." Defs. Mem. at 10. Similarly, "once becoming involved in the investigation, Soto was instrumental in interviewing the complainants, tracking down other possible victims, coordinating and assisting the District Attorney's Office in the sting operation, reaching out to the community after Greene's arrest to see if there were any other complaints of discrimination against Greene or other members of the department, including personally knocking on many doors and attempting to convince otherwise reluctant victims to come forward." *Id.* at 11. At the very least, the parties' contradictory accounts establish a material factual dispute that precludes summary judgment on this claim.

B. <u>Webber and Soto's Qualified Immunity Claims</u>

Defendants argue that even if Officer Webber and Soto's actions amounted to deliberate indifference, they are entitled to qualified immunity. "Government actors are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 432–33 (2d Cir. 2009) (quoting *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818 (1982)).

Plaintiffs assert, "it was not objectively reasonable for Webber and Soto to believe that their personal involvement in Greene's conduct and the constitutional violations alleged in biased policing complaints did not violate clearly established law. Therefore, neither Webber nor Soto are entitled to qualified immunity." Pls. Opp. at 33. "[W]hether particular acts should be considered objectively reasonable is a highly fact-specific inquiry." *Hardy v. City of New York*, 732 F. Supp. 2d 112, 138 (E.D.N.Y. 2010) (Trager, J.). Given that there are factual disputes regarding the conduct of Officers Webber and Soto in relation to the investigation into Defendant Greene's misconduct as well as other instances of allegedly discriminatory policing in Suffolk County, it cannot be determined whether it was objectively reasonable for these Defendants to believe that their actions did not violate clearly established law on summary judgment. *Id.; see also Kaminsky v. Rosenblum,* 929 F.2d 922, 927 (2d Cir. 1991) (finding the defense unavailable where "resolution of the objective reasonableness of defendants' actions turn[ed] on disputed questions of fact that preclude[d] the granting of summary judgment"). Therefore, material factual disputes preclude summary judgment on the question of qualified immunity.

### V.    Plaintiffs' Request for a Declaratory Judgment

Defendants next move for summary judgment on Plaintiffs' request for a declaratory judgment. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 ("DJA"), gives a district court the discretion to "declare the rights and other legal relations of any interested party seeking such declaration," *id.* § 2201(a). Actions brought under the DJA are justiciable only if there is an "actual controversy" presented by the facts of the case. 28 U.S.C. § 2201(a). This mirrors the criteria examined when determining whether a particular case satisfies the 'case or controversy' requirement giving rise to federal court jurisdiction derived from Article III of the United States

Constitution. "The judicial power does not extend to abstract questions . . . claims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention." *See Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241–42 (1952).

Defendants argue "plaintiffs' request for declaratory relief must be dismissed as plaintiffs have not sufficiently pled a continuing or imminent concrete injury." Defs. Mem. at 4. Defendants argue that Plaintiffs "all suffered their alleged constitutional injury at the hands of Scott Greene" and that because Defendant Greene is no longer a member of the SCPD "there is no possibility of [Plaintiffs] suffering a constitutional violation based on his conduct." *Id.* at 24–25.

In opposition, Plaintiffs note Defendants' argument "rests on the false premise that Named Plaintiffs' injuries flow exclusively from Greene." Pls. Mem. at 28. Plaintiffs further argue they have experienced unlawful traffic stops as recently as 2020, and that the record evidence shows ongoing constitutional violations. *Id.* In support, Plaintiffs point to their declarations and deposition testimony demonstrating ongoing fear of being subjected to unconstitutional policing by Defendants. *Id.* at 7, 28. These facts are sufficient to demonstrate the possibility of future injury. *See, e.g.*, *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (holding plaintiffs who "are likely to suffer future interrogations" have standing); *Floyd v. City of New York*, 283 F.R.D. 153, 169 (S.D.N.Y. 2012) (Scheindlin, J.) (deciding the frequency of alleged injuries inflicted by a police department's practices at issue can create a likelihood of future injury). Accordingly, Defendants' motion for summary judgment on Plaintiffs' request for a declaratory judgment or injunctive relief is hereby DENIED.

**VI.    Plaintiffs' Claims against Defendant Dormer**

Defendants next move to dismiss Officer Bridgett Dormer from the action on the basis that the only claim asserting a violation of a constitutional right by Dormer was brought by

Plaintiff # 21, who voluntarily dismissed all his claims in November 2018.  Defs. Mem. at 6; *see* ECF No. 156.  Despite arguing Defendant Dormer could be a John Doe Defendant, Plaintiffs agree to dismiss their claim against Defendant Dormer.  Plaintiffs request that such dismissal be "without prejudice to the Plaintiffs' right to amend their complaint to re-assert claims against Defendant Dormer should it otherwise become proper to do so."  Pls. Mem. at 34.  Accordingly, the claims against Officer Bridget Dormer are hereby DISMISSED *without* prejudice.

### VII.    State Claims

Finally, Defendants move (1) to dismiss Plaintiffs' pendant New York State claims to the extent they "may be construed as against the County" for failure to comply with the requirements of NY Gen. Mun. Law § 50 and (2) to dismiss Defendant Greene's cross-claim against the County for having no basis in fact or law.  Defs. Mem. at 25.  Defendant Scott Greene, who is proceeding pro se, did not file any submissions in response to Defendants' motion and Plaintiffs did not address these points in their opposition brief.

In this case, Plaintiffs' New York State claims are *not* asserted against the County, but only against Defendant Greene.  The Eighth Cause of Action in the Amended Complaint asserts claims by All Named Plaintiffs "[a]gainst Defendants Greene and Dormer for Conversion." FAC ¶¶ 195–96.  Accordingly, this cause of action does not assert any claims against the County and Defendants' motion to dismiss for failure to comply with NY Gen. Mun. Law § 50 is hereby DENIED.

However, Defendants' motion to dismiss Defendant Greene's cross-claim against the County is hereby GRANTED.  Defendant Greene's "cross complaint" reads as follows:

1.  In May of 2015 Suffolk county, County Defendants, made the decision not to represent me in this civil action.  This action names numerous other Suffolk County employees as well as other Suffolk County named and unnamed police officers.

2. The County Defendants discriminately eliminated me from representation, when this civil action is alleging any and all acts, allegedly occurred while I was an employee of Suffolk County and while I was on duty as a police officer.
3. Any and all other allegations against other employees and/or police officers of Suffolk County are similar, if not in fact exactly in nature, as those against me and the County Defendants are representing them in this same civil action.

This claim is without merit—as Magistrate Judge Gary Brown made clear in his June 28, 2017 Order, "there is no right to pro bono representation in this civil action." 6/28/2017 Order Denying Def. Greene's Motion to Stay. Accordingly, Defendant Greene's cross-claim is hereby DISMISSED.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for an adverse inference or in the alternative a rebuttable presumption. Further, Defendants' motion for summary judgment is DENIED in part and GRANTED in part. Plaintiffs' claims against Officer Dormer and Defendant Greene's cross-claim are hereby DISMISSED. All other claims survive summary judgment. The Clerk of Court is respectfully directed to close the motions pending at ECF Nos. 275, 298, 300.

**SO ORDERED.**

**s/WFK**

_____

Dated: August 4, 2021
      Brooklyn, New York

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE