IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Plaintiffs #1-21, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>v.<br><br>THE COUNTY OF SUFFOLK; SUFFOLK COUNTY POLICE DEPARTMENT; EDWARD WEBBER, individually and in his official capacity; MILAGROS SOTO, individually and in her official capacity; SCOTT GREENE, individually and in his official capacity; BRIDGETT DORMER, individually and in her official capacity; SUPERVISORY JOHN DOE DEFENDANTS, individually and in their official capacities; and JOHN DOE DEFENDANTS, individually and in their official capacities,<br><br>                         Defendants. | Case No.: 2:15-cv-02431-WFK-LB |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AGREEMENT AND APPROVAL OF NOTICE TO THE CLASS**

**TABLE OF CONTENTS**

I.  INTRODUCTION AND STATEMENT REGARDING LEGISLATIVE
APPROVAL ................................................................................................1

II.  SUMMARY OF THE CASE ........................................................................3

    A.  Facts Alleged by Plaintiffs .................................................................3

    B.  Summary of Proceedings.....................................................................4

III.  SUMMARY OF THE CLASS ACTION SETTLEMENT AGREEMENT ......................6

    A.  Substantive Relief ...............................................................................6

    B.  Release of All Claims Against County Defendants.............................11

IV.  THE CLASS ACTION SETTLEMENT SATISFIES THE REQUIREMENTS
FOR PRELIMINARY APPROVAL .............................................................12

    A.  Legal Standard for Preliminary Approval..........................................12

    B.  The Class Action Settlement Agreement Satisfies the Standard for
Preliminary Approval.........................................................................13

V.  CONCLUSION .........................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987) ...........................................................................................24

*Barrella v. Vill. of Freeport*,
    43 F.Supp.3d 136 (E.D.N.Y .2014)..................................................................................28

*City of Detroit v. Grinnell Corp.*
    495 F.2d 448 (2d Cir. 1974) .................................................................................*passim*

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................................................12

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ...............................................................................................12

*D'Annunzio v. Ayken, Inc.*,
    No. 11-CV-3303 WFK WDW, 2015 WL 5308094 (E.D.N.Y. Sept. 10, 2015)....................27

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................................22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...............................................................................16

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ...............................................................................................13

*Gordon v. Hunt*,
    117 F.R.D. 58 (S.D.N.Y. 1987) ........................................................................................24

*Handschu v. Special Servs. Div.*,
    787 F.2d 828 (2d Cir. 1986) .............................................................................................21

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir.1998) ..............................................................................................28

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ...........................................................................................24

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ...........................................................................................21, 22, 25

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06-CV-13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008)..............................15

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   No. 15cv1249, 2018 WL 633657 (S.D.N.Y. Dec. 4, 2018) ................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...................................................................*passim*

*West Virginia v. Chas. Pfizer & Co.*,
   440 F.2d 1079 (2d Cir. 1971)...........................................................................24

**Statutes**

42 U.S.C. § 2000d.........................................................................................................3

Suffolk Cnty. Code § 119-3.......................................................................................10

**Rules**

Fed. R. Civ. P. 23(a)............................................................................ 4, 5, 13, 19

Fed. R. Civ. P. 23(b)(2)..................................................................................*passim*

Fed. R. Civ. P. 23(b)(3).......................................................................... 4, 5, 21, 24

Fed. R. Civ. P. 23(c)(2)(A) .................................................................... 20, 22, 29

Fed. R. Civ. P. 23(c)(2)(B) .................................................................... 22, 29

Fed. R. Civ. P. 23(e)........................................................................................*passim*

Fed. R. Civ. P. 23(g) .........................................................................................13

**Other Authorities**

H. Newberg, A. Conte, 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) ...............16

U.S. Const. amend IV ................................................................................................3

U.S. Const. amend V..................................................................................................3

U.S. Const. amend XIV...........................................................................................3, 4

U.S. Dept. of Just., *Manual for Complex Litigation,* § 30.42 (3d ed. 1995) ..................... 1, 14, 28

# I.   INTRODUCTION AND STATEMENT REGARDING LEGISLATIVE APPROVAL

Plaintiffs #1-20 (the "Class Representative Plaintiffs"), individually and on behalf of all others similarly situated, and Defendants the County of Suffolk (the "County"), the Suffolk County Police Department (the "SCPD"), Edward Webber, and Milagros Soto (collectively the "County Defendants") (Class Representative Plaintiffs and County Defendants collectively referred to herein as the "Parties") respectfully seek preliminary approval of the Class Action Settlement Agreement (the "Class Action Settlement Agreement" or "Class Action Settlement") of claims that Class Representative Plaintiffs, individually and on behalf of the Class, brought against the County Defendants alleging discriminatory and unconstitutional policing, patterns, and practices against Latino and Latina motorists and pedestrians in Suffolk County.  The Class Action Settlement Agreement, if approved, will provide significant relief to all Latino and Latina persons who, at any time after January 2012, have been or in the future will be subject to a vehicular or pedestrian stop or detention by an agent of the Suffolk County Police Department in the County of Suffolk (the "Class").

The Class Action Settlement Agreement is "fair, reasonable, and adequate" and the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." Preliminary approval of the Class Action Settlement Agreement is therefore warranted.  *See* Fed. R. Civ. P. 23 (e)(2); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) *(citing Manual for Complex Litigation, Third* § 30.42 (1995)).  The Class Action Settlement Agreement negotiated by the Parties will significantly benefit the Class and achieve the main objective of the lawsuit: ensuring that Latinos and Latinas are not subject to discriminatory and unconstitutional policing, patterns, and practices by the SCPD.  The Parties request that the Court enter an order granting Preliminary Approval of the Class Action Settlement Agreement.

The Parties agree that the Suffolk County Legislature must approve the County Defendants' entry into the Class Action Settlement Agreement, as well as the County Defendants' entry into a separate settlement agreement between the County Defendants and the Plaintiffs in the Action settling the Plaintiffs' individual claims for damages (the "Individual Settlement Agreement"), approval which has not yet been obtained ("Legislative Approval"). The Class Action Settlement Agreement is expected to be considered by the Ways and Means Committee of the Suffolk Legislature at a meeting currently scheduled for March 30, 2023. The Parties respectfully submit that this process should not delay the Court's consideration of this Motion for Preliminary Approval; as an alternative to delaying the Court's consideration of this Motion, the Parties propose instead that the Court consider the Motion in parallel to the Legislative Approval process but order that notice to the Class not be distributed until after Legislative Approval has been obtained. The Parties therefore respectfully request, in accordance with the schedule set forth herein and in the [Proposed] Order Granting Motion for Preliminary Approval of Class Action Settlement Agreement and Directing Notice to the Class, filed herewith, that the Court grant preliminary approval of the Class Action Settlement Agreement and set a date for delivery of notice to the Class that is within five days following Legislative Approval. The Parties further propose that the Court order a schedule with a date for objections to the Class Action Settlement Agreement, the Parties' written responses to any objections to the Class Action Settlement Agreement, and a fairness hearing on final approval of the Class Action Settlement Agreement that are similarly set as within a prescribed number of days following Legislative Approval. The Parties propose to contact the Court after Legislative Approval, but before notice is provided to the Class, to obtain a date for the fairness hearing, which date will be included in the Class Notice,

together with the deadline for filing objections to the Class Action Settlement Agreement. *See infra* Section IV.B.2.c.(i).

## II.    SUMMARY OF THE CASE

### A.    Facts Alleged by Plaintiffs

Class Representative Plaintiffs claim that the County Defendants subjected Latinos, including Class Representative Plaintiffs, to an ongoing policy, pattern, and practice of discriminatory policing, in violation of Class Representative Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Class Representative Plaintiffs allege that the SCPD implemented policies, practices, and/or customs of unconstitutional traffic and pedestrian stops, frisks, detentions, and searches, which were being done without the reasonable suspicion required under the Fourth Amendment.  Moreover, Class Representative Plaintiffs allege that many of these police encounters have resulted in the deprivation of property and/or unlawful ticketing of Latino and Latina motorists and pedestrians in Suffolk County, including the Class Representative Plaintiffs, in violation of the Fifth Amendment.  Class Representative Plaintiffs allege the SCPD has implemented policies, practices, and/or customs of using race and/or national origin as the determinative factors in deciding to stop, frisk, detain and/or search individuals, in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 2000d.

Furthermore, Class Representative Plaintiffs allege that the County and SCPD had both actual and constructive notice of the constitutional violations occurring because of SCPD's policies and practices.  Class Representative Plaintiffs allege that despite being on notice, the County and SCPD (i) maintained policies and practices that resulted in continued constitutional violations, and (ii) failed to take the actions necessary to investigate and eradicate these practices.  As a result, the Class Representative Plaintiffs allege the County and the SCPD allowed these

discriminatory policies, practices, and/or customs to continue unabated for years, as well as facilitated and encouraged them through (i) the failure to adopt and implement adequate police training and supervision policies, (ii) the disruption of the implementation and analysis of traffic stop data collection systems that would have identified officers engaged in discriminatory policing, (iii) the failure to adequately investigate complaints lodged by Latino and Latina victims, and (iv) the failure to engage in even-handed law enforcement, in violation of the Equal Protection Clause of the Fourteenth Amendment.

County Defendants deny the allegations set forth by Class Representative Plaintiffs.

### B. **Summary of Proceedings**

Class Representative Plaintiffs initiated this action on April 29, 2015 and filed an amended complaint on May 18, 2015. Compl., ECF No. 1; Amended Compl., ECF No. 21. County Defendants responded to Class Representative Plaintiffs' First Amended Complaint on November 4, 2015. Answer to Amended Compl., ECF No. 39.

The Parties filed a discovery schedule proposal on January 12, 2016, which the Court approved on January 13, 2016. Proposed Scheduling Order, ECF No. 49. The Parties proceeded to engage in extensive discovery, which was completed on October 16, 2019. Letter re: Joint Discovery Schedule, ECF No. 64; Order, ECF No. 207. During the discovery process, the Parties exchanged tens of thousands of pages of documents, took over twenty-five depositions, held numerous meet-and-confers, and participated in several discovery conferences with Judge Lois Bloom to resolve disputes regarding the scope and sufficiency of the production. ECF Nos. 211; 212; 213; 223; 232; *see also* Miller Decl. ¶ 5.

On July 15, 2020, Class Representative Plaintiffs moved the Court for class certification pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), which County Defendants opposed. Mot. for Class Cert., ECF No. 250; Opp'n to Mot. for Class Cert., ECF No.

277-1.  Class Representative Plaintiffs also filed a motion *in limine* requesting an adverse inference, or in the alternative a rebuttable presumption, against the County and the SCPD related to the SCPD's alleged failure to adequately collect, audit, and analyze traffic stop data during the relevant period.  Mot. in Lim. for Adverse Inference, ECF No. 275-76.  On October 16, 2020, County Defendants moved for summary judgment.  Mot. for Summ. J., ECF No. 298; ECF No. 300.  On March 12, 2021, Judge Bloom recommended that the Court certify the proposed class seeking declaratory and injunctive relief pursuant to Rule 23(b)(2) and deny, without prejudice, the motion to certify the proposed class seeking damages pursuant to Rule 23(b)(3).  R. & R. for Class Cert., ECF No. 318.[1]  As part of her recommendation, Judge Bloom found under Rule 23(a) that the Class Representative Plaintiffs' claims were typical of the claims of the proposed Rule 23(b)(2) class and that they would fairly and adequately protect the interests of the class and that Milbank LLP and LatinoJustice PRLDEF ("Class Counsel") were qualified to represent the class under Rule 23(g).   Judge Bloom recommended that the Court appoint the Class Representative Plaintiffs and Class Counsel as representatives and counsel for a Rule 23(b)(2) class consisting of "[a]ll Latino or Latina persons who, at any time after January 2012, have been or in the future will be subject to a vehicular or pedestrian stop or detention by an agent of the Suffolk County Police Department in the county of Suffolk".  *Id.* at 17-18, 34.  The Court adopted Judge Bloom's recommendation in its entirety on April 5, 2021.  Order Adopting R. & R., ECF No. 319.

On August 5, 2021, this Court issued an Order denying the County Defendants' motion for summary judgment as to the County, the SCPD, and Defendants Soto and Webber, but granting

---

[1] With respect to the proposed Rule 23(b)(3) class, Judge Bloom reasoned that an unlawful stop, ticket, search, or arrest would not automatically qualify a class member for damages and, therefore, damages would need to be determined on an individualized basis.  *See* R. & R. for Class Cert., ECF No. 318 at 37.

the County's motion in part, dismissing the claims against Defendant Dormer. Mem. & Order for Summ. J. and Adverse Inference, ECF No. 322. In this Order, the Court denied Class Representative Plaintiffs' request for an adverse inference but found a rebuttable presumption that had the SCPD adequately collected, audited, and analyzed traffic stop data, such data would show that Latinos and Latinas were targeted for traffic stops and subjected to disparate treatment during those stops. *Id.*

On August 20, 2021, the Parties submitted a proposed pre-trial scheduling order, which the Court amended in an order dated August 23, 2021. Proposed Scheduling Order Letter, ECF No. 324; Order, ECF No. 325. On March 24, 2022, the Court issued an order referring the case to mediation. Order Referring Case to Mediation, ECF No. 342. The Parties engaged in nearly three months of mediation sessions with Anthony DiCaprio, Esq., a mediator through the EDNY Trial Ready Rapid Mediation Pilot program. Joint Notice re: Selection of Med., ECF No. 344; *see also* Miller Decl. ¶¶ 3-4. The first mediation took place on May 18, 2022 and the final mediation session took place on the eve of July 25, 2022. *Id.* On July 26, 2022, the Parties attended a final pre-trial conference where they informed the Court that they reached an agreement in principle to settle the claims against the County Defendants and requested additional time from the Court to memorialize the compromise in a long-form agreement, which request the Court granted. The Parties then worked diligently in the following months to develop the details of the injunctive relief reflected in the proposed Class Action Settlement Agreement. *See* Miller Decl. ¶ 6.

## III.    <u>SUMMARY OF THE CLASS ACTION SETTLEMENT AGREEMENT</u>

### A.    <u>Substantive Relief</u>

Through the Class Action Settlement Agreement, Class Counsel successfully negotiated for injunctive relief that Class Representative Plaintiffs sought on behalf of the Class at the filing of this action: the implementation of policies, patterns, and practices aimed at preventing

discrimination against Latino and Latina motorists and pedestrians in Suffolk County by the SCPD. As part of the Class Action Settlement Agreement, County Defendants have agreed to establish Precinct Level Advisory Boards, ensure that all officers take part in an Implicit Bias 2.0 training, expand the procedures for collecting and analyzing traffic stop data, ensure that officers are properly trained in traffic and pedestrian stop related procedures, improve language accessibility, implement a civilian oversight review process, and incorporate additional changes to the SCPD's policing customs and practices.

### 1.    Precinct Level Advisory Boards

County Defendants agree to establish Precinct Level Advisory Boards ("PLABs"). PLABs will focus on addressing community concerns, fostering new relationships between the SCPD and community leaders, expanding the community engagement reach within each precinct, and providing a clear line of communication between the SCPD and the community. Annually, at a regularly scheduled quarterly meeting, the Commanding Officer will be available to present up-to-date data on the precinct's traffic and pedestrian stop activity. The Class Action Settlement requires attendance of certain individuals at one PLAB meeting per quarter, including a Commanding Officer (or their designee of satisfactory rank) for each precinct, a Community Liaison Officer or another member of the Community Relations Bureau, a minimum of two patrol officers, and a COPE Officer. These meetings will be in addition to the public community meetings that already occur.

### 2.    Implicit Bias 2.0 Training

SCPD will work with a qualified third-party provider with experience and knowledge in best practices to establish an Implicit Bias 2.0 Training, which will be an updated version of the SCPD's current implicit bias training program. The training will incorporate the analysis of the

SCPD's traffic stop data, which will be completed by an independent third party. It is the intention of the County Defendants that all sworn officers will complete the Implicit Bias 2.0 Training.

### 3. Data Collection and Review

County Defendants agree to several changes related to traffic stop data collection and analysis, which information will be publicly available. *First*, County Defendants will maintain their Public Traffic and Pedestrian Stop Data Dashboard with quarterly publication of its raw data. The raw data sets will include, amongst other data, information related to: (i) where a stop occurred, (ii) the police action taken, and (iii) anonymized license plate data. Additionally, the Public Traffic and Pedestrian Stop Data Dashboard will also include Suffolk County demographic information.

*Second*, the SCPD will continue to engage an independent third party to review the SCPD's traffic and pedestrian stop data and publish a report on an annual basis.

*Third*, the SCPD's precinct commanding officers, or their designees, will review traffic stop data quarterly to identify and address atypical patterns of traffic stops and/or enforcement activity.

*Fourth*, the SCPD will issue an annual public report that includes information related to Internal Affairs Bureau ("IAB") complaints, including: (i) the number of complaints by type of allegation, (ii) case disposition per investigation, (iii) bias policing allegations, (iv) bias policing dispositions, (v) bias policing allegations by race or ethnicity, (vi) bias policing allegations by race or ethnicity per year, (vii) bias policing allegations by precinct/race or ethnicity, and (viii) the time it takes to complete investigations.

### 4. Training Related to Traffic and Pedestrian Stops

The SCPD will ensure that its officers receive the appropriate training related to the SCPD policies regarding: (i) searches based solely on consent, (ii) permissible questions during traffic

stops, (iii) search and seizure law and the four levels of suspicion, and (iv) adequate recording of necessary stop data, such as the primary reason for a stop. Moreover, officers will be instructed to provide only a warning when encountering a minor vehicle equipment violation unless there are additional facts or circumstances justifying a ticket for the equipment violation offense. Furthermore, where no additional action is taken during a stop, officers will be instructed to provide a business card in both English and Spanish which includes their information, and both the IAB and the Human Rights Commission ("HRC") contact information. The contact information for both the IAB and HRC will also be prominently displayed on the SCPD website.

### 5. Language Access

The SCPD will implement additional procedures to improve language accessibility and ensure alignment with the goals and spirit of SCPD Policy 333. Specifically, the SCPD will include links on its website to tools that translate webpages into Spanish. The Spanish version of the website will include links to Spanish versions of documents and forms. Moreover, the SCPD will provide language assistance services in accordance with the procedures contained in SCPD Policy 333 and will make residents aware that such services are available to them free of charge. The SCPD will post Language Access statistics on its website on a quarterly basis.

County Defendants will also hire Certified Spanish Speaking Police Operations Aides to provide language assistance at the front desk of the Third Precinct, other than for the overnight shift. Furthermore, County Defendants agree to use best efforts to recruit and hire Certified Spanish Speaking Police Operations Aides for open positions, other than the overnight shift, for the front desks of the First, Second, and Fifth Precincts.

### 6. Implementation of Civilian Oversight Review

A civilian oversight review process will be managed by the HRC as follows: (i) providing an additional mechanism for in-person and online means by which the public may file complaints

of officer misconduct, (ii) reviewing in tandem IAB investigations of police misconduct complaints being investigated by the IAB and over which the HRC has jurisdiction pursuant to its powers and duties under Suffolk County Code Section 119-3, (iii) accessing the Department's shared data portal to monitor the status of open complaints, and (iv) offering recommendations on additional steps to be taken by the IAB as part of a particular police misconduct investigation. The HRC will issue an annual report summarizing its review activities, observations, and recommendations.

### 7. Other Relief

In addition to the foregoing, the Class Action Settlement Agreement also contains the following relief:

#### a. Use of Body-Worn Camera

The SCPD will comply with its Body-Worn Camera Policy 422 and Body-Worn Camera Procedure 422 and will deploy the use of body-worn cameras as standard police worn equipment for all authorized officers who regularly engage with the public in the course of their professional duties.

#### b. Designee for U-Visa Matters

The Commanding Officer of the SCPD's Hate Crimes Bureau (or their designee of satisfactory rank) will be designated as the contact person for all U-Visa matters, using appropriate language access resources, conducting outreach to crime victims, providing information regarding U-Visas, and responding to inquiries.

#### c. Compliance Procedures

Counsel for the County Defendants will regularly report in writing to Class Counsel regarding their compliance with the terms of the Class Action Settlement Agreement. The written reports will include: (i) a description of the steps the County Defendants have taken during the

reporting period to implement the Class Action Settlement Agreement and (ii) a detailed description of the planned steps to be completed during the upcoming reporting period. Class Counsel will notify County Defendants of any questions or concerns regarding the reports and the County Defendants' compliance with the Class Action Settlement Agreement. The County Defendants agree to respond in writing to Class Counsel's questions or concerns within six weeks from receipt. In addition to their written reporting requirements, County Defendants will also respond to reasonable inquiries from Class Counsel regarding compliance with the Class Action Settlement Agreement and the Reform Plan and designate a person within the Suffolk County Attorney's Office to respond to such inquiries.

**B.     Release of All Claims Against County Defendants**

Through the Class Action Settlement Agreement, Class Representative Plaintiffs and the Class will release County Defendants from the Settled Claims, which are defined in part as follows: all claims for relief arising out of or related to the facts and circumstances alleged in the Amended Complaint for which the Class could recover, for all dates up to and including the Effective Date of the Class Action Settlement Agreement. *See* Miller Decl. Ex. A §§ II.A. 23, IV.H.

The Release will not apply to claims arising from events after the Effective Date of the Class Action Settlement Agreement that do not arise out of or relate to the facts and circumstances alleged in the Amended Complaint.

The Release applies solely to County Defendants and does not apply to Defendant Scott Greene. *See* Miller Decl. Ex. A §§ II.A. 22-23, IV.H.

## IV. THE CLASS ACTION SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A. Legal Standard for Preliminary Approval

Courts are "mindful of the strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks omitted). On a motion for preliminary approval, the Court must determine whether it will "likely be able" to "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), the Court must consider whether: "the class representatives and class counsel have adequately represented the class," including through settlement negotiations, whether "the proposal was negotiated at arm's length"; whether "the relief provided for the class is adequate"; and whether the proposal treats "class members equitably relative to each other." Before granting approval, a court must "carefully scrutinize the settlement to ensure its fairness, adequacy, and reasonableness, and that it was not the product of collusion." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (The court "must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate, and reasonable.").

Courts have construed the elements under 23(e)(2) as requiring that the settlement be both procedurally and substantively fair. *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15cv1249, 2018 WL 6333657, at *1 (S.D.N.Y. Dec. 4, 2018). Procedural fairness refers to "the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Substantive fairness refers to the settlement's terms. *Id.* To assist in the evaluation of substantive fairness under Rule 23(e)(2), the Second Circuit considers, in addition to the express requirements of Rule 23(e)(2), the nine factors described in *City of Detroit v. Grinnell Corp.*:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) [hereinafter, *Grinnell*] (abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

## B. The Class Action Settlement Agreement Satisfies the Standard for Preliminary Approval

As detailed below, the Class Action Settlement Agreement is procedurally and substantively fair. Therefore, the Court will likely be able to approve the Class Action Settlement Agreement under Rule 23(e)(2) following a fairness hearing and preliminary approval should be granted. *See* Fed. R. Civ. P. 23(e)(1)(B) (authorizing the Court to direct notice to the class of a proposed settlement if it determines that it will "likely be able" to approve the settlement after a fairness hearing under Rule 23(e)(2)).

### 1. The Class Action Settlement Agreement Is Procedurally Fair

Rules 23(e)(2)(A) and 23(e)(2)(B) promote procedural fairness by requiring the Court to consider whether the Class was adequately represented and the settlement was negotiated at arm's length. Here, Judge Bloom previously determined that the Class Representative Plaintiffs and Class Counsel were capable of adequately representing the Class, and the Court adopted Judge Bloom's recommendation in full in appointing each to represent the Class under Rules 23(a) and 23(g), respectively. *See* R. & R. for Class Cert., ECF No. 318; Order Adopting R. & R., ECF No. 319. Further, the Class Action Settlement Agreement was negotiated at arm's length through mediation and extensive negotiation between the parties, *see* Miller Decl. ¶¶ 3-4, and with the benefit of a well-developed record. Specifically, the Parties engaged in extensive discovery, which

was officially completed on October 16, 2019. Through the discovery process, the Parties exchanged documents, conducted over twenty-five depositions collectively, held numerous meet-and-confers, and participated in several discovery conferences. *See* Miller Decl. ¶ 5. Furthermore, as memorialized in numerous letters and mediation status reports to the Court, the Parties engaged in extensive arm's-length negotiations, including mediation through the EDNY Trial Ready Rapid Mediation Pilot with mediator Anthony DiCaprio, Esq. *See* ECF Nos. 385, 402, 420, 422, 425; *see also* Miller Decl. ¶¶ 3-4. Upon informing the Court that the Parties had reached an agreement in principle on July 26, 2022, the Parties continued to negotiate for the next seven months regarding a long-form agreement, resulting in the Class Action Settlement Agreement. *See* Miller Decl. ¶ 5.

Where a settlement is "the product of arm's-length negotiations between experienced, capable counsel after meaningful discovery," there is a presumption of procedural fairness under Rule 23(e). *See Wal-Mart Stores, Inc.*, 396 F.3d at 116 (2d Cir. 2005) *(citing Manual for Complex Litigation, Third § 30.42 (1995)).* For the foregoing reasons, the Parties respectfully submit that the Class Action Settlement Agreement is procedurally fair.

### 2. The Class Action Settlement Agreement Is Substantively Fair

Rules 23(e)(2)(C) and 23(e)(2)(D) promote substantive fairness by requiring the Court to consider whether "the relief provided for the class is adequate" and whether "the proposal treats class members equitably relative to each other." In considering whether relief is adequate, Rule 23(e)(2)(C) further guides that the Court should consider: (i) "the costs, risks, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class . . . "; (iii) "the terms of any proposed award of attorney's fees, including timing of payment"; and (iv) "any agreement required to be identified under Rule 23(e)(3)." In the Second Circuit, Courts employ the *Grinnell* factors to further assist them in determining the substantive fairness of a settlement agreement. *Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974). Not all nine factors outlined

in *Grinnell* must be met, but "rather, a court should look at the totality of these factors in light of the particular circumstances." *In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761 (CM), 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (internal quotation marks and citations omitted). The application of Rules 23(e)(2)(C) and 23(e)(2)(D) and the *Grinnell* factors to the particular circumstances in this case weighs in favor of finding that the Class Action Settlement Agreement is substantively fair and should be preliminarily approved.

        **a.**        **Rule 23(e)(2)(C)(i) weighs in favor of preliminary approval**

Rule 23(e)(2)(C)(i) asks the court to consider whether relief in a proposed settlement is adequate taking into account "the costs, risks, and delay of trial and appeal." This factor is subsumed within the more detailed *Grinnell* framework and analysis discussed below. For the reasons set forth *infra*, this Rule 23(e)(2)(C)(i) weighs in favor of approval of the Class Action Settlement Agreement.

        **b.**        **The *Grinnell* factors weigh in favor of preliminary approval**

        i.    The complexity, expense, and duration of continuing to litigate this case

The first *Grinnell* factor asks the Court to consider the complexity, expense, and duration of litigating this case. *Grinnell*, 495 F.2d. at 463. The Class Representative Plaintiffs filed this action on April 29, 2015. Since this case was filed, the Parties have engaged in an extensive discovery process which took close to four years to complete. *See supra*; Miller Decl. ¶ 5. The discovery process involved extensive document discovery, over twenty-five depositions, retention of multiple experts on the topics of traffic stop data and policies and procedures, and numerous meet-and-confers and discovery conferences. *See generally id.* The Parties then spent months on briefings related to County Defendants' summary judgment motion, Class Representative's motion *in limine* requesting an adverse inference or a rebuttable presumption, and class

15

certification.  *See, e.g.*, ECF Nos. 251, 276, 300.  Following the issuance of a decision on class certification, the Parties spent close to eleven months preparing for trial and later engaging in extensive mediation sessions.  Miller Decl. ¶¶ 3-4.  To date, close to eight years have been spent litigating this case, which has resulted in significant costs.  *See* Miller Decl. ¶¶ 7-11.

Continuing to litigate this case would only result in additional complex litigation, attorney's fees and related costs, and time.  Litigating this case would lead to an estimated two-week trial, which would require months of additional preparation.  The Parties would have to engage in additional motion practice, present updated expert testimony and supplemental reports, and prepare more than thirty witnesses to testify.  In addition to the complexity that preparing for trial would entail, there would be significant costs involved.  To date, the Parties have already spent millions of dollars litigating this case.  *See* Miller Decl. ¶¶ 7-11.  Spending additional time to prepare for trial would only increase those costs significantly.  Furthermore, the time it would take to continue preparing for trial, completing the trial, and waiting for a decision would far exceed the amount of time the Parties need to complete the settlement process.

For these reasons, the first *Grinnell* factor weighs in favor of approving the Class Action Settlement Agreement.

## ii.  The reaction of the Class

The second *Grinnell* factor asks the Court to consider the reaction of the Class to the terms of the Class Action Settlement Agreement.  *Id.*  It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (internal quotation marks omitted); *see also* H. Newberg, A. Conte, 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002), at 108 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

On a motion for preliminary approval under Rule 23(e)(1), prior to directing notice to the class, setting a deadline for objections, and conducting a fairness hearing under 23(e)(2), the reaction of the Class cannot be fully evaluated. However, the Parties anticipate that Class will approve of the Class Action Settlement Agreement and therefore the Court is likely to be able to approve it under Rule 23(e)(2). Class Representative Plaintiffs filed this case in an effort to effectuate change in the SCPD's policies, patterns, and practices. The goal was to put an end to the alleged discrimination faced by Latino or Latina motorists and pedestrians in Suffolk County. Through the terms agreed upon in the Class Action Settlement Agreement, the Class Representative Plaintiffs believe they are meaningfully close to achieving the goal of this case at its inception. Through the Class Action Settlement Agreement, the County and the SCPD have made a commitment to implement a number of changes to the SCPD's policies, procedures, and training. Specifically, the County and the SCPD will implement an updated implicit bias training program and improve the training related to traffic and pedestrian stops. To increase the oversight of its officers, the County and the SCPD will incorporate the civilian oversight review process by the HRC, hire a third-party to analyze the traffic stop data collected, and make several changes internally to monitor officers' behavior, such as requiring the Commanding Officer or his/her designee to identify and address atypical patterns of traffic stop data and/or enforcement activity. The County and the SCPD also made several commitments aimed at increasing public transparency, such as increasing the information published on the Public Traffic and Pedestrian Stop Data Dashboard and the raw data publicly linked therein. These changes are all aimed at achieving the Class Representative Plaintiffs' original goals in filing this case. For these reasons, the Parties expect the Class Action Settlement Agreement to be well-received by the Class, satisfying the second *Grinnell* factor.

### iii.  The amount of discovery completed

The third *Grinnell* factor asks courts to consider the stage of the proceedings and the amount of discovery completed, highlighting that "[i]f all discovery has been completed and the case is ready to go to trial, [then] the court obviously has sufficient evidence to determine the adequacy of settlement." *Newberg*, at 129.  The Parties began settlement discussions several months after the Court issued its decision on County Defendants' summary judgment motion and Class Representative Plaintiffs' motion for class certification. *See* Miller Decl. ¶ 3.  The extensive briefing completed by the Parties in connection with both motions provided the Court with an extensive factual record and led the Court to determine that there were triable issues and class certification was warranted, and the Court's detailed decisions on those motions were key drivers in the settlement negotiations.  The mediation sessions were specifically tailored to address Plaintiff's concerns with the SCPD's policies, patterns, and procedures.  The Parties worked together to ensure that issues affecting the Class Representative Plaintiffs and Class were addressed as best as possible in the Class Action Settlement Agreement.  For this reason, the third *Grinnell* factor weighs in favor of approving the Class Action Settlement Agreement.

### iv.  Risks of not prevailing at trial

The fourth and fifth *Grinnell* factors ask the Court to consider the risk of establishing liability and damages.  The Parties are confident about the merits of their respective case and defenses, but there is an inherent risk at trial for either Party, including with respect to the relief that will be awarded.  Further, here, the case is anticipated to be tried to a jury, which tends to create additional unpredictability.  For this reason, the fourth and fifth *Grinnell* factors weigh in favor of approving the Class Action Settlement Agreement.

v. <u>Risk of not maintaining the class action through trial</u>

The sixth *Grinnell* factor asks the Court to consider the risk of maintaining the class action through trial. Plaintiffs are confident that the Class would remain certified through trial, and therefore this factor is fairly neutral in the analysis. There is some conceivable risk, however, particularly if there is significant delay in re-setting the case for trial, that a Court could find that the County Defendants have not continued to "act[ ] or refuse[ ] to act on grounds that apply generally to the class," *see* Fed. R. Civ. P. 23(b)(2), or that some or all Class Representative Plaintiffs would cease to be adequate representatives under Rule 23(a) (*e.g.*, based on a long-distance move that mooted their claims for relief or rendered them practically unable to adequately represent the interests of the Class). For these reasons, the sixth *Grinnell* factor weighs in favor of approving the Class Action Settlement Agreement.

vi. <u>The ability of the County Defendants to withstand a greater judgment.</u>

The seventh *Grinnell* factor asks the Court to consider the County Defendants' ability to withstand a greater judgment. The Parties agree that it is possible for the County Defendants to agree to additional substantive relief, but recognize that County resources are not unlimited. Based on the mediation process, Class Counsel believes that the Class Representative Plaintiffs and the Class have received meaningful relief in all areas identified in the Class Representative Plaintiffs' Amended Complaint, that the County Defendants are unable to provide certain additional relief requested by Class Representative Plaintiffs, and that the remaining additional relief that the County Defendants are able but unwilling to provide is not incrementally meaningful enough to risk the significant favorable relief set forth in the Class Action Settlement Agreement by

proceeding to trial, where the outcome is uncertain.  For this reason, the seventh *Grinnell*

factor weighs in favor of approving the Class Action Settlement Agreement.

### vii. The reasonableness of the settlement in light of the best possible recovery and all attendant risks of litigation

The eighth and ninth *Grinnell* factors ask the Court to consider the range of reasonableness

of the settlement in light of the best possible recovery and the attendant risks of litigation.  The

Class was certified pursuant to Rule 23(b)(2); therefore, it is appropriate that the Class Action

Settlement Agreement contains only non-monetary terms (other than the award for attorneys'

fees).  Order Adopting R. & R., ECF No. 319.  Through the mediation process, the Parties were

able to address specific changes in SCPD's policies, practices, and procedures.  The County and

the SCPD agreed to a number of changes in the Class Action Settlement Agreement, but most

notably, they agreed to implement specific changes to their internal oversight procedures and lead

advanced trainings focused on addressing alleged implicit bias and discriminatory traffic and

pedestrian stops.  The Parties engaged in nearly three months, and in excess of 100 hours of

negotiations,  of lengthy mediation sessions in which they discussed each issue and determined

what changes the County and the SCPD had the authority and ability to make.  *See* Miller Decl.

¶ 4. For these reasons, the eighth and ninth *Grinnell* factors weigh in favor of approving the Class

Action Settlement Agreement.

### c. Proposed Notice is Effective Under Rule 23(e)(2)(C)(ii)

In connection with a settlement under Rule 23(e), the Court must direct notice "in a

reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

23(e)(1)(B).  Under Rule 23(c)(2)(A), members of a class certified under Rule 23(b)(2) should

receive "appropriate notice."

The Parties propose to provide Notice of Preliminary Approval of the Class Action Settlement Agreement to the Class substantially in the form set forth at Appendix I to the Class Action Settlement Agreement.  *See* Miller Decl. Ex. A, App. I.  The substance of the notice comports with the Due Process clause because it "reasonably convey[s] the required information [ ] and it [ ] afford[s] [class members] a reasonable time for those interested to make their appearance."  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  The proposed Class Notice here clearly summarizes the relevant terms of the Class Action Settlement Agreement, providing specific information as to what criteria a person must meet to be a member of the Class and lists Class Members' rights and options in the settlement, including their ability to object to the Class Action Settlement Agreement.  Not only does the Class Notice provide detailed information regarding the Class Action Settlement Agreement, but it also offers alternative ways to view the full Class Action Settlement Agreement online.  The notice contains the deadline for objecting the Class Action Settlement Agreement, which is 30 days following the notice date, and the date for the fairness hearing on final approval of the Class Action Settlement Agreement.  *See infra.*

The method of providing notice to class members in a class, as here, certified pursuant to Rule 23(b)(2), must be "reasonable."  *See* Rule 23(e); *see also, e.g.*, *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (The Court "has virtually complete discretion as to the manner of giving notice to class members" and adequacy of a notice is "measured by reasonableness."); *Wal-Mart*, 396 F.3d at 113. The standard for distributing notice to a 23(b)(2) class member in connection with a Rule 23(e) settlement is lower than the standard for notice to absent class members in a class certified pursuant to Rule 23(b)(3), where "the best notice that is

practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," is required. *Compare* Fed. R. Civ. P. 23(e) and 23(c)(2)(A) *with* Rule 23(c)(2)(B). Thus while Rule 23(c)(2)(B) "leave[s] no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974), due process is satisfied for a member of a Rule 23(b)(2) class if the notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane*, 339 U.S. at 314. Notice can be defended as consistent with due process if it is "reasonably certain to inform those affected" or, where it is not reasonably certain to inform those affected, the form of notice "chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* at 315. Thus, while individual notice is not per se required by due process, failure to provide individual notice where it is feasible may fall short of the "reasonableness" standard. *Id.*

Here, the certified Class includes all Latino or Latina drivers and pedestrians who use the roads of Suffolk County. It would be particularly difficult here to provide individual notice to these class members because the class members are not limited to residents of Suffolk County, but rather include any Latino person who drives in the County. Moreover, even if the Class were limited to residents of Suffolk County, the County Defendants have been unable to identify any source of data that would provide them with information regarding which residents of the County are Latino or Latina. *See* McSloy Decl. ¶ 5. Without this demographic information to narrow the universe of potentially affected Suffolk County residents, the only feasible option for providing individual notice to Latino or Latina residents of Suffolk County would be to mail notices to all 1.5 million residents of the County, which would be cost-prohibitive, *see* McSloy Decl. ¶ 6, and

22

still that would be both under-inclusive (in that it excludes non-resident Suffolk County drivers) and over inclusive (in that it includes non-Latino/a, non-driving Suffolk County residents).

In lieu of individual notice to all class members, the County Defendants propose to provide notice of preliminary approval through at least the following methods:

- Publication in Newsday, South Shore Press, and Suffolk News, which are newspapers distributed throughout Suffolk County, on the Notice Date (defined below), or as soon thereafter as reasonably practicable, and will publish three times in each paper prior to the fairness hearing;

- Distribution of copies of the Notice of Proposed Class Action Settlement, substantially in the form set forth at Appendix I to the Class Action Settlement Agreement (*see* Miller Decl. Ex. A, App. I), to community groups and legal services organizations in Suffolk County.

- Posting the Notice of Proposed Class Action Settlement, substantially in the form set forth at Appendix I to the Class Action Settlement Agreement (*see* Miller Decl. Ex. A, App. I), (i) in a high-traffic area of all SCPD precincts where members of the public are likely to view it; (ii) on County Defendant websites; and (iii) on County Defendant social media accounts.

*See also* McSloy Decl. ¶ 7.

In addition to the foregoing efforts by the County Defendants:

- Class Counsel will post the Notice of Proposed Class Action Settlement, substantially in the form set forth at Appendix I to the Class Action Settlement Agreement (*see* Miller Decl. Ex. A, App. I), to their websites and in the offices of LatinoJustice PRLDEF.

In the absence of feasible individual notice, Courts have found similar publication procedures to be sufficient to provide reasonable notice. *See, e.g.*, *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 169 (2d Cir. 1987) (approving a combination of print, TV, and radio advertisements where there was "no feasible alternative" for "identifying and contacting persons actually exposed to Agent Orange"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (publication notice approved for class of 1.4 million members where defendants' records were incomplete; court emphasized that posting on websites should also be considered standard practice in modern publication notice); *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090 (2d Cir. 1971) (approving newspaper publication notice where individual notice not feasible and plaintiffs could not reasonably be expected to notify 200,000 class members); *Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987) (finding that where certain silver futures traders could not be identified in a Rule 23(b)(3) class subject to heightened notice requirements, publication in national newspapers satisfied due process).

Any newspaper publication regarding the proposed settlement that does not include the full Notice of Proposed Class Action Settlement, substantially in the form set forth at Appendix I to the Class Action Settlement Agreement (*see* Miller Decl. Ex. A, App. I), will be in English and in Spanish and include at least (i) a brief description of the case and proposed settlement, including the definition of the class; (ii) a clear description of a website where Class members can view the Notice of Preliminary Approval of the Class Action Settlement Agreement to the Class; and (iii) the deadline for objections and date of the fairness hearing. The Notice of Preliminary Approval of the Class Action Settlement Agreement to the Class will be distributed to individuals, groups, and other organizations in both English and Spanish. The Parties will submit certifications regarding notice to the Class on the docket no later than the Response Date (defined below).

The Parties further request that the Court order the following schedule for notice of preliminary approval to the class, objections, responses and the fairness hearing, which the Parties submit will "afford [the Class] an opportunity to present their objections" consistent with the Supreme Court's guidance on due process. *See Mullane*, 339 U.S. at 314. As set forth *supra* Section I, the Suffolk County Legislature must approve the County Defendants' entry into the Class Action Settlement Agreement, which approval has not yet been obtained. The Parties reasonably anticipate a decision from the Suffolk County Legislature by approximately March 30, 2023. The Parties therefore respectfully request that the Court preliminarily approve the Class Action Settlement Agreement pursuant to Rule 23(e)(1) at the soonest possible date, but order notice of preliminary approval to be distributed to the Class within five days following Legislative Approval (the "Notice Date"), and that the deadline for objections, responses to objections, and the fairness hearing similarly be scheduled following Legislative Approval according to the following schedule:

| DATE | EVENT |
|------|-------|
| Day 1 | Legislative Approval.<br><br>On this date or as soon as practicable thereafter (but before the Notice Date), the Parties will contact the Court to inform it of Legislative Approval and seek a date from the Court for the Fairness Hearing to include in the notice to class members. |
| Day 6 | Notice will be distributed to the Class in accordance with the procedures described herein (the "Notice Date") |
| Day 36 (or first business day that is not a Court holiday that is at least 30 days after the Notice Date) | Last day for Class Members to postmark or deliver any objection to the Class Action Settlement Agreement (the "Objection Deadline") |
| Day 50 (or first business day that is not a Court holiday that is at least 14 | Last day for any Party to file papers in further support of Final Approval of Class Action Settlement Agreement, responding to any objections ("Response Date"). |

| | |
|---|---|
| days after the Objection Deadline) | On the Response Date, the Parties will also file certifications regarding notice that was provided to the Class. |
| _____, 2023 [SOONEST DATE THAT IS CONVENIENT FOR THE COURT AFTER THE RESPONSE DATE] | Rule 23(e)(2) hearing concerning final approval of the Class Action Settlement Agreement ("Fairness Hearing"). |

ii.  Notice of Final Approval

If, following the Fairness Hearing, the Court finally approves the Class Action Settlement Agreement pursuant to Rule 23(e)(2), the Parties will provide Notice of Final Class Action Settlement substantially in the form attached to the Class Action Settlement Agreement at Appendix II, *see* Miller Decl. Ex. A, App. II, through the same methods described *supra* that were used for notice of preliminary approval. For the newspaper publication described above, the County Defendants will publish notice two times in the two weeks following final approval.

**d.  Proposed Attorneys' Fees Are Appropriate under 23(e)(2)(C)(iii)**

One of the factors that the Court considers in determining whether the relief in a settlement is adequate under Rule 23(e)(2)(C) is the "terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, the Class Action Settlement Agreement includes a proposed award for attorneys' fees. The Parties have agreed to the amount of $2,250,000.00 in full satisfaction of Class Representative Plaintiffs' claims for attorney's fees, costs, and disbursements. The Parties submit that the relief in the Class Action Settlement Agreement as a whole, including the proposed award of attorneys' fees, is fair, reasonable, and adequate for the reasons set forth herein, and with respect to the proposed award of attorneys' fees

in particular, in light of the significant substantive relief contained in the Class Action Settlement Agreement; the duration and complexity of the litigation, which included significant discovery and complex motion practice; the success of Class Counsel in obtaining favorable decisions for the Class, including class certification and a rebuttable presumption; and the quality and experience of Class Counsel.

The Parties negotiated this proposed award of attorneys' fees at arm's length, after reaching agreement in principle on the substantive relief set forth in the Class Action Settlement Agreement, and were assisted by a qualified mediator in negotiating the award. *See* Miller Decl. ¶ 12. Over the course of the nearly eight years of this litigation, attorneys at Milbank and LatinoJustice PRLEDF spent over 26,000 hours on this case and incurred nearly $1 million in costs and expenses. Miller Decl. ¶¶ 7-10; Case Decl. ¶ 3. The proposed award is approximately than 14% of the combined actual fees, costs and expenses incurred by Class Counsel. *See* Miller Decl. ¶ 11. Even applying a conservative blended "lodestar" rate of $228.10 to the hours incurred, *see* Miller Decl. ¶ 7, which is lower than courts in this district have applied, *see D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) (Kuntz, J., accepting the report and recommendation of Locke, J., noting that as of 2015 that "[c]ourts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals"), the combined hours and costs incurred would imply an award more than three times what the Parties negotiated here. *See* Miller Decl. ¶ 11 (the proposed attorneys' fee award is approximately 32% of combined Class Counsel fees, costs and expenses using a conservative EAJA-implied rate). Moreover, for the purposes of mediation, Class Counsel waived any claim for recovery of non-attorney fees, such as those incurred by paralegals and other legal staff members, *see* Miller Decl. ¶¶ 10-11, and

therefore the actual percentage recoveries for Class Counsel are even lower than stated here. Because the award here is far below an award justified by the lodestar method, the Parties submit that the award is reasonable and should be approved. *See Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 189 (E.D.N.Y. 2014) (For purposes of the lodestar, "[a] reasonable rate is the rate that a reasonable, paying client would be willing to pay."); *see also Luciano v. Olsten Corp*., 109 F.3d 111, 115 (2d Cir. 1997) ("[T]he 'prevailing community' the district court should consider to determine the 'lodestar' figure is 'the district in which the court sits.'")

These facts, among others, were presented to the mediator and discussed with County Defendants during mediation, and therefore the arm's length agreement on the attorneys' fees award is entitled to a presumption of reasonableness. *See Wal-Mart Stores, Inc.*, 396 F.3d at 116 (2d Cir. 2005) *(citing Manual for Complex* Litigation, Third § 30.42 (1995)). Moreover, because this is a Rule 23(b)(2) class and the Class Action Settlement Agreement contains non-monetary terms, the award of attorneys' fees is not being deducted from any monetary amount being paid to the Class on account of their injuries. Further, County Defendants are not obligated to pay the attorneys' fees to Class Counsel until on or after the Effective Date. *See* Miller Decl., Ex. A § IV.H.2.

For the foregoing reasons, the Parties respectfully submit that the proposed award of attorneys' fees weighs in favor of finding the Class Action Settlement Agreement fair, reasonable, and adequate under Rule 23(e)(2)(C)(iii).

### e. No Related Agreements Affecting Fairness under 23(e)(2)(C)(iv)

Rule 23(e)(2)(C)(iv) requires the Court to take into consideration, when determining if the relief in the Class Action Settlement Agreement is adequate, whether there are "any agreement[s] made in connection with the proposal" under Rule 23(e)(3), commonly understood to encompass "side letters" and similar agreements. Here, the only other agreement arguably made in connection

with the Class Action Settlement Agreement is the Individual Settlement Agreement, which addresses claims for damages by the Named Plaintiffs in their individual capacities. While the Parties have agreed to a global settlement that includes resolution of both (i) the Class claims for injunctive and declaratory relief, consistent with certification under Rule 23(b)(2); and (ii) the Named Plaintiffs' individual, non-class claims for damages, the two agreements were negotiated separately; address separate, non-overlapping claims; and contain different, non-overlapping releases. *See* Miller Decl. ¶ 14. The Individual Settlement Agreement does not purport to release any claim on behalf of the Class. *Id.*

### f. The Class Action Settlement Agreement Treats Class Members Equitably

The final consideration under Rule 23(e)(2) is whether the Class Action Settlement Agreement treats class members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the relief contemplated in the Class Action Settlement Agreement will affect all class members similarly through the modification or supplementation of the policies, procedures, and practices of the County Defendants. There are no subclasses or categories of class members who will benefit or not benefit from any provision. For this reason, the Parties respectfully submit that Rule 23(e)(2)(D) weighs in favor of preliminary approval.

### V. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court: (i) grant Preliminary Approval of the Class Action Settlement Agreement; and (ii) enter an order (A) finding that the manner for providing notice to the Class set forth *supra* Section IV. B. 2. (c) is reasonable and satisfies due process and Rules 23(e)(1)(B) and 23(c)(2)(A); and (B) directing notice under 23(e)(1)(B) to be delivered consistent therewith and substantially in the form set forth at Appendix I to the Class Action Settlement Agreement.

Dated: March 6, 2023
New York, New York

Respectfully submitted,

By:   /s/  Jose Perez
Jose Perez
Ghita Schwarz
Andrew Case
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 219-3360
jperez@latinojustice.org
gshwartz@latinojustice.org
acase@latinojustice.org


/s/  Atara Miller
Atara Miller
Katherine Kelly Fell
MILBANK LLP
55 Hudson Yards
New York, NY 10001-2163
(212) 530-5000
amiller@milbank.com
kfell@milbank.com

*Counsel for Plaintiffs #1-20*

Respectfully submitted,

By:   /s/  Christiana McSloy
Christiana McSloy
Marc Lindemann
Dana L. Kobos
Suffolk County Attorney
Suffolk County Attorney's Office
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
(631) 853-2944
christiana.mcsloy@suffolkcountyny.gov
marc.lindemann2@suffolkcountyny.gov
dana.kobos@suffolkcountyny.gov

*Counsel for County Defendants*